**ORIGINAL**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SEMCRUDE, L.P., *et al.*, | : | Case No. 08-11525 (BLS) Joint Administration Requested |
| Debtors. | : | Re: Docket No. 15 |

**ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN CRITICAL PROVIDERS AND OTHER CRITICAL PREPETITION CLAIMS**

Upon the motion, dated July 22, 2008 (the "Motion"), of SemCrude, L.P., its parent, SemGroup, L.P. ("SemGroup"), and certain direct or indirect subsidiaries of SemGroup, as debtors and debtors in possession (collectively, the "SemGroup Companies" or the "Debtors"), pursuant to sections 105, 363, 364, and 1107 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), to pay certain prepetition claims (the "Critical Prepetition Claims"), consisting of (I) the prepetition fixed, liquidated, and undisputed claims (the "Critical Provider Claims") of certain of the Debtors' critical suppliers and providers of products and services (collectively, the "Critical Providers") on the terms and conditions set forth herein, and (II) other critical claims (the "Other Critical Claims"), including (a) the prepetition claims of creditors who transport product or supplies by truck, railroad, barge, pipeline, or other similar means (the "Common Carriers"), (b) the prepetition claims of creditors storing product or supplies, whether in warehouses, tanks, terminals, underground storage facilities, or other similar means (the "Warehousemen"), and (c) prepetition claims related to customs, including Customs Duties (defined below) and the prepetition claims of customs brokers (the "Customs Brokers"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § § 157 and 1334; and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the U.S. Trustee for the District of Delaware, (b) those creditors listed on the Debtors' Consolidated List of Creditors Holding 30 Largest Unsecured Claims, (c) counsel to Bank of America, N.A., as administrative agent for certain of the Debtors' prepetition secured lenders and, (d) General Electric Capital Corporation, as administrative agent for certain of SemCrude Pipeline, L.L.C.'s prepetition secured lenders, (e) Wells Fargo National Bank, National Association, as indenture trustee for the Debtors' prepetition unsecured bondholders, (f) Manchester Securities Corp. and Alerian Finance Partners, LP; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on as modified herein; and it is further

ORDERED that the Debtors are authorized, but not directed, in their sole discretion, to pay the Critical Prepetition Claims in an amount not to exceed $50 million in the aggregate; *provided, however*, that the Debtors shall notify the following parties of any payments made pursuant to this Order: the United States Trustee, Bank of America, N.A., as administrative agent for certain of the Debtors' prepetition secured lenders, the Ad Hoc Committee of Noteholders (until such time as a statutory committee of creditors is appointed), and the statutory committee of creditors, when appointed; and it is further



C:\DOCUMENTS AND SETTINGS\TOUBS\DESKTOP\CVMOTIONONLY.DOC
RLF1-3305158-3

ORDERED that the Debtors are authorized, but not directed, in their sole discretion, to seek to cause each Critical Provider to enter into an agreement ("Supplier Protection Agreement") with the Debtors as a condition of payment of its Critical Provider Claim that includes terms substantially similar to the following:

(a) in the Debtors' sole discretion, the Debtors will make all payments, in cash or in kind (at the Debtors' election), due the Critical Provider for pre-Commencement Date transactions, on the due date or as soon as reasonably practicable thereafter;

(b) the Critical Provider agrees, through the earlier of six (6) months after the Commencement Date or the effective date of a chapter 11 plan, to be bound by the Customary Trade Terms (as defined below), which shall include, but not be limited to, credit terms, historical pricing conventions, historical product volumes, cash discounts, payment terms, allowances, rebates, normal product mix, and availability and other applicable terms and programs acceptable to the Debtors, so long as the Debtors are not then in postpetition default;

(c) the "Customary Trade Terms" shall be defined as those trade terms with the Critical Provider that were most favorable to the Debtors at any time during the time period from July 1, 2007 through the Commencement Date;

(d) the Critical Provider acknowledges that it has reviewed the terms and provisions of this Motion and the order approving this Motion, and consents to be bound thereby;

(e) the Critical Provider agrees that, to the extent it has received payment under the Critical Provider Program from the Debtors on a Critical Provider Claim, but the Critical Provider subsequently refuses to supply products or services to the Debtors on Customary Trade Terms, the Critical Provider will immediately repay to the Debtors any such payments, without the right of setoff, recoupment, or reclamation by the Critical Provider; and

