# EXHIBIT A

# [DIP Term Sheet]

SEMCRUDE, L.P.

Summary of Terms and Conditions of a Priming DIP Facility

| | |
|---|---|
| Transaction: | This summary of terms and conditions outlines the proposed structure and terms of the priming DIP Facility to be provided by Bank of America, N.A. and certain other lenders (collectively, the "***DIP Lenders***") to SemCrude, L.P. (the "***Borrower***"), as debtor-in-possession, in the Chapter 11 bankruptcy case (the "***Case***") that has been commenced by it in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"). |
| Administrative Agent: | Bank of America, N.A. (the "***Administrative Agent***"). |
| Guarantors: | Those affiliates of the Borrower (including, without limitation, SemGroup, L.P.) that commenced Chapter 11 bankruptcy cases in the Bankruptcy Court. The Borrower and the Guarantors are collectively referred to herein as the "***Loan Parties***". |
| Purposes: | To provide working capital and for other general corporate purposes of the Borrower and the Guarantors solely in accordance with the Budget (as defined below). The Budget will be designed to implement a sale process, as more particularly described below (including professional and administrative fees and expenses associated with the Case for attorneys and other professionals hired in connection with the sale process). |
| Budget: | A detailed weekly budget covering the succeeding 13-week period, in form and substance satisfactory to the Administrative Agent and the Required Lenders (as defined below) (with such supporting detail as the Administrative Agent or its financial advisors may request), shall be provided to the Administrative Agent and the Lenders, such budget to be updated commencing with the first week following the closing date for the DIP Facility, for each rolling 13-week period commencing on the date such updated budget is delivered (the initial budget, together with all updates thereto, the "***Budget***"). Each Budget shall be accompanied by a variance analysis with respect to all items from the most recently delivered Budget. Each weekly Budget and all variances from prior Budgets shall be acceptable to the Administrative Agent and the Required Lenders |
| Security: | First and priming lien on all assets, including, without limitation, a pledge of the equity in the "unrestricted" subsidiaries of the Borrower and those assets that are subject to liens granted pursuant to the pre-petition Loan Documents, but excluding any |

assets (other than those assets that are subject to liens granted pursuant to the pre-petition Loan Documents) as to which a valid, perfected and unavoidable lien existed as of the date the Case commenced. Pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP obligations shall be entitled to superpriority claim status in the Cases.

| | |
|---|---|
| DIP Facility Amount: | $250,000,000; with a sublimit of $150,000,000 for Letters of Credit. |
| Interest Rates: | 1-month LIBOR (subject to a floor of 4.00%) plus 6.00% or Prime (subject to a floor of 3.00%) plus 5.00%. Interest will be due and payable on the first day of each month. |
| Closing Fee: | To be set forth in a separate fee letter. |
| Administrative Agent's and Arranger Fees: | To be set forth in a separate fee letter. |
| Unused Line Fee: | 100 bps |
| Letter of Credit Fees: | 6.00% per annum on the outstanding face amount of each Letter of Credit (payable monthly in arrears on the first day of each month) plus customary fees for issuance, amendments and processing and a fronting fee equal to 0.25 of 1% per annum. |
| Maturity Date: | No later than 6 months from the date the Case was filed; provided, that the Maturity Date may be extended to 9 months from the date the Case is filed upon the Administrative Agent's and the Required Lenders' (defined below) satisfaction that certain conditions relating to the sale of assets have been met. |
| Required Lenders: | DIP Lenders holding more than 50% of the aggregate DIP commitments. |
| Covenants: | To include: (i) prohibitions against the Borrower (a) using any cash or the proceeds of any loans in a manner or for a purpose other than in accordance with the Credit Agreement and the Budget, (b) permitting disbursements for the trailing four week period (or such shorter period since the commencement of the Case) to vary by greater than 10% (15% for the first four weeks following the commencement of the Case) from the amount of disbursements set forth in the Budget for such period and (c) permitting revenues generated in the ordinary course of business for the trailing four week period (or such shorter period since the commencement of the Case) to be less than the amount of revenues set forth in the Budget for such period subject to a variance of not greater than 10% (15% for the first four weeks following the commencement of the Case) for such period, (ii) retention or continued retention of a Chief Restructuring Officer, Chief Executive Officer and Chief Financial Officer acceptable to the Administrative Agent and the Required Lenders, (iii) |

continued retention of The Blackstone Group (or another financial advisor acceptable to the Administrative Agent and the Required Lenders) as the Borrower's financial advisor, (iv) receipt of financial and other information as may be required by the Administrative Agent, the Required Lenders and their advisors (including, without limitation, detailed reporting of inventory and accounts receivable) and (v) implementation of a hedging program satisfactory in all respects to the Administrative Agent and the Required Lenders, such program to be monitored and reviewed by the financial advisor to the DIP Lenders.

| | |
|---|---|
| Sale Process: | Milestones and timeframes acceptable to the Administrative Agent and the Required Lenders for the successful completion of the sale of all or substantially all of the Loan Parties' assets, including, without limitation, the hiring of professionals in connection therewith, approval of bidding procedures, sale approval, etc. to be determined. The DIP Lenders' financial advisors to receive all information with respect to the sale process substantially concurrently with the Borrower's and its advisors' receipt of such information. |
| Application of Proceeds: | Net cash proceeds from asset sales to be applied first to prepay outstanding DIP Loans (and, to cash collateralize outstanding Letters of Credit issued under the DIP Facility). Any remaining net cash proceeds will be applied to repay the pre-petition obligations in accordance with the provisions of the Pre-Petition Credit Agreement. The DIP Facility Amount will be reduced, permanently and on a dollar-for-dollar basis, by the amount of net cash proceeds applied to prepay the DIP Loans. |
| | Excess cash accumulation and its application to be determined. |
| Conditions: | To include: receipt of an acceptable initial Budget, receipt of all necessary consents, finalization of satisfactory legal documentation (including representations and warranties, covenants, events of default and other terms and conditions deemed appropriate by the Administrative Agent and the Required Lenders for a transaction of this type) and receipt of Bankruptcy Court approval of interim and final orders for the DIP Facility, each acceptable to the Administrative Agent and the Required Lenders. |
| Other: | This term sheet is submitted for discussion purposes only and describes the general basis upon which the Administrative Agent and the DIP Lenders are prepared to continue their efforts. This proposal is intended as an outline only of certain of the material terms of the DIP Facility and does not purport to summarize all of the terms and conditions that may be determined by the Administrative Agent or the DIP Lenders to be appropriate for the |

DIP Facility. The actual terms and conditions upon which the Administrative Agent and the DIP Lenders may consummate the DIP Facility are subject to change. This term sheet does not constitute an offer, agreement or commitment to lend.