UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEMCRUDE, L.P., *et al.*, | ) | Case No. 08-11525 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objections due by: September 3, 2008 at 4:00 p.m.** |
| | ) | **Hearing Date: September 10, 2008 at 10:00 a.m.** |

## MOTION OF CHEVRON PRODUCTS COMPANY, A DIVISION OF CHEVRON U.S.A. INC., FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW FOR SETOFF OF MUTUAL OBLIGATIONS

Chevron Products Company, a division of Chevron U.S.A. Inc. ("Chevron"), through its undersigned counsel, respectfully moves the Court for relief from the automatic stay to allow for the setoff of mutual obligations. In support of its Motion for Relief from the Automatic Stay (the "Motion") Chevron respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) and (O). Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 362(d) and 553.

### BACKGROUND

2. Pre-petition, Chevron entered into several contracts (collectively, the "Contracts") with certain of the above captioned debtors, specifically: (a) SemCrude, L.P. ("SemCrude"); (b) SemFuel, L.P. ("SemFuel"); and (c) SemStream, L.P. ("SemStream") for the sale or purchase of

crude oil, regular unleaded gasoline and/or butane, isobutene and propane, respectively.[1] The relevant Contracts for the sale or purchase of crude oil with SemCrude (such subset of Contracts, the "SemCrude Contracts") are governed by either: (i) Chevron's General Provisions for Crude Oil and Products—Exchanges and Purchase/Sales revised as of May 1, 1996 (the "CSAT Terms and Conditions"); or (ii) the Conoco General Provisions for Domestic Crude Oil Agreements, effective as of January 1, 1993 (the "Conoco Terms and Conditions").[2] Copies of the CSAT Terms and Conditions and the Conoco Terms and Conditions are attached hereto as Exhibit B and Exhibit C respectively. Additionally, the SemCrude Contracts are governed by a certain Net Settlement Agreement, dated April 22, 2004 (the "Net Settlement Agreement"), between ChevronTexaco Global Trading (now Chevron Products Company) and SemCrude.[3] A copy of the Net Settlement Agreement is attached hereto as Exhibit D.

3. The relevant Contracts for the delivery or purchase of gasoline with SemFuel (such subset of Contracts, the "SemFuel Contracts") are also governed by the CSAT Terms and Conditions. The relevant Contracts for the delivery or purchase of butane, isobutene and/or propane with SemStream (such subset of Contracts, the "SemStream Contracts") are governed by Chevron's General Terms and Conditions for Liquid Product Purchases and Sales Agreements, dated September 1, 2006 (the "LSAT Terms and Conditions"). A copy of the LSAT Terms and Conditions is attached hereto as Exhibit E.

4. The CSAT Terms and Conditions provide that "in the event either party fails to make a timely payment of monies due and owing to the other party, or in the event either party

---

[1] A comprehensive list of the Contracts relevant to the Motion is attached hereto as Exhibit A.

[2] The Conoco Terms and Conditions provide that "each party may offset any payments or deliveries due to the other party under this or any other agreement between the parties." *See* "Financial Responsibility" section, paragraph G of Exhibit C, the Conoco Terms and Conditions.

[3] The Net Settlement Agreement provides that "each month, the parties shall mutually agree to the total value due each other for deliveries made in the proceeding month…the net difference between the total values…shall be the amount payable to the party delivering the greater value by the party delivering the lesser value." See paragraphs 2 and 4 of the Net Settlement Agreement.

2

fails to make timely delivery of product or crude oil due and owing to the other party, the other party may offset any deliveries or payments due under this or any other Agreement between the parties and their affiliates."[4] *See* "Financial Responsibility" section (pg. 2) of Exhibit B, the CSAT Terms and Conditions (the "CSAT Setoff Clause").

5. Furthermore, the LSAT Terms and Conditions provide that "in the event either party fails to make a timely payment of monies due and owing to the other deliveries, or in the event either party fails to make timely delivery of Product due and owing to the other party, the other party may offset an deliveries of payments due under a Contract or under any other agreement between the parties and their affiliates."[5] *See* section 11 (pg. 3) of Exhibit E, the LSAT Terms and Conditions (the "LSAT Setoff Clause" and together with the CSAT Setoff Clause, the "Setoff Clauses").

6. On July 18, 2008, Chevron sent SemCrude, SemFuel and SemStream letters seeking adequate assurance (the "Adequate Assurance Letters") in the form of a Letter of Credit based on provisions in the CSAT Terms and Conditions and the LSAT Terms and Conditions.[6] Chevron sought assurance of payment under the SemCrude Contracts, the SemFuel Contracts and the SemStream Contracts. The Adequate Assurance Letters are attached hereto as Exhibit F. To date, the Debtors have failed to respond to the Adequate Assurance Letters.

---

[4] The CSAT Terms and Conditions define "affiliate" as "a corporation controlling, controlled by or under common control with either party." See Exhibit B, pg. 1.

[5] The LSAT Terms and Conditions define "affiliate" as "a corporation controlling, controlled by or under common control with either party." See Exhibit E, pg. 1.

[6] The "Financial Responsibility" section of the CSAT Terms and Conditions (see Exhibit B, pg. 2) provides that "notwithstanding anything to the contrary in this Agreement, should seller reasonably believe it necessary to assure payment, seller may at any time require, by written notice to buyer, advance cash payment or satisfactory security in the form of a letter or letters of credit at buyer's expense in a form and from a bank acceptable to seller to cover any or all deliveries of crude oil." The "Financial Responsibility" section of the LSAT Terms and Conditions (see Exhibit E, pg. 3) provides "If the financial responsibility of the owing party becomes impaired or unsatisfactory to the other party, then in any such case advance cash payment, properly endorsed negotiable bills of lading or satisfactory security shall be given upon demand, and performance hereunder may be withheld until such payment, bills of lading or security is received."

7. On July 22, 2008 (the "Petition Date"), SemCrude and several of its affiliates, including SemFuel and SemStream (collectively, the "Debtors"), filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors are currently operating as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8. On August 7, 2008, Chevron sent reclamation demands to SemCrude, SemFuel, and SemStream (the "Reclamation Demands"). Therein, Chevron asserted its demand for reclamation of certain goods, pursuant to Uniform Commercial Code § 2-702 and 11 U.S.C. § 546(c). On August 8, 2008, Chevron filed its Notice of Reclamation of Claim (Docket No. 442) (the "Reclamation Notice") with this Court. Attached to the Reclamation Notice are copies of the Reclamation Demands and the relevant unpaid invoices for the goods delivered to SemFuel by Chevron prior to the Petition Date. Invoices for goods delivered to SemCrude and SemStream were not attached but will be provided by Chevron once they become available. At present, no goods have been returned to Chevron.

9. On or about August 15, 2008, SemStream submitted two payments totaling $643,913.01 for prepetition obligations incurred under the SemStream Contracts (the "SemStream Payment"). Chevron is currently holding this amount pending determination of this Motion by this Court.

10. On August 20, 2008, Chevron sent the Debtors a Notice of Administrative Freeze on certain payments that it owed to the relevant Debtors (the "Freeze Notice") pending determination by this Court of the validity and enforceability of the Setoff Clauses. A copy of the Freeze Notice is attached hereto as Exhibit G. The Freeze Notice also referred to certain agreements between affiliates of Chevron[7] and affiliates of the Debtors in Canada.[8] Chevron

---

[7] Specifically, these affiliates are Chevron Canada Resources, Aitken Creek Gas Storage ULC, and Unocal Canada Alberta Hub Limited (collectively, "Chevron Canada").

seeks to exercise the setoff rights to which it is entitled under the aforementioned agreements.[9] Chevron, through this Motion, respectfully requests that this Court grant it relief from the automatic stay to exercise such setoff rights.

## **RELIEF REQUESTED**

A. <u>Relief From the Automatic Stay</u>

11. Section 362(a)(7) of the Bankruptcy Code provides that the filing of the Debtors' voluntary petitions operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7).

12. The automatic stay, however, does not defeat the right of setoff under the Bankruptcy Code. A party may exercise its right to setoff in a bankruptcy proceeding but must first obtain relief from the automatic stay or obtain an order allowing setoff prior to exercising any right to setoff. *See In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989). By requiring a motion for relief from the stay to effect a setoff, § 362 creates a mechanism pursuant to which setoff can be subject to an orderly examination by the Court and the creditors of the estate. *See Matter of Corland Corp.*, 967 F.2d 1069, 1076 (5th Cir. 1992).

13. Specifically, under Bankruptcy Code § 362(d)(1), a creditor is entitled to relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). A right of setoff under § 553 of the Bankruptcy Code establishes a prima facie case of "cause" to lift the automatic stay. *See In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724 (Bankr. E.D.Pa. 2000) (existence of mutual obligations subject to setoff constitutes sufficient "cause" to meet creditor's initial evidentiary

---

[8] Specifically, these affiliates are SemCanada Crude Company and SemCanada Energy Company (collectively, "SemCanada").

[9] Appropriate legal action related to an administrative freeze and set-offs on payments related to the agreements between Chevron Canada and SemCanada will take place at the appropriate time in Canada.

burden in seeking relief from automatic stay); *In re Firestone*, 179 B.R. 148, 148 (D. Neb. 1995) (a right to setoff establishes a prima facie case of cause to lift the automatic stay); *In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994) (same); *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991) (same); *Row Steel, Inc. v. Asphalt and Sealers Equip. Mfg. (In re Row Steel, Inc.)*, 33 B.R. 20, 23 (Bankr. E.D.N.C. 1983) (once creditor has moved to lift the stay and established the mutuality of debt necessary for set-off, it becomes the debtor's burden to show that cause to lift the stay does not exist); *In re Coleman*, 52 B.R. 1, 2 (Bankr. W.D. Ohio 1985) (if a right of setoff exists, "cause" exists to lift the automatic stay).

      B.     <u>Chevron Has A Valid Setoff Right Against the Debtors</u>

      14.     Section 553(a) of the Bankruptcy Code governs setoffs in bankruptcy. In relevant part, § 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a). Section 553 does not itself create a right of setoff but rather preserves whatever rights of setoff exist under applicable non-bankruptcy law. *See Matter of Peter J. Schmitt Co. Inc.*, 150 B.R. 556 (Bankr. D.Del. 1993). The non-bankruptcy law applicable here is Texas law, which governs the Contracts at issue. See pg 2 of Exhibit B, paragraph M of Exhibit C, paragraph 14 of Exhibit D and paragraph 25 of Exhibit E.

      15.     "The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995)(citing *Studley v. Boylston National Bank*, 229 U.S. 523 (1931)). A right to setoff exists when the creditor

6

establishes that: (1) the debt and claim arose prior to the commencement of the bankruptcy case; (2) the debt and claim are mutual obligations; and (3) a right to setoff exists under non-bankruptcy law. *See* Bankruptcy Code § 553(a); *In re Luongo,* 2001 WL 811766, at *3 (5th Cir. July 18, 2001), *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987); *In re Glenn,* 207 B.R. 418, 420 (E.D. Pa. 1997).

16. "Triangular" setoffs are enforceable as an exception to the mutuality requirement where multi-party mutuality is created by a valid pre-petition contract. *See Wooten v. Vicksburg Refining, Inc. (In re Hill Petroleum Co.)*, 95 B.R. 404, 411-412 (Bankr. W.D.La. 1988) (court noted that "the narrow exception to the rule against three party, 'triangular' setoffs, occurs where there is a formal agreement by the debtor that two entities may aggregate debts owed to and from the debtor"). *See also In re Garden Ridge Corp.,* 338 B.R. 627, 634 (Bankr. D.Del. 2006) (interpreting Texas state law and stating that while triangular setoff arrangements are generally not permitted in bankruptcy, an express agreement allowing triangular setoff between related entities can create the mutuality required for setoff); *In re Matter of Harris Pie, Co.*, 43 B.R. 864, 870-71 (Bankr. W.D. Mich. 1984) ("Courts have carved out an exception to this general rule in the "triangular tradeoff" situation. The courts have found mutuality between three parties, as a matter of contract law, where there was an express agreement clearly evidencing the intent of the parties to treat the related corporations as a single entity."); *In re Balduucci Oil Co., Inc.*, 33 B.R. 847, 853 (Bankr. D.Col. 1983) ("The courts have found mutuality between three parties, as a matter of contract law, where there was an express contractual agreement clearly evincing the intent of the parties to treat the parent and subsidiary as one entity."). Thus, an express agreement allowing triangular setoff allows A to offset an obligation that it owes to B against a debt that B owes to C.

7

17. As noted, a right of setoff exists under Texas law. The right of setoff allows entities that owe each other money to apply their debts to each other. *Sommers v. Concepcion*, 20 S.W.3d 27 (Tex.App. 2000). Setoff under Texas law is "a form of equitable counterclaim which brings together obligations of parties opposing each other and, by judicial action, makes each obligation extinguish the other." *Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 174-75 (5th Cir. 1994). Its object is "to adjust the demands between the parties and allow a recovery of only the balance that is due." *Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 666 (Tex. App. 1992) *citing CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex. App. 1990).

18. Chevron is entitled to setoff the debts and credits between itself and the Debtors (specifically, SemCrude, SemFuel, and SemStream) pursuant to the existing Setoffs Clauses. Here, the debts and credits arose upon delivery and purchase of crude oil, unleaded gasoline, butane, isobutene, and/or propane, all of which took place prior to the Petition Date. Specifically, Chevron's obligation to pay $1,405,878.40[10] to SemCrude under the SemCrude Contracts, SemFuel's obligation to pay Chevron $10,228,449.00 under the SemFuel Contracts and SemStream's obligation to pay Chevron $3,549,343.54[11] under the SemStream Contracts all arose prior to the Petition Date and may be setoff against one another.

19. The debts are mutual obligations, based on the Contracts governing the relationships between Chevron and the Debtors. The parties entered into the Contracts with the express intent to permit setoffs between the parties and their affiliates. The Setoff Clauses each allow for setoffs between the relevant Chevron entity, the relevant Debtor entity, and any of each counter-party's affiliates. The Contracts thus create mutuality of debt for any debt owed to the

---

[10] This amount is the net amount due and owing by Chevron after taking into account the procedures outlined in the Net Settlement Agreement and as agreed to by SemCrude.

[11] This amount gives credit for the SemStream Payment received by Chevron.

parties and their affiliates. As such, Chevron may offset amounts that it owes to SemCrude against debts that SemFuel and SemStream owe to Chevron. Accordingly, the $1,405,878.40 that Chevron owes to SemCrude and the amounts owed to Chevron by SemStream and SemFuel are mutual obligations as per the language in the Setoff Clauses.

20. Without such relief, as requested herein, Chevron would be irreparably and unreasonably harmed because, in the absence of such relief from the Court, Chevron would be obligated to pay SemCrude approximately $1,405,878.40[12] to fulfill its obligations under the SemCrude Contracts. If such payments were made, Chevron would be unnecessarily compromising its valid secured setoff claims under applicable state law and the Bankruptcy Code without any adequate protection for its right of setoff. As such, cause exists for the Court to modify the automatic stay pursuant to the provisions of Section 362(d) of the Bankruptcy Code to allow for Chevron to exercise its valid setoff rights or administratively freeze all amounts that are due and payable to SemCrude and subject to setoff on an interim basis until such setoff rights can be finally adjudicated by the Court.

## RESERVATION OF RIGHTS

21. Chevron is still investigating the pre-petition sales and purchases between it and its affiliates and the Debtors and the Debtors' affiliates, and specifically reserves its right to amend or supplement this Motion, in any way, including, without limitation, to amend or further liquidate any amounts claimed herein.

---

[12] The Net Settlement Agreement provides for payment by wire transfer on the 20th of the month following the month of actual deliveries.

600659513v6

**WHEREFORE**, Chevron respectfully requests that the Court enter an order, in the form attached as Exhibit H hereto, modifying the automatic stay to allow Chevron to setoff amounts owed by Chevron to SemCrude against the pre-petition claims owed by SemFuel and SemStream to Chevron, and granting Chevron such further relief as this Court deems just, proper and equitable.

Dated: August 21, 2008

Respectfully submitted,

_/s/ Norman M. Monhait_

Norman M. Monhait. (#1040)
ROSENTHAL, MONHAIT & GODDESS, PA
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899
Telephone: 302.656.4433
Facsimile: 302.658.7567

and

Richard L. Epling, Esq.
Karen B. Dine, Esq.
Margot P. Erlich, Esq.
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Telephone: 212.858.1000
Facsimile: 212.858.1500

*Attorneys for Chevron Products Company,
a division of Chevron U.S.A. Inc.*