# Exhibit B

600659513v4

Chevron Products Company, A Division of Chevron U.S.A. Inc.
General Provisions for Crude Oil and Products - Exchanges and Purchase/Sales
East Products and Crude Marketing Divisions Revised: May 1, 1996

**Definitions** - When used in this Agreement, the terms listed below have the following meanings:
"Affiliate" means a corporation controlling, controlled by or under common control with either party.
"API" means the American Petroleum Institute.
"ASTM" means the American Society for Testing and Materials.
"Barrel" means 42 United States gallons at sixty degrees Fahrenheit (60°F) of crude oil or product. A U.S. gallon shall contain 231 cubic inches. For crude oil, a barrel is measured after deducting any S&W present, unless otherwise noted. This measurement corresponds to the "Net Standard Volume," in barrels at 60°F, as defined in the Annex to Chapter 1, API Manual of Petroleum Standards - October 1981.
"B/D" means barrels per calendar day.
"S&W"- means sediment and water.
" Day", "Month", and "Year", mean respectively, calendar day, calendar month and calendar year unless otherwise specified.
"Crude Oil" means crude oil and/or crude condensate, as appropriate.
"Products" means refined or partially refined petroleum materials.
"FOB", "C.I.F.", and "C&F" - shall mean Freight on Board; Cargo, Insurance and Freight; and Cargo and Freight, respectively, as defined in the latest edition of Incoterms.
"RVP" means Reid Vapor Pressure, vapor pressure when measured at one hundred degrees Fahrenheit (lOO°F) in a volume having a 1:4 ratio of liquid to air.

**Test and Measurements** - All gauging, sampling, and testing of deliveries shall be made in accordance with the latest approved methods of the API for the delivery method in then current general use at the point of delivery. For Crude Oil, full deduction shall be made for S&W, such determination shall be made according to API Petroleum Measurement Manual, Chapters 10.1 & 10.2 (water by distillation and sediment by extraction, currently same as ASTM D-473 and D-4006) at those locations which regularly measure S&W in this manner. At other locations, such determination to be made in accordance with API Petroleum Measurement Manual, Chapter 10.3 (centrifuge method, currently same as ASTM D-4007) in its then latest revision.

**Inspection** - Unless otherwise specified, the Delivering Party will provide gauging, sampling, and testing at no charge to the Receiving Party. Either party may secure outside inspectors to perform this work and if this is done, the charges therefore will be paid by the requesting party unless some other arrangement for payment is mutually agreed upon. Either party may witness any inspection(s) at its own expense.

**Quality** - The delivering party warrants that the CRUDE OIL OR PRODUCTS delivered by it hereunder conforms to the specifications set forth in the exchange or purchase/sales agreement.

**Equal Daily Deliveries** - For crude lease pricing purposes, all Crude Oil delivered hereunder during any calendar month shall be considered to have been delivered in equal daily quantities except as follows: For delivery via gauged lease tanks or trucks, the price shall be the price in effect on the date delivery commences. Delivery via metered lease tankage shall be deemed to have been delivered ratably during the period covered by the run ticket and the price in effect on each day applied thereto ("Average Ticket Price"). The above conventions shall apply unless specifically noted.

**Deliveries** - Deliveries shall be made within the delivery terminal's usual business hours and at such times as may be required by the Receiving Party, provided that reasonable advance notice of each delivery has been given by the Receiving Party. At the time of giving notice, the Receiving Party shall furnish the Delivering Party necessary shipping instructions. The Delivering Party shall prepare and furnish the other party with copies of bills of lading and other shipping papers. All papers sent to either party in regard to this Agreement shall show the Chevron Agreement number thereon.

**Warranty of Title** - Each party warrants to the other that it has good title to all Crude Oil or Products delivered by it hereunder and the right to deliver the same, and each party agrees to indemnify, defend and hold harmless the other from and against any loss, claim or demand by reason of any failure of such title or breach of this warranty. Each party warrants that Products in the form delivered are free from any valid claim for patent infringement. Each party further warrants that such Crude Oil or Products shall be free from all royalties, liens, encumbrances and applicable foreign, Federal, state. and local taxes. UNLESS OTHERWISE EXPRESSLY STATED IN THE AGREEMENT, NO OTHER WARRANTIES ARE MADE, EXPRESSED OR IMPLIED, INCLUDING,
WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY OR FITNESS OF THE Products FOR ANY PARTICULAR PURPOSE, EVEN
IF SUCH PURPOSE IS KNOWN TO THE PARTIES.

**Title, Risk of Loss and Cost of Delivery** - Except as provided below, or unless otherwise specified in the contract, title to, and all risk of loss or damage of any Crude Oil or Products shall pass as follows: a) at the inlet flange when delivering into any vessel with hoses; b) at the permanent loading pipe flange when delivering into any vessel without hoses; c) at the outlet flange when receiving from any vessel with hoses; d) at the vessel's permanent discharge pipe flange when receiving from any vessel without hoses; e) as the Crude Oil or Products enters the receiving equipment when delivering into any truck, tank car or pipeline; f) when the Crude Oil or Products is accepted by the carrier for shipment when delivering to any common carrier; and g) as the Crude Oil or Products enters a storage tank when delivering into the storage tank from a non-vessel delivery system. In the event that the Delivering or Receiving Party causes loss or damage to the Crude Oil or Products during delivery or receipt, the preceding title and risk of loss provisions shall not apply. Instead, the party causing the loss or damage shall pay for any loss or damage to the Crude Oil or Products regardless of the physical location or timing of the loss of or damage. The Delivering Party shall always pay for the expense of pumping Crude Oil or Products to or from a delivery system or common carrier.

**Exchange Volumes** - For exchanges, the volume delivered to each party by the other shall be kept approximately in balance at all times and upon termination of the exchange the party which has delivered the greater quantity shall continue to receive from the other, unless otherwise agreed, until deliveries of each party to the other are equal.

**Brand Protection for Products** - Products covered by this Agreement may not be resold or otherwise disposed of by the Receiving Party under the brand name of the Delivering Party (or any other name or names similar thereto) except with the written consent of the Delivering Party. In the event of a violation of this provision, the Delivering Party, in addition to any other remedies it may have, may, at its option and without any notice whatsoever having been given to the Receiving Party, terminate this Agreement forthwith or may suspend all shipments of products under this Agreement during such period as the Receiving Party continues to violate this provision.

**Government Regulations** - Each party warrants that the Crude Oil or Products it delivers hereunder will be produced and delivered in full compliance with all applicable Federal, state and local laws and regulations (including without limitation volatility regulations for gasoline and alcohol blends, regulations for reformulated gasoline and blendstocks and conventional gasoline) and all Presidential Proclamations which apply to either party. Receiving Party warrants that it may lawfully receive, sell, use and transport such Crude Oil or Products in interstate and intrastate commerce, and agrees to funish to the other party any evidence required to prove compliance with such laws, regulations and proclamations and to file with governmental agencies reports evidencing such compliance if required by such law, regulations and proclamations.

**RVP Compliance and Documentation** - Delivering Party agrees to comply with all Federal, state, and local volatility regulations for Gasoline and Alcohol Blends (including but not linited to 40 CFR 80.27 and 80.28, as revised from time to time) and hereby certifies that any Products delivered pursuant to this Agreement are in compliance with the applicable standards when delivered to the Receiving Party. Delivering Party agrees to provide to Receiving Party for each rack or vessel delivery either a certificate of analysis, a bill of lading, a delivery ticket, or a loading ticket that certifies and correctly states the maximum RVP of the products at the time of delivery. Receiving Party agrees to sell, offer for sale, dispense, supply offer for supply, and transport such Products in compliance with said Federal, state, and local volatility requirements.

**RFG and CG Compliance and Documentation** - Delivering Party and Receiving Party shall comply with all Federal, state and local regulations for reformulated gasoline and blendstocks (individually and jointly "RFG") and conventional gasoline ("CG") covered by this Agreement, including but not limited to regulations found at 40 CFR 80.65 through 80.89 (promulgated February, 1994) as may be revised or amended from time to time. Delivering Party hereby certifies that all Products the custody of or title to which is delivered pursuant to this Agreement are in compliance with applicable standards when delivered to the Receiving Party, and the documentation regarding each such delivery is also in compliance with applicable requirements. Delivering Party shall provide Receiving Party all transfer documents required by 40 CFR 80.77 for RFG and by 40 CFR 80.106 for CG deliveries, whether by rack, truck pipeline or vessel. Delivering Party and Receiving Party shall each maintain records of a type and manner and for the time required to comply with 40 CFR 80.74. Delivering Party agrees that it has in effect and shall maintain a Quality Assurance Program as required by 40 CFR 80.79 (c) that includes, without limitation, procedures and requirements for periodic sampling and testing of product and the remedying of gasolines not in compliance. Delivering Party shall provide evidence of such Quality Assurance Program to Receiving Party upon request.

**Federal Contract Clauses** - The word "Contractor" as used in Federal law, rule, regulation or order referred to herein shall refer to each party to this Agreement. Unless exempted by Federal law, rule, regulation or order, Contractor agrees to comply with the following clauses contained in the Code of Federal Regulations (including any revision and redesignation thereof, incorporated herein by reference, the full text of which will be made available upon request: 48 CFR 52.222-35 (Disabled and Vietnam Veterans); 48 CFR 52.222-36 (Handicapped Workers); 48 CFR 52.222-26 (Equal Opportunity); 48 CFR 52.219-9 (Utilization of Small and Small Disadvantaged Business Concerns); 48 CFR 52.219-113 (Utilization of Women-Owned Business Concerns). Contractor also agrees: (i) to comply with all applicable requirements of the Clean Air Act, the Federal Water Pollution Control Act, and the regulations and guidelines issued under each; (ii) that no portion of the work required by this contract will be performed in a facility listed on the Environmental Protection Agency List of Violating Facilities on the date when this contract was awarded unless and until the EPA eliminates the name of such facility or facilities from such listing; (iii) to use its best efforts to comply with clean air standards and clean water standards at the facility in which the contract is being performed; and (iv) to insert the substance of the provisions of this paragraph into any nonexempt subcontract. Contractor shall execute a Certificate of Nonsegregated Facilities. In addition to those specifically referenced herein, Contractor shall comply with all Federal, state, and local laws, rules and regulations (including but not limited to those related to safety and health) which are now, or in the future may become, applicable to Contractor, its business, equipment and personnel, in relation to the work and to Contractor's performance hereunder. Furthermore, Contractor shall comply with the Immigration Reform and Control Act of 1986, and all rules and regulations issued thereunder, and shall execute an Immigration Certification as required.

**Taxes** - The consideration received by Delivering Party includes any and all applicable taxes, duties, tolls, fees, imposts, charges, or other exactions, or the equivalent

amounts thereof, now or hereafter imposed, levied or assessed by any governmental or tribal authority upon, measured by, incident to, or as a result of the transaction herein provided for, or the transportation, importation, production, manufacture, transfer, use or ownership of the goods or source materials thereof that are the subject matter of this Agreement; provided, however, that if any applicable law shall require Delivering Party to collect any tax, fee, duty, toll, impost, charge, or other exaction from Receiving Party, Receiving Party shall pay such amount on demand by Delivering Party. Personal property taxes shall be paid by the party having title to the goods covered by this Agreement as of the assessment date. When applicable, property taxes on any exchange balance existing on the tax assessment date each year will not become a lien and the party to whom the goods are due will not be required to reimburse the other party for any property taxes levied thereon unless a specific agreement to the contrary has been entered into by the parties prior to the applicable tax assessment date of that year. In the event such an agreement has been entered into, the invoices requiring payment of such property taxes shall be submitted from one party to the other prior to the end of the applicable year. The location for tax purposes at which the exchange balance is due shall be determined by mutual agreement of the parties.

**Financial Responsibility** - If, during the term of this Agreement, the financial responsibility (including, but not limited to, either party's ability to perform under Warranty of Title) of the owing party becomes impaired or unsatisfactory to the other party, then in any such case advance cash payment, properly endorsed negotiable bills of lading, or satisfactory security shall be given upon demand, and performance hereunder may be withheld until such payment, bills of lading or security is received. If such payment, bills of lading, or security is not received within fifteen *(15)* days from demand therefore, the demanding party may terminate this Agreement. In the event either party makes an assignment for the benefit of creditors or any general arrangement with creditors, or if there are instituted by or against either party proceedings in bankruptcy or under any insolvency law or law for reorganization, receivership or dissolution, the other party may withhold shipments or terminate this Agreement without notice. In the event either party fails to make a timely payment of monies due and owing to the other party, or in the event either party fails to make timely delivery of product or crude oil due and owing to the other party, the other party may offset any deliveries or payments due under this or any other Agreement between the parties and their affiliates. The exercise by either party of any right under this paragraph shall be without prejudice to any claim for damages or any other right under this Agreement or applicable law.

**Invoices and Terms of Payment** - Each party shall send to the other party, as specified in the contract, statements and invoices covering the prices, net differentials and taxes, if any, payable to it hereunder in respect of deliveries made by both parties during such month. Unless otherwise specified, exchanges shall be on a barrel-for-barrel basis without payment of any monies by either party to the other, except for (1) any differentials indicated in the Agreement, and (2) any taxes covered in such paragraph of these General Provisions.

**Audit** - Each party and its duly authorized representatives shall have access to the accounting records and other documents maintained by the other party which relate to materials being sold or delivered to the other party under this Agreement and shall have the right to audit such records at any reasonable time or times within three years after the termination of this Agreement.

**Waiver of Future Supply Obligations and Mutual Agreement Regarding Termination** - This Agreement is freely entered into between the parties hereto. It does not reflect or grow out of any legal obligation which either party may have to the other to supply any Crude Oil or Products. Neither party expects or desires that this Agreement shall form the basis of any future obligation of either party to supply such Crude Oil or Products to the other. To the extent that present or future laws or regulations may require any such supply obligation, each party hereby waives in advance any right it may now have or subsequently obtain to enforce any such obligation. Should any governmental enactment be deemed to require either party to supply the other, then upon written notification of termination given by one party to the other, this Agreement shall be deemed terminated and the supplier/purchaser or exchange relationship hereby created will be discontinued. If necessary, the parties will execute such other documents and in good faith endeavor to obtain such consents from third parties as may be required under applicable laws or regulations to effectuate such terminations.

**Limitations of Liability** - A party's exclusive remedy for any and all losses or damages resulting from the exchange or sale or purchase of Crude Oil or Products under this agreement, including, but not limited to, any allegation of breach of warranty, breach of contract, negligence or strict liability, shall be limited, at the party's option, to either the return of the purchase price or the replacement of the particular Crude Oil or Products for which a claim is proved. In no event shall either party be liable for any special, consequential, incidental or indirect losses or damages from the sale or exchange of Crude Oil or Products under this agreement. This provision shall not apply to any party's failure to deliver Crude Oil or Products hereunder nor shall it apply in the event a civil penalty or judgment is assessed or rendered against one party hereto because the other party hereto failed to or did not comply with Federal, state or local laws or regulations relevant and applicable hereunder to the delivery or receipt of any Crude Oil or Products.

**Indemnity** - Each party to this Agreement shall indemnify, defend, and hold the other harmless from claims, demands, expenses (including penalties, interest and reasonable attorneys' fees), and causes of action asserted against the other by any other person (including without limitation employees of either party or any Federal, state or local governmental authority) for personal injury or death, or the loss or damage to property, resulting from the willful or negligent acts or omissions of the indemnifying party or from the indemnifying party's failure to comply with Federal, state or local laws or regulations relevant and applicable to the delivery or receipt of any Crude Oil or Products hereunder. Where personal injury, death or loss of or damage to the property is the result of the joint negligence or misconduct of the parties hereto, the parties expressly agree to indemnify each other in proportion to their share of such joint negligence or misconduct.

**Conflicts of Interest** - Except as otherwise expressly, provided herein, no director, employee or agent of either party, its subcontractors or vendors, shall give or receive from any director, employee or agent of the other party or any affiliate, any commission, fee, rebate, gift or entertainment of significant cost or value in connection with this Agreement. In addition, no director, employee, or agent of either party, its

subcontractors or vendors, shall enter into any business arrangement with any director, employee, or agent of the other party or any affiliate without prior written notification thereof. Any representative(s) authorized by either party may audit the applicable records of the last three years of the other party for the sole purpose of determining whether there has been compliance with this paragraph.

**Force Majeure** - In the event either party is rendered unable, wholly or in part, to perform its obligations under this Agreement (other than to make payments due hereunder) due to acts of God, floods, fires, explosions or storm; loss of transportation beyond the party's control; strikes, lockouts or other industrial disturbances; wars or any law, rule, order or action of any court or instrumentality of the Federal or any state government; exhaustion, reduction or unavailability of Crude Oil or Products at the source of supply from which deliveries can reasonably be made hereunder, or the exhaustion or unavailability or delay in delivery of any material or product necessary in the manufacture of the Products deliverable hereunder, or any other cause or causes beyond its control whether similar or dissimilar to those stated above, it is agreed that on such party's giving notice and full particulars of such force majeure to the other party, then the obligations of the party giving such notice shall be suspended from the date of receipt of such notice and for the continuance of any inability so caused (but for no longer than 30 days after the date of receipt of such notice), and cause shall, so far as possible, be remedied with all reasonable dispatch. The parties expressly agree that the sole purpose of the Force Majeure provision is to excuse the performance of either party during a force majeure event. Neither party shall derive additional profit under the Equal Daily Deliveries provision of this Agreement as a result of a force majeure event.

**Allocation** - In case of partial or total interruption or loss or shortage of transportation facilities or supplies, or shortage of Crude Oil or Products deliverable hereunder, Delivering Party may allocate the available Crude Oil or Products to any party if Delivering Party does not have sufficient supplies of Crude Oil or Products to meet the full requirements of Receiving Party. Delivering Party, its subsidiaries and affiliated companies or any of Delivering Party's other customers. Delivering Party may allocate its available supplies of Crude Oil or Products on any basis which in Delivering Party's sole judgment is fair and reasonable, including, but not limited to, an allocation based on historical or planned deliveries. The shortage creating the need to allocate may be based on any of the following: an actual shortage of Crude Oil or Products a partial or total interruption or loss or shortage of transportation facilities or supplies; uncertainties in the supply/demand situation including a decision by Delivering Party that the cost of Crude Oil or Products is unreasonably high; a shortage in a contemplated source of supply; or a general shortage in Delivering Party's supply system (including the supply system of Delivering Party's parent company, its subsidiaries and affiliated companies). Delivering Party shall have no obligation to make up any shortage resulting from a fair and reasonable allocation.

**Marine Provisions** - In the event delivery of any Crude Oil or Products hereunder is to be accomplished by waterborne transportation, the provisions set out in the "Marine Provisions" attached hereto are made a part hereof.

**Safety** - Each party agrees that its agents and employees shall comply with all safety regulations of the other when such agents or employees are upon the premises of the other in connection with the performance of this Agreement.

**Assignment** - The terms, conditions, and provisions hereof shall extend to and be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns; but it is expressly agreed that neither party shall assign this Agreement without the prior written approval of the other. An approval of any assignment of this Agreement shall not be unreasonably withheld by either party.

**Waiver** - The waiver by either party of the breach of any provision hereof by the other party shall not be deemed to be a waiver of the breach of any other provision or provisions hereof or of any subsequent or continuing breach of such provision or provisions.

**Alterations and Conflicts** - No oral promises, agreements or warranties shall be deemed a part hereof, nor shall any alteration or amendment of this Agreement, or waiver of any of its provisions, be binding upon either party hereto unless the same be in writing signed by the party charged. In the event of a conflict between terms of the exchange or purchase/sales agreement and these general provisions, the exchange or purchase/sales agreement shall control.

**Notice** - Any notice hereunder shall be in writing and shall be deemed properly served on the date deposited in the U.S. Post Office if sent by certified or registered mail or in the telegraph company's office if sent by telegram and, in either case properly addressed to the parties at their respective addresses stated on the Agreement, unless changed by notice. For any notice sent by mail, a facsimile of such notice shall also be sent to the parties to ensure timely receipt. Any other method of delivery shall be effective upon actual receipt of written notice.

**Governing Law** - This Agreement, and any disputes arising hereunder, shall be governed by the laws of the State of Texas.

This form replaces:
Chevron U.S.A. Products Company, General Provisions for Crude Oil and Products, September 30, 1994
SD-300-E (CD 5-86), SD-784 (CD 6-86)
Chevron U.S.A. Inc. Crude Oil General Provisions, September 1, 1983