# Exhibit D

14

April 22, 2004

SemCrude L.P.
6120 S. Yale Ave, Suite 700
Tulsa, OK 74136

**Net Settlement Agreement**

Dear Gentlemen:

For the mutual promises contained in this letter and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, ChevronTexaco Global Trading, a division of Chevron U.S.A. Inc. (hereinafter "CTGT") and **SemCrude L.P.** (hereinafter "SemCrude") enter into this Net Settlement Agreement ("Agreement") in order to establish net-out procedures from and after the effective date of this Agreement.

This Agreement shall be effective from and after April 22, 2004 and shall continue in effect indefinitely so long as CTGT and **SemCrude** continue to purchase, sell, or exchange crude oils with each other, provided that either Party may terminate this Agreement, without affecting any existing purchase, sale, or exchange contract between the Parties, by giving at least sixty (60) days advance written notice to the other Party. This Agreement shall operate as follows:

1. This Agreement shall serve to amend the "payment" provisions of all existing crude oil purchase, sale, or exchange contracts relating to crude oil produced in the United States. This Agreement shall not apply to contracts for the delivery of crude oil and/or condensate delivered by tanker(s) and contracts secured by documentary letter(s) of credit, which transactions shall be paid according to the provisions of the applicable contracts between the Parties. Nor shall this Agreement apply to natural gas or refined products.

2. Each month the Parties shall mutually agree to the total value due each other for deliveries made in the preceding month, which deliveries shall be priced in accordance with the applicable contracts. (Each Party shall continue to invoice the other Party as applicable.)

   On the business day immediately preceding each settlement date, identified in Section 5 below, each Party shall cause its authorized representative to consult with the authorized representative of the other Party to review outstanding invoices, confirm amounts and determine the payment to be made as provided herein. The failure of either Party to cause its authorized representative to confer with the authorized representative of the other Party as required by this Agreement shall not affect the payment obligation for such settlement date.

SemCrudenet out agrmtcrude

March 16, 2004
2 of 4

The "authorized representative" of each Party for the purpose of the Agreement shall be the following:

For CTGT:
Carmen Arteaga
1111 Bagby St, 33rd Floor
Houston, Texas 77002
713/752-7070

For SemCrude:
Lee Bullock
6120 S. Yale Ave, Suite 700
Tulsa, OK 74136
918/388-8100

Either Party may, upon written notice to the other Party, change the designation of its authorized representative.

3. Disputes as to any items contained on an invoice shall be reconciled between the Parties in a mutually agreeable manner. However, neither Party shall refuse to participate in this process because of a disputed invoice. If any invoice is disputed, the invoiced Party may require that only the amount it does not dispute be agreed upon as the value due in the process described in Section 2 above, pending resolution of the dispute and proceed otherwise with the netting out process.

4. The net difference between the total values agreed to in Section 2 above shall be the amount payable to the Party delivering the greater value (Other Party) by the Party delivering the lesser value (Owing Party).

5. The net difference as calculated in Section 4 above shall be paid by the Owing Party to the Other Party by wire transfer on the 20th of the month following the month of actual deliveries. If the 20th falls on a Saturday, or a United States Bank Holiday other than a Monday, payment will be made on the last preceding work day. If the 20th falls on a Sunday or Monday that is a United States Bank Holiday, payment will be made the next business day.

6. Any payment adjustments or inadvertent omissions from the above procedure shall be processed for payment expeditiously and in a mutually agreeable fashion.

7. Each Party agrees that for the time deadline to be effective as to the other Party, each Party must have in its possession all original invoices as applicable (involving the transaction month) from the other Party not later than three business days before the 20th payment day.

8. Each net-out performed in accordance with this Agreement shall, by mutual agreement of the parties, be deemed effective, and payment shall be deemed to have been made as of the

March 16, 2004
3 of 4

      due date of the individual transactions giving rise to each invoice that gives rise to the net-out, regardless of when settlement is finally booked by either Party.

9. To facilitate payment pursuant to the terms of this Agreement, each Party hereto agrees to accept legible telex and/or facsimile invoices; the usual "hard copy" invoices will be provided, if requested.

10. Without limiting any other rights that may be available to the Non-Defaulting Party (as hereafter defined), in the event that a Party hereto (the "Defaulting Party") is the subject of a bankruptcy, insolvency or other similar proceeding or fails to pay its debts generally as they become due, the other Party hereto (the "Non-Defaulting Party") shall have the right, exercisable in its sole discretion and at any time, to liquidate any or all Contracts then outstanding between the Parties (whether the Non-Defaulting Party is the seller or the buyer thereunder) by declaring any or all such Contracts terminated (whereupon they shall automatically terminate except for the payment obligation referred to hereafter), and the monies due under such terminated Contracts shall be immediately netted against each other.

11. Existing Contracts between the Parties hereto shall continue in effect and shall not otherwise be affected by this Agreement. Existing Contracts and Contracts entered into between the Parties on/or after the date hereof shall be subject to this Agreement, unless it is otherwise mutually agreed in writing.

12. In addition to the termination rights otherwise set forth herein, either Party to this Agreement may eliminate from and terminate it as to one or more Contracts now or hereafter subject to this Agreement by providing at least sixty (60) days written notice to the other Party, which notice shall be deemed effective when received. No termination of this Agreement, either in whole or as to one or more contract(s) between the parties shall of itself otherwise affect or impair the contract(s) that are subject to this Agreement.

13. The rights of each Party under this Agreement are in addition to, and not in limitation or exclusion of any other rights which a Party may have under the contracts or by operation of law or otherwise.

14. THE LAW GOVERNING THIS AGREEMENT SHALL BE THAT OF THE STATE OF TEXAS WITHOUT REGARD TO ANY CHOICE OF LAW RULES.

15. Unless the Parties agree otherwise, all payments due under any future crude oil purchase, sale, or exchange agreements (subject to the exclusions in Section 1 herein) between GTGT and SemCrude shall be handled in accordance with the terms of this Agreement.

net settlement agrmt astra crude.doc

March 16, 2004
4 of 4

16. Neither Party shall assign this Agreement or its rights hereunder without the prior written consent of the other Party.

17. The Agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart, and shall become a binding agreement when all of the Parties hereto have each executed one counterpart.

The parties acknowledge and agree that the contracts are forward contracts and the parties are forward contract merchants as that term is defined in the U.S. Bankruptcy Code.

Sincerely,

ChevronTexaco Global Trading
a division of Chevron U.S.A. Inc.

By: _____

Title: VICE PRESIDENT

Date: 5-26-04

ACCEPTED AND AGREED TO:

SemCrude L.P.

By: _____

Gregory C. Wallace

Vice President

April 22, 2004

net settlement agrmt astra crude.doc