IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SEMCRUDE, L.P., *et al.,*[1] ) | Case No. 08-11525 (BLS) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Re: Docket No. 1660 |
| ) | |

### SEMFUEL, L.P.'S OBJECTION TO THE MOTION OF TE PRODUCTS PIPELINE COMPANY, L.L.C. FOR RELIEF FROM STAY TO TERMINATE TRANSPORTATION AND LEASE AGREEMENTS

SemFuel, L.P. ("SemFuel") and its affiliated chapter 11 debtors (the "Debtors"), hereby object to the Motion of TE Products Pipeline Company, L.L.C. ("TEPPCO") for Relief from Stay to Terminate Transportation and Lease Agreements (the "Motion"), and in support hereof respectfully represent as follows:

### PRELIMINARY STATEMENT

1. TEPPCO seeks relief from the automatic stay to terminate a Transportation Agreement, RP 744, as amended through a First Amendment dated April 8, 2001, a Second Amendment dated December 20, 2002, and a Third Amendment

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: SemCrude, L.P. (7524), Chemical Petroleum Exchange, Incorporated (8866), Eaglwing, L.P. (7243), Grayson Pipeline, L.L.C. (0013), Greyhawk Gas Storage Company, L.L.C. (4412), K.C. Asphalt L.L.C. (6235), SemCanada II, L.P. (3006), SemCanada L.P. (1091), SemCrude Pipeline, L.L.C. (9811), SemFuel Transport LLC (6777), SemFuel, L.P. (1015), SemGas Gathering LLC (4203), SemGas Storage, L.L.C. (0621), SemGas, L.P. (1095), SemGroup Asia, L.L.C. (5852), SemGroup Finance Corp. (3152), SemGroup, L.P. (2297), SemKan, L.L.C. (8083), SemManagement, L.L.C. (0772), SemMaterials Vietnam, L.L.C. (5931), SemMaterials, L.P. (5443), SemOperating G.P., L.L.C. (5442), SemStream, L.P. (0859), SemTrucking, L.P. (5355), and Steuben Development Company, L.L.C. (9042).

RLF1-3337278-2

dated October 4, 2004 (collectively, the "Transportation Agreement")[2] and a September 27, 2000 Lease Agreement, as amended in an amendment dated December 20, 2002 (the "Lease Agreement," and together with the Transportation Agreement, the "TEPPCO Agreements").[3] The Court should deny the Motion because TEPPCO has failed to demonstrate cause for relief from the stay. The payments TEPPCO claims the Debtors owe are related solely to prepetition services. As for alleged post-petition breaches, there are none because the Debtors have not been billed for any charges arising under the TEPPCO Agreements post-petition. The Debtors are assessing whether the Transportation Agreement and the Lease have any value to the estate and, when their assessment is complete, will decide whether to reject them or assume and assign them to a third party.

2. In its Motion, TEPPCO mischaracterizes patently prepetition obligations owed by SemFuel as "post-petition charges." Motion at 4. As described in further detail below, TEPPCO makes this claim even though it acknowledges that these debts, totaling approximately $1.6 million, were the subject of invoices issued to SemFuel *before* the chapter 11 petition date and related to contract charges, including historical deficiency charges for periodic under-utilization of the pipeline by the Debtors. *Id.* at ¶¶ 6, 15. Instead, TEPPCO argues they are post-petition debts because the invoices were not due until after the bankruptcy filing date. Thus, TEPPCO seeks to convert its prepetition claims into post-petition obligations by virtue of its own delay in issuing invoices. TEPPCO cites no authority for the proposition that the invoice due-date controls whether

---

[2] The Termination Agreement is attached as Exhibit 1 to the Motion.

[3] The Lease Agreement is attached as Exhibit 2 to the Motion.

RLF1-3337278-2

a claim for prepetition services is characterized as pre- or post-petition, and the Debtors are aware of none.

3. The relief TEPPCO seeks is also inconsistent with the fundamental purposes of the automatic stay and the chapter 11 process. The Debtors are stabilizing their businesses and reviewing executory contracts and leases to determine whether they have any value to their estates. Early termination of the Transportation Agreement and the Lease Agreement would be inconsistent with these purposes. Thus, the Court should deny the Motion on these grounds.

4. TEPPCO asserts a security interest in inventory trapped in its pipeline. For purposes of this Objection, the Debtors do not dispute the validity of TEPPCO's liens. The priority of its liens, however, is disputed by the Debtors' lenders and pursuant to Rule 7001(2) that dispute must be adjudicated in the separate adversary proceeding that TEPPCO has commenced, which seeks substantially the same relief as does TEPPCO's Motion. Accordingly, in the interests of judicial efficiency, the Court should deny the Motion and adjudicate all relevant issues in the adversary proceeding.

## FACTS

5. TEPPCO's Motion is premised upon its allegation that unpaid pre-petition invoices constitute post-petition defaults. The four invoices cited by TEPPCO as its basis for lifting the stay were *all* issued by TEPPCO to SemFuel before the chapter 11 filing date. TEPPCO itself admits that the invoices were issued on June 30, 2008, July 6, 2008, and July 13, 2008, and that SemFuel subsequently filed for chapter 11 protection on July 22, 2008. Motion at ¶¶ 6, 15. Therefore, these invoices are by definition pre-petition debts. In fact, courts have found that "the timing of payment does not affect when the

3

obligation arose... [T]he Bankruptcy Code defines a "claim" to include a contingent and unliquidated right to payment; a "claim" arises when the right to payment accrues, not when payment is due." *In re Telephone Warehouse, Inc.*, 259 B.R. 64, 69 (Bankr. D. Del. 2001)(internal citations omitted). Furthermore, factually, the largest of the invoices at issue -- the July 13, 2008 invoice -- is comprised of charges that date back to 2005 for which TEPPCO inexplicably failed to timely bill the Debtors.

6. SemFuel has not defaulted on its post-petition obligations because no such obligations have accrued. TEPPCO has not, and cannot, allege that SemFuel has failed to make any post-petition payments because SemFuel has not been billed for post-petition charges. Accordingly, there is no post-petition default.

7. TEPPCO wrongly implies that cause to lift the stay and permit termination of the TEPPCO Agreements exists because SemFuel currently is not actively transporting fuel through the TEPPCO pipelines. The Debtors continue to perform under the Lease Agreement by, *inter alia*, continuing to operate and staff TEPPCO's North Houston Terminal. In addition, the Transportation Agreement gives SemFuel the option of determine how much fuel, if any, to transport through TEPPCO's pipelines and process at TEPPCO's facility. SemFuel has discretion to determine how or whether to utilize that capacity. A decision not to utilize capacity does not constitute a post-petition default giving rise to a right to terminate.

# ARGUMENT

## A. SemFuel Has Not Committed a Post-Petition Default That Would be the Basis for a Motion to Lift Stay

8. The automatic stay is one of the fundamental protections afforded to a debtor's estate under title 11 of the United States Code (the "Bankruptcy Code"). *Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986). The broad protection of the automatic stay extends to all matters that may have an effect on a debtor's estate and is designed to relieve "the financial pressures that drove [the debtors] into bankruptcy." H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *Official Committee of Unsecured Creditors v. PSS Steamship Co.* 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). It does this by providing the debtor with a "breathing spell" after the commencement of a chapter 11 case, shielding it from creditor harassment at a time when the debtor's personnel should be focusing on restructuring. *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999), *cert. denied*, 528 U.S. 1079 (2000); *In re University Medical Ctr.*, 973 F.2d 1065, 1074 (3d Cir. 1992).

9. Relief from the stay will be granted only where the party seeking relief demonstrates "cause":

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest...

11 U.S.C. § 362(d)(1).

RLF1-3337278-2

10. "Cause" is not expressly defined in the Bankruptcy Code, leaving courts to consider what constitutes cause based on a totality of the circumstances in each particular case. *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). In determining if "cause" exists, however, a court should balance the interests of the creditors and the debtor and the court should consider the policies underlying the Bankruptcy Code. *In re Indian Palms Assocs. Ltd.*, 61 F.3d 197, 206 (3d Cir. 1995); *In re Lincoln*, 264 B. R. 370, 372-73 (Bankr. E.D. Pa. 2001).

11. TEPPCO has not demonstrated cause sufficient to lift the stay. TEPPCO has not cited any actual post-petition default by SemFuel as a basis for its motion to lift stay, and all four of the invoices cited by TEPPCO were issued prior to SemFuel's chapter 11 filing and cover periods before the petition date. SemFuel obviously cannot pay pre-petition invoices at this time; TEPPCO's assertion of these unpaid invoices as post-petition defaults is a transparent attempt to manufacture a purported basis for preemptive termination of the Transportation Agreement and the Lease Agreement.

12. The due-date on an invoice does not control whether the claim is post-petition or prepetition. The Third Circuit has held that "an antecedent debt owed by the debtor occurs when a right to payment arises-even if the claim is not fixed, liquidated, or matured . . . The right to payment generally arises when the debtor obtains the goods or services." *In re First Jersey Securities, Inc.*, 180 F.3d 504, 511 (3d Cir. 1999)(internal citations omitted). Indeed, TEPPCO's logic would lead to the absurd results that prepetition debts closer in time to the petition date would be treated differently from older obligations and perversely would reward creditors who delay their invoices, as TEPPCO
6

RLF1-3337278-2

did in this case. The result TEPPCO seeks is at odds with the basic bankruptcy principle that similarly-situated creditors should be treated similarly.

13. Although it is true that the Debtors are not currently fully utilizing its reserved space on the TEPPCO pipeline, this does not constitute grounds for relief from the stay to terminate either the Transportation Agreement or the Lease Agreement. SemFuel continues to operate the North Houston Terminal in accordance with the Lease Agreement. TEPPCO has not alleged otherwise. No provision in the Transportation Agreement allows for termination just because SemFuel is not fully utilizing the pipeline.[4] To the extent that TEPPCO is arguing that it is entitled to contractual protections such as prepayment of all charges by wire transfer to protect their security interests, those contractual protections are not necessary to protect TEPPCO's security interests. TEPPCO has not even billed SemFuel for any post-petition payments. When and if that happens, SemFuel will make payments for any post-petition services that it has used.

14. SemFuel continues to perform under the agreements on a post-petition basis and is not in default on any of the operating requirements of either the Transportation Agreement or the Lease Agreement. There likewise has been no postpetition payment default. The case law TEPPCO cites is inapposite. For example, in *El Paso Refinery*, 220 B.R. 37, 40 (Bankr. W.D. Tex. 1998), the debtor had a supply

---

[4] To the extent that TEPPCO argues it is entitled to a deficiency charge payment for SemFuel's decision not to utilize transportation capacity pursuant to Section 5 of the Transportation Agreement, TEPPCO is not entitled to such a payment as an administrative expense as a matter of bankruptcy law. Courts have found in similar fuel pipeline capacity cases that claims of pipeline companies for post-petition periods of non-use are *not* entitled to administrative priority. *In re Enron*, 279 B.R. 79, 90 (Bankr. S.D.N.Y. 2002).

agreement requiring it to supply fuel to U.S. military bases. The debtor ceased doing so after the petition date and the court lifted the stay to allow termination of the contract. Thus, El Paso Refinery dealt with a debtor who was a vendor and was unable or unwilling to provide the products required under the contract. In contrast, the Debtors here are *purchasers* of services under a contract that permits them discretion to decide whether they will use those services at all, and if so in what quantities. In the same vein, the *Delaney-Morin* and *Watson* cases cited by TEPPCO are irrelevant because here there has been no post-petition default.

**B. SemFuel Has the Authority to Determine Whether it will Assume or Reject the Transportation and Lease Agreements.**

15. SemFuel is stabilizing its business and will, at the appropriate time, determine whether it wishes to assume or reject executory contracts, including the Transportation Agreement and the Lease Agreement. If SemFuel seeks to assume the agreements, TEPPCO will at that time have the right to seek payment of any pre-petition amounts owed and adequate assurance of future performance, or argue that assumption is not permitted. In the meantime, the automatic stay provides the critical breathing space the Debtors need to restructure their finances amidst extraordinary volatility in the financial and energy markets.

16. As a Debtor, SemFuel has a significant interest in maintaining an orderly bankruptcy process, ensuring that prepetition creditors are treated equally, stabilizing its business, and assessing the value of executory contracts and unexpired leases. In contrast, TEPPCO's interests in terminating now are extremely limited and are protected because there has been no post-petition default. Furthermore, TEPPCO's interests are

8

protected by section 365 of the Bankruptcy Code. If SemFuel seeks to assume and assign the Transportation Agreement and the Lease Agreement, TEPPCO will at that time have the right to seek cure of any prepetition amounts owed and to seek adequate assurance of future performance, or to argue that assumption is not permitted.

### C. TEPPCO's Arguments Concerning Lifting the Automatic Stay Because SemFuel has No Equity or Interest in the Agreements are Invalid Because the Agreements Do Not Relate to an Act Against Property.

17. TEPPCO also argues that lifting the automatic stay is appropriate because SemFuel has no equity in the Transportation and Lease Agreements or because the agreements are not necessary to an effective reorganization. Motion at ¶ 30. The premise of the Motion, however, is not that TEPPCO is seeking relief from the stay to foreclose on property in which it has a security interest. The Motion seeks relief from stay to terminate executory contracts for which a showing of cause is required under section 362(d)(1). Accordingly, TEPPCO's reliance on section 362(d)(2) is misplaced. But even if TEPPCO were correct in that section 362(d)(2) applied, relief from the stay is not appropriate because, as SemFuel will demonstrate at an evidentiary hearing at an appropriate time, that the value of the product in the pipeline exceeds the value of TEPPCO's claim and the Debtors therefore do have "equity" in that property. 11 U.S.C. § 362(d)(2)(A). Because the Debtors do have equity in the property, the Court need not even reach the question of whether the Transportation Agreement, the Lease Agreement, or the product trapped in the pipeline is "necessary to an effective reorganization" under section 362(d)(2)(B).

### D. TEPPCO's Arguments Concerning Its Security Interests Are Inappropriate for a Motion to Lift Stay.

18. TEPPCO argues that its not being adequately protected under the terms of the Transportation Agreement. Motion at n.5. The Debtors do not dispute that the Transportation Agreement grants TEPPCO a security interest in the fuel inventory located in the TEPPCO pipeline system. Notwithstanding, a lift stay motion is not the proper procedural device for TEPPCO to assert its security interest. Several other parties in the bankruptcy, including the DIP lenders, have liens and security interests that must be considered. The priority of TEPPCO's security interests in the inventory versus the other various liens and security interests cannot be decided the context of this motion to lift the automatic stay. In fact, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require that priority of secured claims be determined in an adversary proceeding. Bankruptcy Rule 7001(2) states that an adversary proceeding must be used to "determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bank. P. 7001(2). TEPPCO will not be prejudiced by dismissal of its Motion in favor of proceeding in an adversary proceeding as is required by the Bankruptcy Rules. TEPPCO has already initiated an adversary proceeding concerning this matter, and TEPPCO has already named the Banks as parties to that adversary proceeding. *See*, Adv. Proc. No. 08-51452-BLS. Dismissal of TEPPCO's Motion will result in the more efficient proceedings, as all the parties necessary for a determination of the status, validity and priority of TEPPCO's security interests will be before the Court resulting in savings to the estate by the reduction of duplicate proceedings.

WHEREFORE the Debtors respectfully requests that the Court deny all relief requested by the TEPPCO in the Motion and grant the Debtors such other and further relief as is just.

Dated: November 3, 2008
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
L. Katherine Good (No. 5101)
Maris J. Finnegan (*DE admission pending*)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Adam P. Strochak
M. Jarrad Wright

-and-

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Michelle V. Larson
Martin A. Sosland

*Attorneys for the Debtors and Debtors-in-Possession*