**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SEMCRUDE, L.P., <u>et al.</u>, | ) | Case No. 08-11525 (BLS) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Docket Reference No. 888 |

### OPINION[1]

Before the Court is the motion (the "Motion") [Docket No. 888]
of Chevron Products Company, a division of Chevron USA, Inc.
("Chevron") seeking relief from the automatic stay to effect a
"triangular setoff" of certain debts that are owed or owing between
it and three separate debtors in these jointly administered cases.
For the following reasons, the Court will deny the Motion.

### I.   BACKGROUND

On July 22, 2008 (the "Petition Date"), SemGroup, L.P.
("SemGroup"), and certain direct and indirect subsidiaries (each a
"Debtor" and collectively referred to hereinafter as the
"Debtors"), including SemCrude, L.P. ("SemCrude"), SemFuel, L.P.
("SemFuel"), and SemStream, L.P. ("SemStream"), each filed a
voluntary petition for relief under Chapter 11 of the Bankruptcy
Code (the "Code").  The Debtors' Chapter 11 cases have been
consolidated for procedural purposes only and are being jointly

---

[1]     This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

SemGroup and its related companies provide goods and services to the energy industry, primarily to independent producers and refiners of petroleum products located in North America and the United Kingdom.  Each Debtor company engages in a separate line of business with its own distinct products and functions.   For example, SemCrude gathers, transports, stores, blends, markets, and distributes crude oil in the United States to refiners and other resellers in various types of sale and exchange transactions. SemFuel's business, by contrast, is focused on the transportation and distribution of refined petroleum products (gasoline, kerosene, and the like).  SemStream operates similarly, but its product lines are limited to propane and other natural gas products.   Other Debtor companies engage in similar transactions with different energy products or in different markets.

In the course of its business, Chevron entered into contracts with three of the Debtors: SemCrude, SemFuel, and SemStream. Chevron contracted with these entities for the sale or purchase of crude oil, regular unleaded gasoline, and/or butane, isobutene and propane, respectively.

The relevant contracts for the sale or purchase of crude oil with SemCrude (collectively referred to hereinafter as the "SemCrude Contracts")are governed by either: (i) Chevron's General

2

Provisions for Crude Oil and Products-Exchanges and Purchase/Sales revised as of May 1, 1996 (the "CSAT Terms and Conditions"); or (ii) the Conoco General Provisions for Domestic Crude Oil Agreements, effective as of January 1, 1993 (the "Conoco Terms and Conditions"). The SemCrude Contracts are also governed by a certain Net Settlement Agreement, dated April 22, 2004 (the "Net Settlement Agreement"), between ChevronTexaco Global Trading (n/k/a Chevron Products Company) and SemCrude.

The relevant contracts for the delivery or purchase of gasoline with SemFuel (collectively referred to hereinafter as the "SemFuel Contracts") also are governed by the CSAT Terms and Conditions. The relevant contracts for the delivery or purchase of butane, isobutene and/or propane with SemStream (collectively referred to hereinafter as the "SemStream Contracts"), meanwhile, are governed by Chevron's General Terms and Conditions for Liquid Product Purchases and Sales Agreements, dated September 1, 2006 (the "LSAT Terms and Conditions").[2]

Additionally, SemGroup executed a continuing parent guaranty of any indebtedness incurred by SemCrude, SemStream, SemMaterials, L.P., and SemFuel in favor of Chevron (the "Continuing Guaranty"). The Continuing Guaranty was amended to include SemGas, L.P. as an

---

[2] At no time, however, did SemCrude, SemFuel, and SemStream sign either the CSAT Terms and Conditions, the Conoco Terms and Conditions, or the LSAT Terms and Conditions. These three sets of terms and conditions govern the relevant contracts by cross-references within the contracts.

3

additional entity to which the guaranty applied on September 27, 2007.

The CSAT Terms and Conditions and the LSAT Terms and Conditions each contain identical netting provisions that provide that "in the event either party fails to make a timely payment of monies due and owing to the other party, or in the event either party fails to make timely delivery of product or crude oil due and owing to the other party, the other party may offset any deliveries or payments due under this or any other Agreement between the parties and their affiliates."  (CSAT Terms and Conditions at 2; LSAT Terms and Conditions at 3) (emphasis added).  These documents define "affiliate" as "a corporation controlling, controlled by or under common control with either party."  (CSAT Terms and Conditions at 1; LSAT Terms and Conditions at 1).  The parties do not dispute that SemCrude, SemFuel, and SemStream are "affiliates" of each other as that term is used in the relevant agreements.

Prior to the Debtors' bankruptcy filings, Chevron and the Debtors entered into a number of transactions pursuant to these contracts.  As of the Petition Date, these transactions resulted in Chevron owing a balance of $ 1,405,878.40 to SemCrude.  Chevron is owed $ 10,228,439.34 by SemFuel, however, and is owed an additional $ 3,302,806.03 by SemStream.

Claiming that the amounts owed under these balances can be setoff against each other pursuant to the contract terms discussed

4

above, Chevron filed the Motion on August 21, 2008 for the purpose of obtaining leave from the automatic stay so that it could effect such a setoff.  The Debtors, the Official Committee of Unsecured Creditors appointed in this case, and a host of the Debtors' creditors each filed timely objections to the Motion.  In summary, these objections took issue with Chevron's argument that the Code allows for parties to contract around the Code's requirement in section 553 that debts be "mutual" in order to be setoff.  The objectors contend that triangular setoff is impermissible, even if contemplated by a valid, pre-petition contract.  Alternatively, the objectors argue that even if there is such a contract exception to the mutuality requirement, the contracts in the instant case fail to effect such a result.[3]

Chevron, in turn, filed a reply to these objections on September 5, 2008.  The parties then filed a stipulation of uncontested facts pertaining to this dispute on October 7, 2008, and the Court heard oral argument on the Motion the next day, October 8, 2008, with the understanding that only legal arguments were to be discussed at oral argument.  The parties agreed that the

---

[3]    Certain other objectors argue against allowing Chevron to effect the setoff for a different reason.  These objectors contend that the funds Chevron seeks to setoff are required by Oklahoma law to be held in constructive trust by the Debtors for the benefit of oil producers who have sold crude oil to the Debtors and not yet received payment.  The Court need not address the merits of these objections, however, because it will not permit the setoff sought by Chevron on other grounds.

Court would hear evidence in connection with this matter at a later date should it prove necessary to determine whether to grant Chevron's Motion.

The Court concludes that further factual development is not necessary in this case. The applicable law in this matter has been fully briefed and well argued. This matter is ripe for decision.

## II. <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## III. <u>DISCUSSION</u>

Chevron asserts that the terms of its contracts with the Debtors permit it to setoff the debt it owes to one corporation, SemCrude, against the debt owed to it by two other corporations, SemFuel and SemStream, thus effecting a "triangular setoff." The Court does not need to determine whether the specific terms of these various contracts grant SemCrude this right, however. Instead, the Court holds that Chevron is not permitted to effect such a setoff against the Debtors in this case because section 553 of the Code prohibits a triangular setoff of debts against one or more debtors in bankruptcy as a matter of law due to lack

6

of mutuality.

Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (quoting Studley v. Boylston Nat. Bank, 229 U.S. 523, 528, (1913)).  The Code section that governs setoff in bankruptcy, section 553, does not create a right of setoff, however.  Rather, section 553 "preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law," and "imposes additional restrictions on a creditor seeking setoff" that must be met to impose a setoff against a debtor in bankruptcy.  Packaging Indus. Group Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp. Inc.), 192 B.R. 41, 45 (N.D.N.Y. 1996).  Thus, setoff is appropriate in bankruptcy only when a creditor both enjoys an independent right of setoff under applicable non-bankruptcy law, and meets the further Code-imposed requirements and limitations set forth in section 553.  See, e.g., In re Tarbuck, 318 B.R. 78, 81 (Bankr. W.D. Pa. 2004) (holding that courts must look to state law to determine whether a right to setoff exists, but that "the granting or denial of a right to setoff depends upon the terms of section 553, and not upon the terms of state statutes or laws."); see also In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D. Del. 2006).

The additional restrictions imposed by section 553 are well-settled.  In order to effect a setoff in bankruptcy, courts construing the Code have long held that the debts to be offset must be mutual, prepetition debts.  See, e.g., Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.), 181 B.R. 730, 738-39 (Bankr. S.D. N.Y. 1995).

The authorities are also clear that debts are considered "mutual" only when "they are due to and from the same persons in the same capacity."  Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002)(citing Westchester, 181 B.R. at 740).  Put another way, mutuality requires that "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally."  Garden Ridge, 338 B.R. at 633-34 (quoting Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1036 (5th Cir. 1987)).  Because of the mutuality requirement in section 553(a), courts have routinely held that triangular setoffs are impermissible in bankruptcy.  See, e.g., Matter of United Sciences of America, Inc., 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement is designed to protect against 'triangular' set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party."); Elcona Homes Corp. v. Green Tree Acceptance, Inc., 863 F.2d 483, 486 (7th Cir. 1988) (holding that the Code speaks of a

8

"mutual debt" and "therefore precludes 'triangular' set offs").

Moreover, because each corporation is a separate entity from its

sister corporations absent a piercing of the corporate veil, "a

subsidiary's debt may not be set off against the credit of a

parent or other subsidiary, or vice versa, because no mutuality

exists under the circumstances." Sentinel Products Corp., 192

B.R. at 46 (citing MNC Commercial Corp. v. Joseph T. Ryerson &

Son, Inc., 882 F.2d 615, 618 n. 2 (2d Cir. 1989)).  Allowing a

creditor to offset a debt it owes to one corporation against

funds owed to it by another corporation – even a wholly-owned

subsidiary – would thus constitute an improper triangular setoff

under the Code.

Chevron asserts that an exception to the Code's mutuality

requirement exists.  It contends that a valid, pre-petition

contract – executed by a creditor, a debtor, and one or more

third parties – either satisfies the mutuality requirement or

allows the parties to contract around the mutuality requirement

found in section 553(a) if the contract provides that one or more

parties to the agreement can elect to setoff any debt it owes to

one of the other parties against an amount owed to it by a

different party to the agreement.

At first blush, Chevron's position appears to enjoy a

measure of support in the caselaw.  Nearly a dozen cases decided

in the last three decades under the Code, and a smaller number of

cases decided under the statutory scheme it replaced, the
Bankruptcy Act of 1898, have observed that an exception along the
lines of that espoused by Chevron exists.  Upon closer
inspection, however, it becomes clear that not one of these cases
has actually upheld or enforced an agreement that allows for a
triangular setoff; each and every one of these decisions have
simply recognized such an exception in the course of denying the
requested setoff or finding mutuality independent of the
agreement.[4]  Moreover, these decisions cite only to other cases

---

[4]     See Garden Ridge, 338 B.R. 627 (citing cases
recognizing the purported exception, but holding that "[t]his
case does not present a permissible triangular setoff based upon
an agreement between the related entities"); U.S. Aeroteam, Inc.
v. Delphi Automotive Sys., LLC (In re U.S. Aeroteam, Inc.), 327
B.R. 852 (Bankr. S.D. Ohio 2005) (holding that mutuality existed
for two separate setoffs, one stemming from an assignment, and
the other stemming from unpaid goods, then stating in dicta that
"further support" for these results existed because the creditor
in question had a "contractual right of setoff"); In re Custom
Coats Laurel, 258 B.R. 597 (Bankr. W.D. Pa. 2001) (noting
triangular setoffs are generally disallowed and that the creditor
in the case did not claim that the so-called "contract exception"
applied); Wooten v. Vicksburg Refining, Inc. (In re Hill
Petroleum Co.), 95 B.R. 404 (Bankr. W.D. La. 1988) (citing cases
recognizing "the narrow exception to the rule against three
party, 'triangular' setoffs," but holding that no such agreement
existed in the case); In re Lang Machinery Corp., 1988 WL 110429
(Bankr. W.D. Pa. 1988) (noted allegation of an oral agreement to
setoff various liabilities, but found that no such evidence was
ever introduced); In re Ingersoll, 90 B.R. 168 (Bankr. W.D. N.C.
1987) (noting that "a situation can exist where a debtor has
formally agreed that two entities may aggregate debts owed to and
from the debtor for offset purposes," but finding no such formal
agreement existed); Matter of Fasano/Harriss Pie Co., 43 B.R. 864
(Bankr. W.D. Mich. 1984) (recognizing court decisions carving out
the so-called exception, but finding that no such agreement
existed in the case); Bloor v. Shapiro, 32 B.R. 993 (S.D. N.Y.
1983) (discussing the so-called exception in a Bankruptcy Act

that recognize this purported exception in dicta, or, in some of the more recent cases, to a short reference in <u>Collier on Bankruptcy</u>, which also relies on this same handful of decisions for authority.  <u>See</u> 5 <u>Collier on Bankruptcy</u> ¶ 553.03[3][b][ii], at 553-31 (15th ed. rev. 2008).

Eventually, each of these cases directly or indirectly traces back to a single case, decided by the United States Court of Appeals for the Seventh Circuit in 1964 under the former Bankruptcy Act.  This decision, <u>In re Berger Steel Co.</u>, 327 F.2d 401 (7th Cir. 1964), was the first case to raise the possibility that an exception to the Bankruptcy Act's mutuality requirement, found in section 68 of the former Bankruptcy Act, might be found in a contract contemplating a triangular setoff.[5]

---

case involving two guarantors, each of whom had mutuality because of their status as a guarantor); <u>In re Balducci Oil Co.</u>, 33 B.R. 847 (Bankr. D. Colo. 1983)(discussing the so-called exception in a motion denying summary judgment because genuine issues of material fact existed); <u>In re Virginia Block Co.</u>, 16 B.R. 560 (Bankr. W.D. Va. 1981)  (citing an earlier case for the so-called exception, and finding the exception to be inapplicable); <u>Depositors Trust Co. of Augusta v. Frati Enterprises, Inc.</u>, 590 F.2d 377 (1st Cir. 1979) (citing an earlier case for the so-called exception, and finding the exception to be inapplicable in this Bankruptcy Act case).

[5]    Section 68(a) of the Bankruptcy Act of 1898, former 11 U.S.C. § 108(a), contained similar, though not identical, language to section 553 of the Code.  It provided that "[i]n all cases mutual debts and mutual credits between the estate of a bankrupt and the creditor shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

The court in Berger Steel was presented with a party attempting to effect a triangular setoff, and contending that an oral agreement between it and two other parties created sufficient mutuality of amounts owing and owed to make a triangular setoff proper between the parties under the Bankruptcy Act.  Berger Steel, 327 F.2d at 404.  The Seventh Circuit rejected this argument, upholding the finding of a bankruptcy referee that no such agreement existed.  Id. at 404-05.  After making this factual finding, the court proceeded to factually distinguish the case before it from the handful of cases cited by the party seeking to effect a triangular setoff in its arguments to the court.  The court noted that some of these cases had allowed a triangular setoff to be taken pursuant to a valid contract.  Each of these cases recognizing such a setoff, however, were decided under state law or the common law of equitable receivership, and none of these cases were decided under the more restrictive language of either the Bankruptcy Act or the Code.  Id. at 405-06 (discussing a pair of cases decided under the common law of equitable receivership, Piedmont Print Works v. Receivers of People's State Bank, 68 F.2d 110 (4th Cir. 1934), and Bromfield v. Trinidad Nat. Inv. Co., 36 F.2d 646 (10th Cir. 1929), and a handful of cases decided under state law).

By simply distinguishing the facts before it from these prior cases, the Court in Berger Steel avoided addressing the

12

broader question of whether a triangular setoff was permissible under the Bankruptcy Act if a contract signed by the parties to the proposed setoff contemplated such a remedy. Nevertheless, the court's opinion in Berger Steel was subsequently read as recognizing an exception to the strict mutuality requirement found in the Bankruptcy Act. See Bloor, 32 B.R. at 1001-02 (citing Berger Steel and a common law receivership case for the so-called exception in an opinion about setoff under the Bankruptcy Act involving two guarantors, each of whom had mutuality because of their status as a guarantor); Depositors Trust, 590 F.2d at 379 (detailing the general rule against triangular setoff under the Bankruptcy Act, citing Berger Steel for the so-called exception, and finding the exception to be inapplicable). A few courts interpreting section 553 in the first years of the Code followed suit shortly thereafter. See Balducci Oil, 33 B.R. at 853 (citing Berger Steel and Depositors Trust for the so-called exception in a motion denying summary judgment because the existence of such an agreement constituted a genuine issue of material fact); Virginia Block, 16 B.R. at 562 (detailing the general rule against triangular setoff, citing Berger Steel for the so-called exception, and finding the exception to be inapplicable). Later on, these more recent cases started to be cited for the proposition that triangular setoffs may be permissible under certain circumstances. Eventually,

nearly a dozen cases construing section 553 of the Code joined into this chain, each referencing one of the earlier decisions for the proposition advanced by Chevron in this case, yet none actually permitting a triangular setoff or addressing the merits of this purported exception in a written opinion.

The logical inconsistencies embodied in these decisions are evident in Chevron's Motion.  Chevron's Motion claims that the setoff it seeks is one of "mutual obligations." (Motion at 1).  More specifically, it contends that this "multi-party mutuality is created" by the contracts discussed above.  (Motion at 7).  But Chevron also argues that triangular setoffs "are enforceable as an exception to the mutuality requirement" when contemplated by a valid contract. (Id.).  Although Chevron appears to take these positions as part of a single argument, and not as alternative arguments, the Court finds these propositions to be mutually exclusive.[6]  If a debt is mutual one, then the rule of mutuality is, by definition, satisfied without the need for an exception to the rule.  For a setoff to be enforceable as an "exception" to the mutuality requirement, however, the mutuality requirement itself must not have been satisfied.

Therefore, in the complete absence of controlling or persuasive published caselaw on the issue, the Court is faced with two distinct questions.  First, may debts owing among

---

[6]    No pun intended.

14

different parties be considered "mutual" when there are
contractual netting provisions governing all parties' business
relationship?  If the answer is "no," then the second question is
whether a "contractual exception" exists to section 553's
mutuality requirement.

A. Private Agreements Cannot Confer Mutuality On Non-Mutual Debts

     As is made clear by the express language of the section 553,
and the numerous decisions interpreting it, the Code only allows
for setoff of "mutual debts" in bankruptcy.  See 11 U.S.C. §
553(a).  No mention is made in the statute of allowing setoff of
non-mutual debts, thus a debt must be mutual in order to be
setoff under section 553.  On this general rule, the courts are
in unanimous agreement.  See, e.g., Westinghouse, 278 F.3d at
149; Garden Ridge, 338 B.R. at 633; Westchester, 181 B.R. at 738-
39.

     In determining whether a tripartite agreement that
contemplates a triangular setoff can create mutuality for
purposes of section 553 when it is otherwise lacking, the Court
must scrutinize the meaning of the term "mutual debt" as it is
used in section 553.  This analysis is complicated by the fact
that the term is not defined by the Code.

     The Court finds the definition of "mutuality" embraced by
other courts to be instructive in this matter.  The overwhelming
majority of courts to consider the issue have held that debts are

15

mutual only if "they are due to and from the same persons in the
same capacity."  See, e.g., Westinghouse, 278 F.3d at 149; Garden
Ridge, 338 B.R. at 633; Westchester, 181 B.R. at 740.  It is also
widely accepted that "mutuality is strictly construed against the
party seeking setoff."  In re Bennett Funding Group, Inc., 212
B.R. 206, 212 (2d Cir. BAP 1997).  See also Garden Ridge, 338
B.R. at 634; In re Clemens, 261 B.R. 602, 606 (Bankr. M.D. Pa.
2001).  The effect of this narrow construction is that "each
party must own his claim in his own right severally, with the
right to collect in his own name against the debtor in his own
right and severally."  Garden Ridge, 338 B.R. at 633-34 (quoting
Braniff Airways, Inc., 814 F.2d at 1036).

Construing the generally accepted definition of mutuality
narrowly, as it is obliged to do, the Court concludes that
mutuality cannot be supplied by a multi-party agreement
contemplating a triangular setoff.  Unlike a guarantee of debt,
where the guarantor is liable for making a payment on the debt it
has guaranteed payment of, an agreement to setoff funds does not
create an indebtedness from one party to another.[7]  An agreement

---

[7]     This is not to say that setoff would necessarily be
appropriate against SemCrude if it were a guarantor of SemStream
or SemFuel's debt, however.  The Court notes that a split of
authority exists regarding the issue of whether an unpaid
guarantee can create mutuality for purposes of section 553.
Compare Ingersoll, 90 B.R. at 172, with Bloor, 32 B.R. at 1001-
02.  The Court does not reach this issue in this case because the
only guarantor in this matter is SemGroup, an entity that is not
owed a debt by Chevron.

to setoff funds, such as the one claimed by Chevron in this case, does not give rise to a debt that is "due to" Chevron and "due from" SemCrude.  A party such as SemCrude does not have to actually pay anything to a creditor such as Chevron under a tripartite setoff agreement; rather, it only sees one of its receivables reduced in size or eliminated.  SemCrude does not owe anything to Chevron, thus there are no debts in this dispute owed between the "same persons in the same capacity."

Likewise, Chevron does not have a "right to collect" against SemCrude under the agreement in this case.  At most, the agreement of the parties would give Chevron a "right to offset" – a right to pay less than it would otherwise have to pay to the extent of the setoff.  The agreement does not call for SemCrude to make a payment to Chevron, however.  Consequently, the agreement does not call for Chevron to "collect" anything from SemCrude.  Chevron is thus without a "right to collect" from SemCrude.  At bottom, Chevron may enjoy privity of contract with each of the relevant Debtors, but it lacks the mutuality required by the plain language of section 553.

The Court's determination that the contracts at issue in this case do not confer mutuality on Chevron is further informed and supported by the express terms of section 553.  Section 553, like section 68 of the Bankruptcy Act before it, speaks not only of a "mutual debt," but of a mutual debt owing between a

particular creditor and a particular debtor.  Or, to be more precise, section 553 preserves only the "right of a creditor to offset a mutual debt owing by <u>such</u> creditor to the debtor that arose before the commencement [of the bankruptcy case] against a claim of <u>such</u> creditor against the debtor that arose before the commencement of the case."  11 U.S.C. § 553(a) (emphasis added). In articulating exactly who must owe whom a debt to effect a setoff under section 553(a), Congress used a greater detail of precision than is seen in many other parts of the Code.  This statutory language is of critical importance in this case, because the setoff sought by Chevron simply does not fall within its terms.

Chevron is a creditor, seeking to enforce its state law right to offset a debt owing by it to a debtor in this bankruptcy case (the debt it owes to SemCrude), and the debt arose before the commencement of the case.  But Chevron is not seeking to offset a claim against "the debtor" to whom it owes a debt (SemCrude).  Instead, Chevron is seeking to offset the debt it owes to "the debtor" (SemCrude) against the amounts owed to it by either of two other debtors, namely SemFuel, SemStream, or both. Regardless of whatever contractual right to setoff these debts against each other it might have under state law, the fact remains that Chevron only owes a debt to one debtor, SemCrude, and SemCrude owes nothing to Chevron.  Chevron does not even have

18

a "claim" against SemCrude because to have a claim it must have a "right to payment" from SemCrude.  See 11 U.S.C. § 101(5).[8]  As noted above, a right to effect a setoff can never impose a "right to payment," it only can yield a right to pay less than one would otherwise have to pay.  Therefore, the setoff advocated by Chevron falls outside the express terms of section 553, and is impermissible.

Accordingly, the Court holds that non-mutual debts cannot be transformed into a "mutual debt" under section 553 simply because a multi-party agreement allows for setoff of non-mutual debts between the parties to the agreement.

B. No Exception To The "Mutual Debt" Requirement Exists

The Court now turns to the question of whether there is a "contract exception" to the requirement of mutuality under section 553.  In addressing this question, the Court begins with

---

[8]    Section 101(5) of the Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  Although Chevron may be able to assert a state law right to the equitable remedy of setoff, this right is not based on a breach of performance that gives rise to a "right to payment," as noted above.  A setoff agreement such as the one in this case only creates a right to pay less or nothing, not a right to receive a payment.

the language of the statute itself.  <u>Duncan v. Walker</u>, 533 U.S.
167, 172 (2001). "[W]here ... the statute's language is plain,
'the sole function of the courts is to enforce it according to
its terms.'" <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S.
235, 241 (1989) (quoting <u>Caminetti v. United States</u>, 242 U.S.
470, 485 (1917)); <u>see also</u> <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S.
249, 253-54 (1992) ("[I]n interpreting a statute a court should
always turn first to one, cardinal canon before all others.  We
have stated time and again that courts must presume that a
legislature says in a statute what it means and means in a
statute what it says there.  When the words of a statute are
unambiguous, then, this first canon is also the last: 'judicial
inquiry is complete.'" (quoting <u>Rubin v. United States</u>, 449 U.S.
424, 430 (1981))).  "It is 'a cardinal principle of statutory
construction' that 'a statute ought, upon the whole, to be so
construed that, if it can be prevented, no clause, sentence, or
word shall be superfluous, void, or insignificant.'" <u>TRW Inc. v.
Andrews</u>, 534 U.S. 19, 31 (2001)(quoting <u>Duncan</u>, 533 U.S. at
174)).

If "'the literal application of a statute will produce a
result demonstrably at odds with the intentions of its drafters'"
or if the language of the statute is unclear, courts may resort
to legislative history and "the intention of the drafters".  <u>Ron
Pair</u>, 489 U.S. at 242-43 (quoting <u>Griffin v. Oceanic Contractors,

Inc., 458 U.S. 564, 571 (1982)); see also United States v. E.I.
DuPont de Nemours & Co. Inc., 432 F.3d 161, 169 (3d Cir. 2005)
("Where a statute's text is ambiguous, relevant legislative
history, along with consideration of the statutory objectives,
can be useful in illuminating its meaning." (citing Gen. Dynamics
Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004) (examining
"the text, structure, purpose, and history" of the relevant
statute))).

     Section 553(a) provides, in relevant part, that the Code
"does not affect any right of a creditor to offset a mutual debt
owing by such creditor to the debtor that arose before the
commencement of the case under this title against a claim of such
creditor against the debtor that arose before the commencement of
the case ...."[9]  11 U.S.C. § 553(a).

     The Court finds nothing in the language of the Code upon
which to base a conclusion that there is a contractual exception
to the "mutual debt" requirement.  Absent a clear indication from
the text of the Code that such an exception exists, the Court
deems it improper to recognize one.[10]  To do so would run counter

_____

     [9]   Section 553 also provides a number of other limitations
on a creditor's right to enact a setoff, none of which is
applicable here.  See 11 U.S.C. § 553(a).

     [10]   Although some courts may have recognized an "exception"
that allows for setoff of a debt owed to one unit of the federal
government against that owed from a different unit, this so-

21

to the great weight of authority holding that "there is no reason
for enlarging the right to setoff beyond that allowed in the
Code." In re NWFX, Inc., 864 F.2d 593, 595-96 (8th Cir. 1989).
See also Public Serv. Co. of New Hampshire, 884 F.2d at 13-17
("From a federal perspective, the law is settled that the
bankruptcy court, in the guise of 'doing equity,' has no power to
enlarge setoff rights beyond the dimensions sculpted by
non-bankruptcy law or explicitly required by the Code."); Boston
and Maine Corp. v. Chicago Pacific Corp., 785 F.2d 562, 564-66
(7th Cir. 1986).

Although dictated by the plain language of section 553, the
Court's holding also is consistent with the purpose of section
553 and the broader policies of the Code.  One of the primary
goals – if not the primary goal – of the Code is to ensure that
similarly-situated creditors are treated fairly and enjoy an
equality of distribution from a debtor absent a compelling reason
to depart from this principle.  By allowing parties to contract

_____

called exception is not really an exception.  Rather, it is a
reading of the term "mutual debt" that considers all agencies,
branches, and subdivisions of the federal government to be a
single, unitary creditor.  See Hal, Inc. v. United States (In re
Hal, Inc.), 122 F.3d 851, 852-54 (9th Cir. 1997) (holding that
"the various agencies of the federal government constitute a
single 'governmental unit' for purposes of setoff under § 553 of
the Bankruptcy Code"); Turner v. Small Business Admin. (In re
Turner), 84 F.3d 1294, 1299 (10th Cir. 1996) (en banc) ("Because
we hold that the United States is a unitary creditor in
bankruptcy, it, like any other single creditor, should be
entitled to offset any mutual debts it has involving multiple
agencies in accordance with § 553.").

around the mutuality requirement of section 553, one creditor or a handful of creditors could unfairly obtain payment from a debtor at the expense of the debtor's other creditors, thereby upsetting the priority scheme of the Code and reducing the amount available for distribution to all creditors. See In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 896 F.2d 54, 57 (3d Cir. 1990) ("setoff is at odds with a fundamental policy of bankruptcy, equality among creditors ..."); BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.), 229 B.R. 310, 311 (Bankr. S.D. N.Y. 1999) ("[setoff] operates to prefer one creditor over every other"). Such a result is clearly contrary both to the text of the Code and to the principle of equitable distribution that lies at the heart of the Code.

For these reasons, the Court holds that no exception to the "mutual debt" requirement in section 553 can be created by private agreement.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that Chevron is not entitled to enact a triangular setoff of the amounts owed between it and the Debtors.  Accordingly, the Court will deny the Motion.

An appropriate order follows.

By the Court,

_____
Dated: January 9, 2009          Brendan Linehan Shannon
                                United States Bankruptcy Judge

24