(f) to the extent there exist any safe-harbor contracts between the Debtors and the Critical Provider that contain a right of termination based on the Debtors' bankruptcy, insolvency, or other similar conditions, the Critical Provider agrees to waive the filing of bankruptcy by or the insolvency or other similar conditions of the Debtors as a termination right under those contracts for the duration of the Supplier Protection Agreement. All other default, suspension, and termination provisions in such contracts shall remain in effect;

and it is further

ORDERED that if a Critical Provider refuses to provide product, supplies, or services on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Provider Claim, or fails to comply with any Supplier Protection Agreement entered into between such Critical Provider and the Debtors, the Debtors are authorized to, in their discretion and without further order of the Court, (a) declare that any Supplier Protection Agreement between the Debtors and such Critical Provider is terminated, and (b) declare that provisional payments made to such Critical Provider on account of its Critical Provider Claim, whether pursuant to a Supplier Protection Agreement or otherwise, shall be deemed to have been in payment of then-outstanding postpetition claims of such vendors without further order of the Court or action by any person or entity; and it is further

ORDERED that if a Critical Provider refuses to supply product, supplies, or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt on its Critical Provider Claim, or fails to comply with any Supplier Protection Agreement entered into between such Critical Provider and the Debtors, the Debtors are hereby authorized, without further order of the Court, to exercise either of the rights set forth in the preceding paragraph, the Critical Provider against which such rights are exercised shall immediately return to the Debtors any payments made to it on account of its Critical Provider Claims to the extent that any such payments exceed the postpetition claims of such provider then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. In short, in the event that either a Supplier Protection Agreement is terminated or a Critical Provider refuses to provide product, supplies, or services to the Debtors on Customary Trade Terms following receipt of payment on its Critical Provider Claim, the Debtors and such Critical Provider are to be returned to their *status quo ante*, i.e., their respective positions immediately prior to entry of this Order; and it is further

ORDERED that nothing contained in this Order shall constitute a waiver of the Debtors' right to seek damages or other appropriate remedies against any breaching Critical Provider; and it is further

ORDERED that, notwithstanding the foregoing, the Debtors, in their business judgment, may reinstate a Supplier Protection Agreement if the underlying default under the Supplier Protection Agreement is fully cured by the Critical Provider not later than five (5) business days following the Debtors' notification to the Critical Provider that such default occurred, or the Debtors, in their business judgment, reach a favorable alternative agreement with the Critical Provider; and it is further

ORDERED that nothing herein shall change the nature or priority of the underlying Critical Prepetition Claims; and it is further

ORDERED that nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement between the Debtors and the holder of a Critical Prepetition Claim, or to require the Debtors to make any of the payments authorized herein; and it is further

ORDERED that the authorization granted hereby to pay Critical Prepetition Claims shall not create any obligation on the part of the Debtors or their officers, directors, attorneys, or agents to pay the Critical Prepetition Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay a Critical Prepetition Claim, and nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect the Critical Provider Claims to the extent they are not paid; and it is further

ORDERED that the amount of such Critical Provider Claim set forth in connection with a Supplier Protection Agreement shall be used only for purposes of determining such Critical Provider's claim under this Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court. Further, signing a Supplier Protection Agreement containing a claim amount for purposes of this Order shall not excuse such Critical Provider from filing a proof of claim in these cases; and it is further

ORDERED that no claimant who receives payment on account of a Critical Prepetition Claim is permitted to file or perfect a lien, reclamation claim, or a claim under section 503(b)(9) of the Bankruptcy Code on account of such Critical Prepetition Claim, and any such claimant shall take at the claimant's expense all necessary action to remove any existing lien or withdraw such reclamation claim or 503(b)(9) claim relating to such Critical Prepetition Claim, even if the lien, reclamation claim, or 503(b)(9) claim is against property of a non-debtor; and it is further

ORDERED that, notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person; and it is further

ORDERED that all applicable banks and other financial institutions are hereby authorized and required, when requested by the Debtors, to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Commencement Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order; and it is further

ORDERED that nothing in this Order shall be deemed either a grant of administrative priority expense status to, or authority to pay, any amounts that are disputed by the Debtors; and it is further

ORDERED that nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of a holder of a Critical Prepetition Claim under applicable law; and it is further

ORDERED that nothing in this Order shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid hereunder; and it is further

ORDERED that the requirements of Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are satisfied by the contents of the Motion and notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order; and it is further

ORDERED that this Order shall be immediately effective and enforceable upon its entry.

Dated: July 23, 2008
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE