## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
In re                                      :        Chapter 11
:
SEMCRUDE, L.P., *et al.*,           :        Case No. 08-11525 (BLS)
:
             Debtors.         :        Jointly Administered
:
-------------------------------------------------------------------x

## FOURTH AMENDED JOINT PLAN OF AFFILIATED DEBTORS
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Mark D. Collins
John H. Knight
(302) 651-7700

- and -

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Martin A. Sosland
Sylvia A. Mayer
(214) 746-7700


*ATTORNEYS FOR THE DEBTORS*
*AND DEBTORS IN POSSESSION*

Dated: September 22, 2009

# TABLE OF CONTENTS

**Page**

Article I  DEFINITIONS ......................................................................................1

1.1  Active States ...........................................................................1

1.2  Administrative Expense Claim...............................................1

1.3  Alberta Court ..........................................................................1

1.4  Allowed ...................................................................................1

1.5  Alon Claim ..............................................................................2

1.6  Auriga Revolver/Term Lender Distribution ...........................2

1.7  Avoidance Actions ..................................................................2

1.8  Bankruptcy Code ....................................................................2

1.9  Bankruptcy Court ....................................................................2

1.10  Bankruptcy Rules ...................................................................2

1.11  BNPP ......................................................................................2

1.12  BNPP Claim ............................................................................2

1.13  Board .......................................................................................2

1.14  Business Day ...........................................................................2

1.15  Canadian Distribution.............................................................2

1.16  Canadian Plans .......................................................................2

1.17  Cash ........................................................................................3

1.18  Cash Equivalent......................................................................3

1.19  Catsimatidis Group .................................................................3

1.20  Catsimatidis Settlement Order................................................3

1.21  Causes of Action.....................................................................3

1.22  CCAA ......................................................................................3

1.23  Chapter 11 Cases ....................................................................3

1.24  Claim .......................................................................................3

1.25  Class........................................................................................3

1.26  Class A New Common Stock ..................................................3

1.27  Class B New Common Stock ..................................................3

1.28  Collateral ................................................................................4

i

1.29    Compensation and Benefits Plans ....................................................4

1.30    Confirmation Date ........................................................................4

1.31    Confirmation Order .......................................................................4

1.32    Contributing Lender Assignment .....................................................4

1.33    Contributing Lenders......................................................................4

1.34    Contributing Lenders' Claims .........................................................4

1.35    Creditor........................................................................................4

1.36    Creditors' Committee .....................................................................4

1.37    Creditors' Settlement .....................................................................5

1.38    Debtors.........................................................................................5

1.39    Debtors in Possession ....................................................................5

1.40    Disbursement Account(s) ...............................................................5

1.41    Disbursing Agent...........................................................................5

1.42    Disclosure Statement .....................................................................5

1.43    Disclosure Statement Order............................................................5

1.44    Disputed.......................................................................................5

1.45    Disputed Claim Amount.................................................................6

1.46    Disputed Claims Reserve................................................................6

1.47    Disputed Production Receivable .....................................................6

1.48    Downstream Claims .......................................................................6

1.49    Downstream Purchasers .................................................................6

1.50    DTC .............................................................................................6

1.51    Eaglwing.......................................................................................6

1.52    Eaglwing First Purchaser Producer Twenty-Day Claims...................6

1.53    Effective Date ...............................................................................7

1.54    Entity ...........................................................................................7

1.55    Equity Interest...............................................................................7

1.56    Examiner.......................................................................................7

1.57    Exit Facility ..................................................................................7

| | | |
|---|---|---|
| 1.58 | Fee Auditor | 7 |
| 1.59 | Fee Auditor Order | 7 |
| 1.60 | Final Order | 7 |
| 1.61 | First Purchaser Producer Claims | 7 |
| 1.62 | First Purchaser Producer Twenty-Day Claims | 8 |
| 1.63 | First Purchaser Producers | 8 |
| 1.64 | Fourth Amended Schedules | 8 |
| 1.65 | General Unsecured Claim | 8 |
| 1.66 | Gross Production Receivable | 8 |
| 1.67 | Inactive States | 8 |
| 1.68 | Initial Petition Date | 8 |
| 1.69 | Intercompany Claim | 8 |
| 1.70 | Intercompany Equity Interest | 8 |
| 1.71 | Investigative Order | 8 |
| 1.72 | IRS | 8 |
| 1.73 | June Decisions | 8 |
| 1.74 | Lender Cash | 8 |
| 1.75 | Lender Deficiency Claim | 9 |
| 1.76 | Lender Steering Committee | 9 |
| 1.77 | Lien | 9 |
| 1.78 | Litigation Trust | 9 |
| 1.79 | Litigation Trust Agreement | 9 |
| 1.80 | Litigation Trust Assets | 9 |
| 1.81 | Litigation Trust Board | 9 |
| 1.82 | Litigation Trust Claims | 9 |
| 1.83 | Litigation Trust Fund Reserve Amount | 9 |
| 1.84 | Litigation Trust Funds | 10 |
| 1.85 | Litigation Trust Interests | 10 |
| 1.86 | Litigation Trustee | 10 |

# TABLE OF CONTENTS
## (continued)

1.87    Management Committee.................................................................10

1.88    Management Incentive Plan ..........................................................10

1.89    Management Stock .......................................................................10

1.90    Minimum Operating Cash .............................................................10

1.91    New Common Stock......................................................................10

1.92    New Holdco ..................................................................................10

1.93    New Holdco Bylaws......................................................................10

1.94    New Holdco Certificate of Incorporation......................................10

1.95    Non-Settling Party ........................................................................10

1.96    Notice............................................................................................10

1.97    Operators ......................................................................................11

1.98    Other Secured Claim ....................................................................11

1.99    Other Twenty-Day Claim ..............................................................11

1.100   Other Twenty-Day Claims Settlement ..........................................11

1.101   Owners..........................................................................................11

1.102   Person ...........................................................................................11

1.103   Petition Date .................................................................................11

1.104   Plan...............................................................................................11

1.105   Plan Cash ......................................................................................11

1.106   Plan Currency ...............................................................................11

1.107   Plan Supplement...........................................................................11

1.108   Postpetition Administrative Agent ................................................11

1.109   Postpetition Financing Agreement ...............................................11

1.110   Postpetition Financing Claim .......................................................12

1.111   Postpetition Financing Order........................................................12

1.112   Postpetition Lenders .....................................................................12

1.113   Prepetition Administrative Agent..................................................12

1.114   Prepetition Credit Agreement.......................................................12

1.115   Prepetition Lenders.......................................................................12

| | | |
|---|---|---|
| 1.116 | Priority Non-Tax Claim | 12 |
| 1.117 | Priority Tax Claim | 12 |
| 1.118 | Pro Rata Share | 13 |
| 1.119 | Producer Decisions | 13 |
| 1.120 | Producer Deficiency Claims | 13 |
| 1.121 | Producer Plaintiffs | 13 |
| 1.122 | Producer Representative | 13 |
| 1.123 | Producer State-Specific Adversary Proceedings | 13 |
| 1.124 | Producers | 13 |
| 1.125 | Producers' Committee | 13 |
| 1.126 | Producers' Committee Professional Fees | 13 |
| 1.127 | Producers' Committee Retention Order | 13 |
| 1.128 | Producers' Settlement | 13 |
| 1.129 | Professional Compensation and Reimbursement Claim | 14 |
| 1.130 | Record Date | 14 |
| 1.131 | Released Actions | 14 |
| 1.132 | Reorganized Debtors | 14 |
| 1.133 | Reorganized SemGroup Companies | 14 |
| 1.134 | Restricted Cash | 14 |
| 1.135 | Retained Causes of Action | 14 |
| 1.136 | Revolver/Term Lender Claim | 14 |
| 1.137 | Revolver/Term Lender Effective Date Cash | 14 |
| 1.138 | Schedules | 15 |
| 1.139 | Second Lien Term Loan Facility | 15 |
| 1.140 | Second Lien Term Loan Interest | 15 |
| 1.141 | Secured Claim | 15 |
| 1.142 | Secured First Purchaser Producer Claims | 15 |
| 1.143 | Secured Lender Claims | 15 |
| 1.144 | Secured Revolver/Term Lender Claim | 15 |

1.145    Secured Tax Claim ........................................................................15

1.146    Secured Working Capital Lender Claim ...........................................16

1.147    SemCAMS ULC ...........................................................................16

1.148    SemCAMS ULC Plan .....................................................................16

1.149    SemCanada Energy ........................................................................16

1.150    SemCanada Energy Claim ...............................................................16

1.151    SemCanada Energy Group ...............................................................16

1.152    SemCanada Energy Plan ..................................................................16

1.153    SemCanada Group .........................................................................16

1.154    SemCanada Nova Scotia ..................................................................16

1.155    SemCanada Nova Scotia Plan ...........................................................16

1.156    SemCrude Pipeline ........................................................................16

1.157    SemGroup ...................................................................................16

1.158    SemGroup Equity Interest ...............................................................16

1.159    SemGroup Finance ........................................................................17

1.160    Senior Notes ...............................................................................17

1.161    Senior Notes Claim .......................................................................17

1.162    Senior Notes Indenture ...................................................................17

1.163    Senior Notes Indenture Charging Lien ................................................17

1.164    Senior Notes Indenture Trustee ........................................................17

1.165    Senior Notes Indenture Trustee Fees ..................................................17

1.166    September 15 Order .......................................................................17

1.167    Settling Party ..............................................................................17

1.168    Swap Claim .................................................................................17

1.169    Tax Code ....................................................................................17

1.170    Third Circuit Appeals ....................................................................17

1.171    Twenty-Day Claim ........................................................................18

1.172    Undisputed Production Receivable .....................................................18

1.173    Unsecured Claim ..........................................................................18

| | | |
|---|---|---|
| 1.174 | Unsecured First Purchaser Producer Claims | 18 |
| 1.175 | US Term Lender Group | 18 |
| 1.176 | US Term Lender Group Fees | 18 |
| 1.177 | Warrant Agreement | 18 |
| 1.178 | Warrants | 18 |
| 1.179 | White Cliffs Credit Agreement | 18 |
| 1.180 | White Cliffs Credit Agreement Claim | 18 |
| 1.181 | Working Capital Lender Claim | 19 |
| 1.182 | Working Capital Lender Effective Date Cash | 19 |
| 1.183 | Interpretation; Application of Definitions; Rules of Construction | 19 |
| Article II | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, POSTPETITION FINANCING CLAIMS, PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS, AND PRIORITY TAX CLAIMS; PAYMENT OF SENIOR NOTES INDENTURE TRUSTEE FEES AND US TERM LENDER GROUP FEES | 19 |
| 2.1 | Administrative Expense Claims | 19 |
| 2.2 | Postpetition Financing Claims | 20 |
| 2.3 | Professional Compensation and Reimbursement Claims | 20 |
| 2.4 | Priority Tax Claims | 20 |
| 2.5 | Senior Notes Indenture Trustee Fees | 21 |
| 2.6 | US Term Lender Group Fees | 21 |
| Article III | SETTLEMENTS | 21 |
| 3.1 | Producers' Settlement | 21 |
| 3.2 | Other Twenty-Day Claims Settlement | 24 |
| Article IV | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 26 |
| Article V | TREATMENT OF CLAIMS AND EQUITY INTERESTS | 35 |
| 5.1 | Classes 1 through 26 – Priority Non-Tax Claims | 35 |
| 5.2 | Classes 27 through 52 – Secured Tax Claims | 35 |
| 5.3 | Classes 53 through 55 – Secured First Purchaser Producer Claims | 36 |
| 5.4 | Classes 70 through 95 – Secured Working Capital Lender Claims | 36 |

| | | | |
|---|---|---|---|
| 5.5 | Classes 96 through 121 – Secured Revolver/Term Lender Claims | | 36 |
| 5.6 | Class 122 – White Cliffs Credit Agreement Claim | | 37 |
| 5.7 | Classes 123 through 148 – Other Secured Claims | | 37 |
| 5.8 | Classes 149 through 174 – Senior Notes Claims | | 38 |
| 5.9 | Classes 175 through 200 – Lender Deficiency Claims | | 39 |
| 5.10 | Classes 201 through 226 – General Unsecured Claims | | 39 |
| 5.11 | Classes 227 through 252 – Intercompany Claims | | 40 |
| 5.12 | Classes 253 through 278 – Intercompany Equity Interests | | 40 |
| 5.13 | Class 279 – SemGroup Equity Interests | | 40 |
| Article VI | IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN | | 41 |
| 6.1 | Impaired and Unimpaired Classes | | 41 |
| 6.2 | Controversy Concerning Impairment | | 41 |
| Article VII | ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS | | 41 |
| 7.1 | Impaired Classes to Vote on Plan | | 41 |
| 7.2 | Acceptance by Class of Creditors and Holders of Equity Interests | | 41 |
| 7.3 | Cramdown | | 41 |
| Article VIII | IMPLEMENTATION OF THE PLAN | | 42 |
| 8.1 | Non-Substantive Consolidation | | 42 |
| 8.2 | Restructuring Transactions | | 42 |
| 8.3 | Producer Representative | | 43 |
| 8.4 | Litigation Trust Arrangements | | 43 |
| 8.5 | Section 1145 Securities | | 43 |
| 8.6 | Corporate Action | | 43 |
| 8.7 | Existence | | 44 |
| 8.8 | Vesting of Assets in the Reorganized Debtors | | 45 |
| 8.9 | Cancellation of Debt and Equity Securities and Related Obligations | | 45 |
| 8.10 | Effectuating Documents and Further Transactions | | 45 |
| 8.11 | Compensation and Benefit Plans | | 46 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| Article IX | PRESERVATION AND PROSECUTION OF CAUSES OF ACTION HELD BY THE DEBTORS | 46 |
| 9.1 | Preservation and Prosecution of Causes of Action | 46 |
| Article X | PROVISION FOR TREATMENT OF DISPUTED CLAIMS OR ASSERTED ADMINISTRATIVE EXPENSES UNDER THE PLAN | 47 |
| 10.1 | Objections to Claims; Prosecution of Disputed Claims or Asserted Administrative Expenses | 47 |
| 10.2 | No Distributions Pending Allowance | 48 |
| 10.3 | Estimation of Claims | 48 |
| 10.4 | Payments and Distributions on Disputed Claims | 49 |
| Article XI | THE LITIGATION TRUST | 50 |
| 11.1 | Establishment of the Litigation Trust | 50 |
| 11.2 | Purpose of the Litigation Trust | 51 |
| 11.3 | Funding Expenses of the Litigation Trust | 51 |
| 11.4 | Transfer of Assets | 52 |
| 11.5 | Valuation of Assets | 52 |
| 11.6 | Litigation; Responsibilities of Litigation Trustee | 52 |
| 11.7 | Investment Powers | 53 |
| 11.8 | Annual Distribution; Withholding | 53 |
| 11.9 | Reporting Duties | 54 |
| 11.10 | Trust Implementation | 55 |
| 11.11 | Registry of Beneficial Interests | 55 |
| 11.12 | Termination | 56 |
| 11.13 | Net Litigation Trust Recovery | 56 |
| Article XII | PROVISIONS FOR THE ESTABLISHMENT AND MAINTENANCE OF DISBURSEMENT ACCOUNT(S) | 56 |
| 12.1 | Establishment of Disbursement Account(s) | 56 |
| 12.2 | Maintenance of Disbursement Account(s) | 56 |
| 12.3 | Establishment of Producer Disbursement Account(s) | 57 |
| Article XIII | PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN | 57 |

| 13.1 | Time and Manner of Distributions | 57 |
| 13.2 | Timeliness of Payments | 58 |
| 13.3 | Distributions by the Disbursing Agent | 59 |
| 13.4 | Manner of Payment under the Plan | 59 |
| 13.5 | Delivery of Distributions | 59 |
| 13.6 | Fractional New Common Stock / Warrants | 59 |
| 13.7 | Undeliverable Distributions | 59 |
| 13.8 | Time Bar to Cash Payments | 60 |
| 13.9 | Distributions After Effective Date | 60 |
| 13.10 | Setoffs | 60 |
| 13.11 | Allocation of Plan Distributions Between Principal and Interest | 61 |
| 13.12 | Record Date | 61 |
| 13.13 | Senior Notes Indenture Trustee as Claim Holder | 61 |
| 13.14 | Limited Recoveries | 61 |
| Article XIV | RIGHTS AND POWERS OF DISBURSING AGENT | 61 |
| 14.1 | Powers of the Disbursing Agent | 61 |
| 14.2 | Fees and Expenses Incurred From and After the Effective Date | 62 |
| 14.3 | Exculpation | 62 |
| Article XV | RIGHTS AND POWERS OF PRODUCER REPRESENTATIVE AND THE PREPETITION ADMINISTRATIVE AGENT | 62 |
| 15.1 | Powers of the Producer Representative and the Prepetition Administrative Agent | 62 |
| 15.2 | Exculpation | 62 |
| Article XVI | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 63 |
| 16.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 63 |
| 16.2 | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases | 63 |
| 16.3 | Inclusiveness | 63 |
| 16.4 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 64 |

| | | |
|---|---|---|
| 16.5 | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 64 |
| 16.6 | Insurance Policies | 64 |
| Article XVII | COMMITTEES, EXAMINER, AND FEE AUDITOR | 64 |
| 17.1 | Dissolution of Creditors' Committee and Producers' Committee | 64 |
| 17.2 | Examiner | 65 |
| 17.3 | Fee Auditor | 65 |
| Article XVIII | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS | 65 |
| 18.1 | Conditions Precedent to Effective Date of the Plan | 66 |
| 18.2 | Failure of Conditions Precedent | 67 |
| 18.3 | Waiver of Conditions Precedent | 67 |
| Article XIX | PROVISIONS REGARDING CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTORS AND NEW HOLDCO | 68 |
| 19.1 | General | 68 |
| 19.2 | Directors and Officers of New Holdco | 68 |
| 19.3 | Issuance of New Securities | 68 |
| 19.4 | Listing of New Common Stock | 68 |
| 19.5 | Management Incentive Plan | 68 |
| Article XX | EFFECT OF CONFIRMATION | 69 |
| 20.1 | Title to and Vesting of Assets | 69 |
| 20.2 | Discharge of Claims and Termination of Equity Interests | 69 |
| 20.3 | Discharge of Debtors | 69 |
| 20.4 | Injunction on Claims | 70 |
| 20.5 | Term of Existing Injunctions or Stays | 71 |
| 20.6 | Exculpation | 71 |
| 20.7 | Preservation of Causes of Action / Reservation of Rights | 71 |
| 20.8 | Injunction on Causes of Action | 72 |
| 20.9 | Limited Release of Officers and Employees | 72 |

20.10 Releases by the Debtors.........................................................................73

20.11 Releases by Holders of Claims and Equity Interests............................73

20.12 Releases by Members of Creditors' Committee....................................73

20.13 Releases by Members of Producers' Committee....................................74

20.14 Release of Guarantors............................................................................74

Article XXI RETENTION OF JURISDICTION...........................................................74

21.1 Retention of Jurisdiction........................................................................74

Article XXII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN........................................................................................................76

22.1 Modification of the Plan.........................................................................76

22.2 Revocation or Withdrawal of the Plan ..................................................77

Article XXIII MISCELLANEOUS PROVISIONS ........................................................77

23.1 Effectuating Documents and Further Transactions ...............................77

23.2 Withholding and Reporting Requirements.............................................77

23.3 Plan Supplement.....................................................................................77

23.4 Payment of Statutory Fees.....................................................................78

23.5 Expedited Tax Determination.................................................................78

23.6 Post-Confirmation Date Fees and Expenses..........................................78

23.7 Substantial Consummation.....................................................................78

23.8 Severability.............................................................................................78

23.9 Governing Law .......................................................................................78

23.10 Time........................................................................................................79

23.11 Binding Effect.........................................................................................79

23.12 Exhibits/Schedules.................................................................................79

23.13 Notices....................................................................................................79

23.14 Closing of the Chapter 11 Cases............................................................79

23.15 Section Headings ...................................................................................79

23.16 Exemption from Registration ................................................................79

23.17 Exemption from Transfer Taxes.............................................................80

23.18 No Effect on Downstream Claims..........................................................80

# TABLE OF CONTENTS
## (continued)

23.19  Inconsistencies..........................................................................................................81

SemCrude, L.P., Chemical Petroleum Exchange, Incorporated, Eaglwing, L.P., Grayson Pipeline, L.L.C., Greyhawk Gas Storage Company, L.L.C., K.C. Asphalt L.L.C., SemCanada II, L.P., SemCanada L.P., SemCrude Pipeline, L.L.C., SemFuel Transport LLC, SemFuel, L.P., SemGas Gathering LLC, SemGas Storage, L.L.C., SemGas, L.P., SemGroup Asia, L.L.C., SemGroup Finance Corp., SemGroup, L.P., SemKan, L.L.C., SemManagement, L.L.C., SemMaterials Vietnam, L.L.C., SemMaterials, L.P., SemOperating G.P., L.L.C., SemStream, L.P., SemTrucking, L.P., Steuben Development Company, L.L.C., and SemCap, L.L.C. hereby propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

1.1     **Active States** means the states of Kansas, New Mexico, Oklahoma, Texas, and Wyoming.

1.2     **Administrative Expense Claim** means (a) any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code during the period up to and including the Effective Date and (b) any fees or charges assessed against the Debtors' estates pursuant to section 1930, chapter 123, Title 28, United States Code.

1.3     **Alberta Court** means the Court of Queen's Bench of Alberta.

1.4     **Allowed** means, with reference to any Claim, (i) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed or objection thereto interposed, (ii) any Claim that is not Disputed, (iii) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors or the Reorganized Debtors, as the case may be, pursuant to a Final Order of the Bankruptcy Court, or (iv) any Claim that has been allowed hereunder or by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder; provided, further, that First Purchaser Producer Twenty-Day Claims and Secured First Purchaser Producer Claims shall solely be allowed in accordance with Section 3.1 of the Plan. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date. With respect to any Other Twenty-Day Claim, such Claim shall solely become Allowed pursuant to (a) the Other Twenty-Day Claims Settlement, (b) a settlement or compromise between the Prepetition Administrative Agent and the holder of any such Other Twenty-Day Claim or (c) a Final Order of the Bankruptcy Court, and shall not be considered Allowed under clause (i) or (ii) above.

1.5     **Alon Claim** means the Twenty-Day Claim in the amount of $10.5 million for Alon USA LP, which was Allowed pursuant to a settlement agreement approved by the Bankruptcy Court.

1.6     **Auriga Revolver/Term Lender Distribution** means that portion, if any, of a Canadian Distribution resulting from the settlement agreement between SemCAMS ULC and Auriga Energy Inc., dated July 2, 2009, which was approved by an order of the Alberta Court, dated July 14, 2009, that constitutes Revolver/Term Lender Effective Date Cash as set forth in clause (iv) of Section 5.5(b)(y) hereof.

1.7     **Avoidance Actions** means Causes of Action arising under chapter 5 of the Bankruptcy Code, including, but not limited to, Causes of Action arising under sections 502(d), 510, 542, 543, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

1.8     **Bankruptcy Code** means chapter 11 of title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.10    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Cases.

1.11    **BNPP** means BNP Paribas.

1.12    **BNPP Claim** means the claim of BNPP against SemCanada Energy or any non-Debtor third party relating to a foreign exchange transaction between BNPP and SemCanada Energy that was to settle on July 21, 2008 and pursuant to which SemCanada Energy was obligated to transfer CAD $5,561,500 to BNPP.

1.13    **Board** means the board of directors of New Holdco.

1.14    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.15    **Canadian Distribution** means Cash in respect of Claims under the Prepetition Credit Agreement that is distributed to (i) any of the Debtors or the Reorganized Debtors by the Canadian subsidiaries of SemGroup, or (ii) the Prepetition Lenders or the Prepetition Administrative Agent on behalf of the Prepetition Lenders by the Canadian subsidiaries of SemGroup, in each case pursuant to the Canadian Plans or a bankruptcy, receivership or other proceeding of SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc.

1.16    **Canadian Plans** means, collectively, the SemCanada Nova Scotia Plan, the SemCAMS ULC Plan and, if approved by the required majority of the creditors of SemCanada

Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc. and sanctioned by the Alberta Court, the SemCanada Energy Plan.

1.17 **Cash** means the lawful currency of the United States of America except that Cash distributed pursuant to a Canadian Distribution may include the lawful currency of Canada.

1.18 **Cash Equivalent** means securities or instruments of the type permitted under section 345 of the Bankruptcy Code.

1.19 **Catsimatidis Group** means Messrs. John A. Catsimatidis, J. Nelson Happy, Martin R. Bring, James C. Hansel, Myron L. Turfitt, Matthew Coughlin, Tulsa Energy Acquisitions, L.L.C., United Refining Energy Corporation, and United Refining Company, and each of such Person's affiliates, attorneys, consultants, advisors, and agents.

1.20 **Catsimatidis Settlement Order** means the order of the Bankruptcy Court, approving the Stipulation of Settlement between the Debtors, Terrence Ronan, SemGroup, G.P., L.L.C., the Prepetition Administrative Agent, the Creditors' Committee and the Catsimatidis Group.

1.21 **Causes of Action** means, without limitation, any and all actions, causes of action, proceedings, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, objections to Claims, benefits of subordination of Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.22 **CCAA** means the Canadian Companies' Creditors Arrangement Act, R.S.C. 1985 c. C-36, as amended.

1.23 **Chapter 11 Cases** means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on or after the Initial Petition Date, styled In re SemCrude, L.P., et al., Chapter 11 Case No. 08-11525 (BLS) (Jointly Administered), currently pending before the Bankruptcy Court.

1.24 **Claim** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.25 **Class** means a category of Claims or Equity Interests as set forth in Article IV of the Plan.

1.26 **Class A New Common Stock** means the Class A New Common Stock of New Holdco authorized under the New Holdco Certificate of Incorporation.

1.27 **Class B New Common Stock** means the Class B New Common Stock of New Holdco authorized under the New Holdco Certificate of Incorporation.

1.28    **Collateral** means any property or interest in property of the estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.29    **Compensation and Benefits Plans** means employee related plans including 401(k) plans, employee insurance benefits, and flexible spending accounts.

1.30    **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.31    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.32    **Contributing Lender Assignment** means a written assignment of a Contributing Lender's Claims to the Litigation Trust, in substantially the form which shall be included in the Plan Supplement.

1.33    **Contributing Lenders** means (i) holders of Secured Lender Claims or Lender Deficiency Claims who vote to approve the Plan or who execute a Contributing Lender Assignment and (ii) the Prepetition Administrative Agent.

1.34    **Contributing Lenders' Claims** means any and all Causes of Action held by the Contributing Lenders, solely in their capacity as holders of Secured Lender Claims or Lender Deficiency Claims, or as Prepetition Administrative Agent, as applicable, against (i) SemGroup Energy Partners, G.P., L.L.C. and its subsidiaries, (ii) any Debtor and all current and former officers, directors, or employees of any Debtor or non-Debtor affiliate, (iii) all affiliates of persons described in clause (ii) hereof except for such Entities which constitute a direct or indirect investment or wholly or partially-owned subsidiary of SemGroup (other than SemGroup Energy Partners, G.P., L.L.C and its subsidiaries as provided in clause (i) hereof) and (iv) all Entities that provided services to or conducted transactions with any Debtor or non-Debtor affiliate, including, without limitation, all attorneys, accountants, financial advisors, trading counterparties, and customers or vendors, in each case solely as the provider of services or goods to any Debtor or non-Debtor affiliate; provided, however, that the BNPP Claim will be excluded. For the avoidance of doubt, Contributing Lenders' Claims do not include (a) Released Actions or (b) any Causes of Action asserted against a Prepetition Lender with a Claim under a Swap Contract (as defined in the Prepetition Credit Agreement) or a holder of a Swap Claim to determine whether or not such Swap Contract Claim qualifies as a Lender Swap Obligation under the Prepetition Credit Agreement.

1.35    **Creditor** means any Entity holding a Claim against the Debtors' estates or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtors, that arose or is deemed to have arisen prior to or as of the Petition Date.

1.36    **Creditors' Committee** means the statutory committee of creditors holding Unsecured Claims appointed in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code, as reconstituted from time to time.

1.37     **Creditors' Settlement** means the global compromise and settlement of certain intercreditor disputes embodied in the Plan and supported by the Creditors' Committee, the Lender Steering Committee and the Debtors, providing for, among other things, (i) an increase in the potential recoveries for the holders of Claims in Classes 149 through 174 from (a) (1) provided certain assumptions in favor of the Prepetition Lenders are made, 0.26% of New Common Stock and (2) 30% of the Litigation Trust Interests to (b) (1) 3.75% of New Common Stock, (2) Warrants to purchase 3.75% of New Common Stock, and (3) 30% of the Litigation Trust Interests and (ii) an increase in the potential recoveries for the holders of Claims in Classes 201 through 226 from (a) (1) provided certain assumptions in favor of the Prepetition Lenders are made, 0.06% of New Common Stock and (2) 10% of the Litigation Trust Interests to (b) (1) 1.25% of New Common Stock, (2) Warrants to purchase 1.25% of New Common Stock, and (3) 10% of the Litigation Trust Interests.

1.38     **Debtors** means SemCrude, L.P., Chemical Petroleum Exchange, Incorporated, Eaglwing, L.P., Grayson Pipeline, L.L.C., Greyhawk Gas Storage Company, L.L.C., K.C. Asphalt L.L.C., SemCanada II, L.P., SemCanada L.P., SemCrude Pipeline, L.L.C., SemFuel Transport LLC, SemFuel, L.P., SemGas Gathering LLC, SemGas Storage, L.L.C., SemGas, L.P., SemGroup Asia, L.L.C., SemGroup Finance Corp., SemGroup, L.P., SemKan, L.L.C., SemManagement, L.L.C., SemMaterials Vietnam, L.L.C., SemMaterials, L.P., SemOperating G.P., L.L.C., SemStream, L.P., SemTrucking, L.P., Steuben Development Company, L.L.C., and SemCap, L.L.C.

1.39     **Debtors in Possession** means the Debtors as debtors in possession pursuant to sections 1101(1) and 1107(a) of the Bankruptcy Code.

1.40     **Disbursement Account(s)** means the account(s) to be established by the Debtors or the Reorganized Debtors, as the case may be, on the Effective Date in accordance with Section 12.1 of the Plan, together with any interest earned thereon.

1.41     **Disbursing Agent** means, solely to effectuate distributions pursuant to the Plan, the Reorganized Debtors or such other Entity as may be designated in the Confirmation Order.

1.42     **Disclosure Statement** means the disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.43     **Disclosure Statement Order** means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.44     **Disputed** means, with reference to (a) any Claim, proof of which was timely and properly filed, or an Administrative Expense Claim, which is disputed under the Plan or as to which a timely objection has been filed pursuant to section 502(d) or 510 of the Bankruptcy Code, or otherwise, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 has been interposed, and which objection and/or request for estimation has not been withdrawn or determined by a Final Order or (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed. A Claim that is Disputed by the Debtors as to its

amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and Disputed as to the excess.

1.45 **Disputed Claim Amount** means the lesser of (a) the liquidated amount set forth in the proof of claim filed with the Bankruptcy Court relating to a Disputed Claim, (b) if the Bankruptcy Court has estimated such Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, the amount of a Disputed Claim as estimated by the Bankruptcy Court, and (c) the amount of such Disputed Claim allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code, or zero, if such Disputed Claim is disallowed by the Bankruptcy Court pursuant to such section, in either case, regardless of whether the order or judgment allowing or disallowing such Claim has become a Final Order; provided, however, that, in the event that such Claim has been disallowed, but the order of disallowance has not yet become a Final Order, the Bankruptcy Court may require the Disbursing Agent to reserve Plan Currency in an amount that would be attributed to such Claim if it were an Allowed Claim, or a lesser amount, to the extent that the Bankruptcy Court, in its sole and absolute discretion, determines such reserve is necessary to protect the rights of such holder under all of the facts and circumstances relating to the order of disallowance and the appeal of such holder from such order.

1.46 **Disputed Claims Reserve** means the reserve on account of Disputed Claims.

1.47 **Disputed Production Receivable** means, for any counterparty, the difference between such counterparty's Gross Production Receivable and its Undisputed Production Receivable.

1.48 **Downstream Claims** means claims asserted or to be asserted by one or more First Purchaser Producers against Downstream Purchasers arising from such Downstream Purchasers' purchases (including receipt, exchanges, delivery of or control over) of crude oil and/or gas from Debtors prior to the Petition Date, that Debtors purchased from the First Purchaser Producers, which oil and gas First Purchaser Producers assert Debtors transferred to the Downstream Purchasers and for which Debtors have not been paid in full (without setoff, netting, or other adjustment); provided, that Downstream Claims shall be limited to claims against those Entities referred to on Schedule 1.48 and their successor or subsequent purchasers [except as may be identified on Schedule 1.48] and Downstream Claims shall in no event include any Claims against Prepetition Lenders or their respective affiliates (other than any such claims against Goldman Sachs & Co., J. Aron & Company, and their respective affiliates) who were such at 5:00 p.m. Eastern Daylight Time, on May 14, 2009. Schedule 1.48 to be filed.

1.49 **Downstream Purchasers** means non-Debtor third parties against which the Downstream Claims are asserted or to be asserted.

1.50 **DTC** means The Depository Trust Company.

1.51 **Eaglwing** means Eaglwing, L.P., an Oklahoma limited partnership.

1.52 **Eaglwing First Purchaser Producer Twenty-Day Claims** means any Twenty-Day Claims asserted against Eaglwing by a First Purchaser Producer as set forth on Schedule 1 entitled "First Purchaser Producer Twenty-Day Claims (Listed by Debtor)."

1.53    **Effective Date** means the first (1st) Business Day following the Confirmation Date on which (a) the conditions to effectiveness of the Plan set forth in Section 18.1 of the Plan have been satisfied or otherwise waived in accordance with Section 18.3 of the Plan and (b) the effectiveness of the Confirmation Order shall not be stayed.

1.54    **Entity** means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee, or any other entity.

1.55    **Equity Interest** means any ownership interest in any of the Debtors.

1.56    **Examiner** means Louis J. Freeh, appointed as examiner of the Debtors pursuant to an order of the Bankruptcy Court, dated October 14, 2008.

1.57    **Exit Facility** means the working capital financing to be entered into by the Reorganized Debtors and the lenders party thereto in connection with the consummation of the Plan and effective on the Effective Date on such terms as are contained in the commitment letter included in the Plan Supplement.

1.58    **Fee Auditor** means Warren H. Smith of Warren H. Smith & Associates, P.C., appointed as fee auditor pursuant to the Fee Auditor Order.

1.59    **Fee Auditor Order** means the order of the Bankruptcy Court, dated October 22, 2008, appointing the Fee Auditor.

1.60    **Final Order** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, the Reorganized Debtors, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

1.61    **First Purchaser Producer Claims** means the Secured First Purchaser Producer Claims and the Unsecured First Purchaser Producer Claims.

1.62     **First Purchaser Producer Twenty-Day Claims** means the Twenty-Day Claims asserted by First Purchaser Producers as set forth on Schedule 1 entitled "First Purchaser Producer Twenty-Day Claims (Listed By Debtor)."

1.63     **First Purchaser Producers** means Producers with respect to which first sales from oil and gas wells located in the Active States or the Inactive States were made to a Debtor.

1.64     **Fourth Amended Schedules** means the amended Schedules filed by the Debtors on August 13, 2009 (Docket Nos. 5204-5212).

1.65     **General Unsecured Claim** means an Unsecured Claim (including a Producer Deficiency Claim), other than a Senior Notes Claim, a Lender Deficiency Claim, or an Intercompany Claim.

1.66     **Gross Production Receivable** means any account receivable of the Debtors arising from the sale of crude oil or natural gas before application of any asserted right of setoff or defense other than cash payment.

1.67     **Inactive States** means the states of Colorado, Louisiana, Missouri, Montana, Nebraska, and North Dakota.

1.68     **Initial Petition Date** means July 22, 2008, the date on which SemGroup, L.P. and 24 of its direct and indirect subsidiaries filed their voluntary petitions for relief commencing certain of the Chapter 11 Cases.

1.69     **Intercompany Claim** means any Unsecured Claim held by any Debtor against any other Debtor.

1.70     **Intercompany Equity Interest** means any Equity Interest held by any of the other Debtors.

1.71     **Investigative Order** means the Bankruptcy Court order, dated September 10, 2008, authorizing and directing the Examiner to conduct an investigation of certain of the Debtors' pre-Petition Date transactions.

1.72     **IRS** means the Internal Revenue Service, an agency of the United States Department of Treasury.

1.73     **June Decisions** means the three Bankruptcy Court decisions issued on June 19, 2009 with respect to the Producer State-Specific Adversary Proceedings for the states of Kansas, Oklahoma and Texas.

1.74     **Lender Cash** means Plan Cash reduced by (a) Cash used to pay or reserved to pay Administrative Expense Claims (including, without duplication, Twenty-Day Claims), (b) Cash used to pay the Postpetition Financing Claims, (c) Cash used to pay or reserved to pay the Professional Compensation and Reimbursement Claims, (d) Cash used to pay or reserved to pay the portion of any Priority Non-Tax Claims and Priority Tax Claims paid on the Effective Date,

(e) the Senior Notes Indenture Trustee Fees, (f) the US Term Lender Group Fees, and (g) the Litigation Trust Funds.

1.75 **Lender Deficiency Claim** means (i) an Unsecured Claim in respect of the unsecured portion of a Revolver/Term Lender Claim or a Working Capital Lender Claim or (ii) a Swap Claim.

1.76 **Lender Steering Committee** means the unofficial steering committee of certain of the Prepetition Lenders, as reconstituted from time to time.

1.77 **Lien** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.78 **Litigation Trust** means the Entity to be created on the Effective Date in accordance with Section 11.1 of the Plan and the Litigation Trust Agreement for the benefit of holders of Allowed Senior Notes Claims, Allowed Lender Deficiency Claims, and Allowed General Unsecured Claims.

1.79 **Litigation Trust Agreement** means the trust agreement, substantially in the form contained in the Plan Supplement.

1.80 **Litigation Trust Assets** means the Litigation Trust Claims, the Contributing Lenders' Claims, the Litigation Trust Funds, and any other assets acquired by the Litigation Trust after the Effective Date or pursuant to the Plan.

1.81 **Litigation Trust Board** means the group of Persons approved prior to the Effective Date by the Bankruptcy Court, or any replacements thereafter selected in accordance with the provisions of the Litigation Trust Agreement, who shall have the authority set forth in the Litigation Trust Agreement, consisting of three (3) Persons selected by the Lender Steering Committee and three (3) Persons selected by the Creditors' Committee, with decisions to require the approval of at least four (4) of such Persons or, with the consent of the Creditors' Committee, the Prepetition Administrative Agent and the Lender Steering Committee, a group consisting of two (2) Persons selected by the Lender Steering Committee and two (2) Persons selected by the Creditors' Committee, with decisions to require the approval of at least three (3) of such Persons.

1.82 **Litigation Trust Claims** means all Causes of Action asserted, or which may be asserted, by or on behalf of the Debtors or the Debtors' estates, in respect of matters arising prior to the Effective Date, including, but not limited to, Causes of Action in respect of Disputed Production Receivables and Avoidance Actions, but specifically excluding (i) other Causes of Action arising in the ordinary course of the Debtors' business; (ii) Released Actions; and (iii) any Causes of Action against a Prepetition Lender with a Claim under a Swap Contract (as defined in the Prepetition Credit Agreement) or a holder of a Swap Claim to determine whether or not such Swap Contract Claim qualifies as a Lender Swap Obligation under the Prepetition Credit Agreement.

1.83 **Litigation Trust Fund Reserve Amount** means, initially, a reserve of $15 million, and, thereafter, an amount to be fixed from time to time by the Litigation Trust Board, which reserve shall be in place to fund all expenses of the Litigation Trust, including, but not limited to, the fees and expenses of the professionals selected pursuant to the Litigation Trust

Agreement and the costs related to any valuations; provided, however, that the Litigation Trust Fund Reserve Amount shall not exceed $15 million until the Litigation Trust Funds have been repaid in full to the holders of the Allowed Secured Working Capital Lender Claims as provided in Section 11.3 of the Plan.

1.84 **Litigation Trust Funds** means the $15 million of Plan Cash used to initially fund the Litigation Trust pursuant to Section 11.3 of the Plan.

1.85 **Litigation Trust Interests** means the beneficial interests in the Litigation Trust to be deemed distributed to holders of Allowed Senior Notes Claims, Allowed Lender Deficiency Claims, and Allowed General Unsecured Claims.

1.86 **Litigation Trustee** means the Entity, solely in its capacity as Litigation Trustee, approved by the Bankruptcy Court at the Confirmation Hearing to administer the Litigation Trust in accordance with the terms and provisions of Article XI hereof and the Litigation Trust Agreement.

1.87 **Management Committee** means the management committee of SemGroup G.P., L.L.C., the general partner of SemGroup.

1.88 **Management Incentive Plan** means the management incentive plan to be adopted by New Holdco, which shall be in substantially the form contained in the Plan Supplement.

1.89 **Management Stock** means the Class A New Common Stock to be issued by New Holdco to employees and Board members in accordance with the Management Incentive Plan.

1.90 **Minimum Operating Cash** means $50 million of Cash as of the Effective Date, whether such Cash is held by the Debtors or a Canadian subsidiary of SemGroup.

1.91 **New Common Stock** means the Class A New Common Stock and Class B New Common Stock of New Holdco authorized under the New Holdco Certificate of Incorporation.

1.92 **New Holdco** means the new parent company of the Reorganized Debtors established under Delaware law.

1.93 **New Holdco Bylaws** means the bylaws of New Holdco, substantially in the form contained in the Plan Supplement.

1.94 **New Holdco Certificate of Incorporation** means the certificate of incorporation of New Holdco, substantially in the form contained in the Plan Supplement.

1.95 **Non-Settling Party** means any Creditor who has asserted an Other Twenty-Day Claim that does not elect to accept the Other Twenty-Day Claims Settlement.

1.96 **Notice** means the notice(s) of certain objections to First Purchaser Producer Twenty-Day Claims and Other Twenty-Day Claims issued by the Debtors pursuant to the September 15 Order.

1.97 **Operators** means the operators of oil and gas wells located in the Active States or the Inactive States.

1.98 **Other Secured Claim** means any Secured Claim other than a Secured Tax Claim, a Secured Lender Claim, a White Cliffs Credit Agreement Claim, or a Secured First Purchaser Producer Claim.

1.99 **Other Twenty-Day Claim** means a Twenty-Day Claim asserted by a Creditor that does not constitute a First Purchaser Producer Twenty-Day Claim.

1.100 **Other Twenty-Day Claims Settlement** means the settlement of the Other Twenty-Day Claims asserted against the Debtors as set forth in Section 3.2 of this Plan.

1.101 **Owners** means working interest, royalty, and overriding royalty interest owners in oil and gas wells located in the Active States or the Inactive States.

1.102 **Person** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.103 **Petition Date** means the Initial Petition Date; provided, however, that with respect to that Debtor which commenced its Chapter 11 Case subsequent to July 22, 2008, "Petition Date" shall refer to the date on which such Chapter 11 Case was commenced.

1.104 **Plan** means this Fourth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (including, without limitation, the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto or thereto), either in its present form or as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

1.105 **Plan Cash** means all Cash and Cash Equivalents (including Restricted Cash) of the Debtors on the Effective Date, other than Minimum Operating Cash.

1.106 **Plan Currency** means the mixture of Plan Cash, Lender Cash, Second Lien Term Loan Interests, New Common Stock, Warrants (if any), and Litigation Trust Interests to be distributed to holders of Allowed Claims pursuant to the Plan.

1.107 **Plan Supplement** means the document containing the forms of documents specified in Section 23.3 of the Plan.

1.108 **Postpetition Administrative Agent** means Bank of America, N.A., as administrative agent to the Postpetition Lenders under the Postpetition Financing Agreement.

1.109 **Postpetition Financing Agreement** means the Debtor in Possession Credit Agreement, dated as of August 8, 2008, by and among SemCrude, L.P., as borrower, SemGroup, L.P., as a guarantor, SemOperating G.P., L.L.C., as a guarantor, Bank of America, N.A., as administrative agent and L/C issuer, Banc of America LLC, as sole lead arranger and sole book manager, and each lender from time to time party thereto, as entered into pursuant to the

Postpetition Financing Order and as modified, amended, or extended from time to time during the Chapter 11 Cases and any of the documents and instruments related thereto.

1.110 **Postpetition Financing Claim** means any Claim against the Debtors arising under, in connection with, or related to the Postpetition Financing Agreement.

1.111 **Postpetition Financing Order** means, collectively, (a) the Interim Order (1) Authorizing Debtors to Obtain Postpetition Financing, (2) Authorizing Debtors to Use Cash Collateral, (3) Granting Adequate Protection to Prepetition Secured Parties, and (4) Scheduling a Final Hearing, entered by the Bankruptcy Court on August 8, 2008 and (b) the Final Order (1) Authorizing Debtors to Obtain Postpetition Financing, (2) Authorizing Debtors to Use Cash Collateral, and (3) Granting Adequate Protection to Prepetition Secured Parties, entered by the Bankruptcy Court on September 17, 2008, as each of the foregoing is modified, amended, supplemented or extended from time to time during the Chapter 11 Cases.

1.112 **Postpetition Lenders** means, collectively, the banks and other Entities that are parties to the Postpetition Financing Agreement, as lenders thereunder, and their successors and assigns.

1.113 **Prepetition Administrative Agent** means Bank of America, N.A., as administrative agent to the Prepetition Lenders under the Prepetition Credit Agreement.

1.114 **Prepetition Credit Agreement** means that certain Amended and Restated Credit Agreement, dated as of October 18, 2005 (as amended, modified, and supplemented from time to time through and including the Petition Date), among SemCrude, L.P., as U.S. borrower, and SemCams Midstream Company, as Canadian borrower, SemGroup, as a guarantor, SemOperating G.P., L.L.C., as a guarantor, Bank of America, N.A., as administrative agent and L/C issuer, Bank of America Securities, LLC, as joint lead arranger and sole book manager, BNPP as joint lead arranger and co-syndication agent, Bank of Montreal d/b/a "Harris Nesbitt," as co-syndication agent, Bank of Oklahoma, N.A. and The Bank of Nova Scotia, as co-documentation agents, and the lenders party thereto, and any of the documents and instruments related thereto.

1.115 **Prepetition Lenders** means, collectively, the banks and other Entities that are parties to the Prepetition Credit Agreement or hold a security interest in collateral under the Prepetition Credit Agreement, as lenders or holders of swap obligations that constitute Lender Swap Obligations (as defined in the Prepetition Credit Agreement), and their successors and assigns.

1.116 **Priority Non-Tax Claim** means any Claim against the Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(4), (5), (7), or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.117 **Priority Tax Claim** means any Claim of a governmental unit against the Debtors entitled to priority of payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.118   **Pro Rata Share** means the proportion that a Claim bears to the sum of all Claims within such Class or group of Classes for which an allocation is being determined.

1.119   **Producer Decisions** means the June Decisions and any Bankruptcy Court decision issued after September 20, 2009 with respect to the Producer State-Specific Adversary Proceedings for the states of New Mexico or Wyoming.

1.120   **Producer Deficiency Claims** means Claims by First Purchaser Producers with respect to which first sales were made to a Debtor in an Inactive State for amounts in excess of the related First Purchaser Producer Twenty-Day Claims.

1.121   **Producer Plaintiffs** means the Producers named as plaintiffs in the Producer State-Specific Adversary Proceedings.

1.122   **Producer Representative** means the person appointed under Section 8.3 of this Plan to resolve any disputes as to the Allowed amount of First Purchaser Producer Twenty-Day Claims, Secured First Purchaser Producer Claims and allowance of any fees and expense reimbursement requests of Producer Plaintiffs.

1.123   **Producer State-Specific Adversary Proceedings** means the declaratory judgment actions filed in the Bankruptcy Court by certain Producers to adjudicate the threshold questions of law related to lien or trust statutes alleged to be applicable in the Active States, Colorado, Missouri, and North Dakota, as well as any action filed by a Producer against any Prepetition Lenders or their respective affiliates, including without limitation Merrill Lynch and Co. or any of its affiliates, and directly or indirectly arising under, in connection with, or related to the provision of services to, or transactions conducted with, any Debtor.

1.124   **Producers** means the operators of, and working interest, royalty, and overriding royalty interest owners in, oil and gas wells located in the Active or the Inactive States.

1.125   **Producers' Committee** means the committee of certain of the Producers appointed in the Chapter 11 Cases pursuant to section 1102(a)(2) of the Bankruptcy Code, as reconstituted from time to time.

1.126   **Producers' Committee Professional Fees** means an amount of up to $5.5 million for reasonable fees and expenses incurred from the appointment of the Producers' Committee through the Effective Date by the professionals for the Producers' Committee, whose retention has been approved by order of the Bankruptcy Court.

1.127   **Producers' Committee Retention Order** means the order entered by the Bankruptcy Court on December 16, 2008, authorizing the retention and employment of Andrews Kurth LLP, as counsel to the Producers' Committee.

1.128   **Producers' Settlement** means the compromise and settlement reached on September 14, 2009 among the Debtors, the Prepetition Administrative Agent, the Lender Steering Committee, the Producers' Committee and the Producer Plaintiffs that is embodied in the Plan and resolves, among other things, treatment of the First Purchaser Producer Twenty-Day

Claims, the Secured First Purchaser Producer Claims, and the Unsecured First Purchaser Producer Claims.

1.129 **Professional Compensation and Reimbursement Claim** means a Claim for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code.

1.130 **Record Date** means the date or dates established by the Bankruptcy Court in the Confirmation Order for the purpose of determining the holders of Allowed Claims entitled to receive distributions pursuant to the Plan.

1.131 **Released Actions** means (a) Causes of Action, if any, against the Prepetition Lenders, the Postpetition Lenders, the Prepetition Administrative Agent, the Postpetition Administrative Agent and/or the holders of Swap Claims (other than Goldman Sachs & Co., J. Aron & Company, Bank of Oklahoma and their respective affiliates) based in whole or in part on any act, omission, transaction, event, or other circumstance and arising under, in connection with, or related to the Prepetition Credit Agreement, the Postpetition Financing Agreement or otherwise arising under, in connection with, or related to the provision of services to, or transactions conducted with, any Debtor or non-Debtor affiliate and (b) any Causes of Action released pursuant to the Catsimatidis Settlement Order; provided, however, that solely for purposes of this definition, "Prepetition Lenders" and "holders of Swap Claims" shall be limited to those Entities who were Prepetition Lenders and/or holders of Swap Claims at 5:00 p.m., Eastern Daylight Time, on May 14, 2009.

1.132 **Reorganized Debtors** means the Debtors on and after the Effective Date.

1.133 **Reorganized SemGroup Companies** means New Holdco and its direct and indirect subsidiaries, other than any direct or indirect subsidiaries of SemGroup Holdings, L.P.

1.134 **Restricted Cash** means, collectively, the following amounts deposited into a segregated account of the Debtors pursuant to a turnover motion: (i) approximately $89.8 million deposited by J. Aron & Company, (ii) approximately $10.7 million deposited by BP Oil Supply Company, and (iii) approximately $21.6 deposited by ConocoPhillips Company.

1.135 **Retained Causes of Action** means any Causes of Action retained by the Reorganized Debtors and not transferred to the Litigation Trust. For the avoidance of doubt, the Released Actions are not Retained Causes of Action.

1.136 **Revolver/Term Lender Claim** means a Claim of a Prepetition Lender under the Prepetition Credit Agreement arising under, in connection with, or related to the Revolver Obligations (as defined in the Prepetition Credit Agreement) or the U.S. Term Obligations (as defined in the Prepetition Credit Agreement).

1.137 **Revolver/Term Lender Effective Date Cash** means (i) $74 million, plus (ii) net Cash proceeds, if any, in excess of $51 million received prior to the Effective Date from the sale of assets of SemFuel, L.P. other than inventory and receivables, plus (iii) net Cash proceeds, if any, received after July 21, 2009 and prior to the Effective Date from the sales or assignments of the Revolver/Term Priority Collateral (as defined in the Prepetition Credit Agreement), plus (iv)

the portion of net Cash proceeds, if any, received after July 21, 2009 and prior to the Effective Date from the sales or assignments of the Pari Passu Collateral (as defined in the Prepetition Credit Agreement) allocable to the Revolver Obligations (as defined in the Prepetition Credit Agreement) or the U.S. Term Obligations (as defined in the Prepetition Credit Agreement) in accordance with the provisions of the Prepetition Credit Agreement.

1.138  **Schedules** means the schedules of assets and prepetition liabilities, the lists of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented on or prior to the Confirmation Date.

1.139  **Second Lien Term Loan Facility** means the secured second lien term loan facility to be entered into by certain of the Reorganized Debtors and the Prepetition Lenders in connection with the consummation of the Plan and effective on the Effective Date, in the aggregate principal amount of $300 million, substantially in the form contained in the Plan Supplement.

1.140  **Second Lien Term Loan Interest** means a participation interest in the Second Lien Term Loan Facility.

1.141  **Secured Claim** means a Claim against the Debtors (a) secured by a Lien on Collateral or (b) subject to setoff under sections 553, 555, 556, 559, 560, and 561 of the Bankruptcy Code, in each case to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or as otherwise agreed to, in writing, by the Debtors or the Reorganized Debtors, as the case may be, and the holder of such Claim; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the Class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.142  **Secured First Purchaser Producer Claims** means Claims asserted by First Purchaser Producers against Debtors with respect to which first sales were made to a Debtor in an Active State for amounts in excess of such related First Purchaser Producer Twenty-Day Claims as set forth on Schedule 2 entitled "Secured First Purchaser Producer Claims (Listed By Debtor)."

1.143  **Secured Lender Claims** means Secured Working Capital Lender Claims and Secured Revolver/Term Lender Claims.

1.144  **Secured Revolver/Term Lender Claim** means a Revolver/Term Lender Claim to the extent of the value of the Prepetition Lender's Collateral that is allocable to the respective claim in accordance with the provisions of the Prepetition Credit Agreement.

1.145  **Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

1.146 **Secured Working Capital Lender Claim** means a Working Capital Lender Claim to the extent of the value of the Prepetition Lender's Collateral that is allocable to the respective claim in accordance with the provisions of the Prepetition Credit Agreement.

1.147 **SemCAMS ULC** means SemCAMS ULC, a privately-held unlimited liability company incorporated under the Nova Scotia Companies Act.

1.148 **SemCAMS ULC Plan** means the Plan of Arrangement and Reorganization filed by SemCAMS ULC under the CCAA on July 24, 2009, as such plan may be amended, varied or supplemented by SemCAMS ULC from time to time.

1.149 **SemCanada Energy** means SemCanada Energy Company, a privately-held unlimited liability company incorporated under the Nova Scotia Companies Act.

1.150 **SemCanada Energy Claim** means, in the event that the SemCanada Energy Plan is not approved by the requisite number of creditors of SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc. or the SemCanada Energy Plan is not sanctioned by the Alberta Court, an unsecured principal amount of $200,000,000 of the Secured Lender Claims against the Debtors, which shall be solely collected from and enforced against SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc. (including any security interest granted by SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc.) and without recourse to the Debtors, SemCAMS ULC and SemCanada Nova Scotia.

1.151 **SemCanada Energy Group** means SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc.

1.152 **SemCanada Energy Plan** means the Consolidated Plan of Distribution filed by SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc. under the CCAA on July 24, 2009, as such plan may be amended, varied or supplemented by SemCanada Energy, A.E. Sharp Ltd. and CEG Energy Options, Inc. from time to time.

1.153 **SemCanada Group** means SemCanada Nova Scotia, SemCAMS ULC, and the SemCanada Energy Group.

1.154 **SemCanada Nova Scotia** means SemCanada Crude Company, a privately-held unlimited liability company incorporated under the Nova Scotia Companies Act.

1.155 **SemCanada Nova Scotia Plan** means the Plan of Arrangement and Reorganization filed by SemCanada Nova Scotia under the CCAA on July 24, 2009, as such plan may be amended, varied or supplemented by SemCanada Nova Scotia from time to time.

1.156 **SemCrude Pipeline** means SemCrude Pipeline, L.L.C., a Delaware limited liability company.

1.157 **SemGroup** means SemGroup, L.P., an Oklahoma limited partnership.

1.158 **SemGroup Equity Interest** means an Equity Interest in SemGroup.

1.159  **SemGroup Finance** means SemGroup Finance Corp., a Delaware corporation, which will be renamed SemGroup Holdings Inc. and become New Holdco.

1.160  **Senior Notes** means the 8.75% senior unsecured notes in the original principal amount of $600 million issued pursuant to the Senior Notes Indenture.

1.161  **Senior Notes Claim** means any Claim against the Debtors and their non-Debtor affiliates arising under, in connection with, or related to the Senior Notes Indenture, including, without limitation, any Claims arising from any guarantees under the Senior Notes Indenture.

1.162  **Senior Notes Indenture** means that certain indenture, dated as of November 18, 2005 (as amended, modified, and supplemented from time to time through and including the Petition Date), by and among SemGroup and SemGroup Finance, as issuers, and the Senior Notes Indenture Trustee.

1.163  **Senior Notes Indenture Charging Lien** means any Lien or other priority in payment or right available to the Senior Notes Indenture Trustee pursuant to the Senior Notes Indenture or otherwise available to the Senior Notes Indenture Trustee under applicable law for, among other things, the payment of the Senior Notes Indenture Trustee Fees.

1.164  **Senior Notes Indenture Trustee** means HSBC Bank USA, N.A., in its capacity as successor to Wells Fargo Bank, National Association, as indenture trustee under the Senior Notes Indenture.

1.165  **Senior Notes Indenture Trustee Fees** means an amount of up to $750,000 for the Senior Notes Indenture Trustee's reasonable fees and expenses incurred prior to the Effective Date, including the reasonable fees and expenses of the Senior Notes Indenture Trustee's attorneys and agents.

1.166  **September 15 Order** means the Order Establishing Procedures for the Resolution of Administrative Claims Asserted Pursuant to Section 503(b)(9) of the Bankruptcy Code and Regarding Payments for Post-Petition Purchases (Docket No. 1376), entered by the Bankruptcy Court on September 15, 2008.

1.167  **Settling Party** means any Creditor who elects to accept the Other Twenty-Day Claims Settlement.

1.168  **Swap Claim** means an Unsecured Claim of a Prepetition Lender or an Affiliate (as defined in the Prepetition Credit Agreement) of a Prepetition Lender in respect of a Swap Contract (as defined in the Prepetition Credit Agreement) that is not a Lender Swap Obligation (as defined in the Prepetition Credit Agreement).

1.169  **Tax Code** means the Internal Revenue Code of 1986, as amended from time to time.

1.170  **Third Circuit Appeals** means the appeals pending in the Third Circuit Court of Appeals with respect to the June Decisions.

1.171 **Twenty-Day Claim** means any Claim (whether secured or unsecured) for the value of any goods received by a Debtor within twenty (20) days before the Petition Date in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business.

1.172 **Undisputed Production Receivable** means any account receivable of the Debtors arising from the sale of crude oil or natural gas after application of any counterparty's asserted right of setoff or other defense.

1.173 **Unsecured Claim** means any Claim against the Debtors, other than an Administrative Expense Claim, a Secured Claim, a Professional Compensation and Reimbursement Claim, or a Priority Tax Claim.

1.174 **Unsecured First Purchaser Producer Claims** means (a) Claims by First Purchaser Producers with respect to which first sales were made to a Debtor in an Inactive State for amounts in excess of such First Purchaser Producers' related Twenty-Day Claims and (b) suspense amounts related to Claims of First Purchaser Producers with respect to wells that had first sales to the Debtors prior to December 1, 2007.

1.175 **US Term Lender Group** means the ad hoc group of holders of US Term Loans and Revolver Loans (each as defined in the Prepetition Credit Agreement) formed in July 2008 and represented throughout the Chapter 11 Cases by Ropes & Gray LLP and Saul Ewing LLP, as constituted from time to time, and currently comprised of those holders of US Term Loans and Revolver Loans (each as defined in the Prepetition Credit Agreement) set forth in the Rule 2019 Statement (Ropes & Gray LLP and Saul Ewing LLP) filed by SemCrude US Term Lender Group (Docket No. 4335).

1.176 **US Term Lender Group Fees** means an amount of up to $930,000 for reasonable fees and expenses incurred from the Petition Date through July 15, 2009 by the professionals for the US Term Lender Group, consisting of Ropes & Gray LLP, Alvarez & Marsal, Saul Ewing LLP, and Duff & Phelps.

1.177 **Warrant Agreement** means the agreement governing the issuance of the Warrants, substantially in the form contained in the Plan Supplement.

1.178 **Warrants** means warrants to purchase shares of New Common Stock issued by New Holdco pursuant to the Warrant Agreement.

1.179 **White Cliffs Credit Agreement** means that certain credit agreement, dated as of June 17, 2008 (as amended, modified, and supplemented from time to time through and including the Petition Date), among SemCrude Pipeline, as borrower, General Electric Capital Corporation, as administrative agent, and the lenders party thereto, consisting of (i) a $60 million revolving credit facility and (ii) a $60 million term loan facility, and any of the documents and instruments related thereto.

1.180 **White Cliffs Credit Agreement Claim** means any Claim against the Debtors arising under, in connection with, or related to the White Cliffs Credit Agreement.

1.181 **Working Capital Lender Claim** means a Claim of a Prepetition Lender (or an Affiliate (as defined in the Prepetition Credit Agreement) thereof) arising under, in connection with, or related to the Working Capital Obligations (as defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement (or, in the case of a Working Capital Obligation that is also a Lender Swap Obligation (as defined in the Prepetition Credit Agreement), the related Swap Contract (as defined in the Prepetition Credit Agreement)).

1.182 **Working Capital Lender Effective Date Cash** means (i) all Lender Cash as of the Effective Date, minus (ii) Revolver/Term Lender Effective Date Cash.

1.183 **Interpretation; Application of Definitions; Rules of Construction** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, (a) all article, section, schedule, or exhibit references in the Plan are to the respective article, of, section in, schedule to, or exhibit to the Plan, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof and (b) all references to dollars are to the lawful currency of the United States of America. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, POSTPETITION FINANCING CLAIMS, PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS, AND PRIORITY TAX CLAIMS; PAYMENT OF SENIOR NOTES INDENTURE TRUSTEE FEES AND US TERM LENDER GROUP FEES

2.1 **Administrative Expense Claims.** On the later to occur of (a) the Effective Date and (b) the date on which an Administrative Expense Claim (including an Unsecured Claim entitled to priority under section 503(b)(9) of the Bankruptcy Code) shall become an Allowed Claim, the Reorganized Debtors, or in the case of the First Purchaser Producer Twenty-Day Claims, the Producer Representative, shall (i) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim or (ii) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and the Debtors or the Reorganized Debtors, as the case may be; provided, however, that the First Purchaser Producer Twenty-Day Claims shall be Allowed and paid by the Producer Representative on the Effective Date in accordance with Section 3.1 hereof; provided, further, that at the Effective Date the Reorganized Debtors shall reserve in Cash an amount equal to the

aggregate amount of the Other Twenty-Day Claims for any Non-Settling Parties (at that date) set forth on the Fourth Amended Schedules or such lesser amount as shall be approved by the Bankruptcy Court until the final adjudication or resolution of such Disputed Twenty-Day Claim; provided, further, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtors in Possession during the Chapter 11 Cases shall be paid by the Reorganized Debtors in accordance with the terms and conditions of the particular transaction and any agreements relating thereto. Notwithstanding the provisions of the Producers' Committee Retention Order, the amount of Allowed Administrative Expense Claims for Producers' Committee Professional Fees shall not reduce any payment under Section 2.1 hereof.

2.2 **Postpetition Financing Claims.** On the Effective Date, (a) all outstanding Postpetition Financing Claims shall be indefeasibly paid and satisfied, in full, in Cash by the Debtors, (b) all commitments under the Postpetition Financing Agreement will terminate, (c) all letters of credit outstanding under the Postpetition Financing Agreement (i) shall either (A) be returned to the issuer undrawn and marked "cancelled," or (B) be cash collateralized (with funds borrowed under the Exit Facility) as and to the extent required by the terms of the Postpetition Financing Agreement or (ii) be collateralized by back-to-back letters of credit provided to the issuer in an amount equal to 105% of the face amount of the outstanding letters of credit, in form and substance and from a financial institution acceptable to such issuer, and (d) all money posted by the Debtors in accordance with the Postpetition Financing Agreement and the agreements and instruments executed in connection therewith shall be released to the applicable Reorganized Debtors for distribution in accordance with the terms and provisions of the Plan. Nothing in this Plan or in the Confirmation Order, whether under section 1141 of the Bankruptcy Code or otherwise, shall discharge any remaining Postpetition Financing Claims.

2.3 **Professional Compensation and Reimbursement Claims.** All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code shall (i) file their respective applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court and (ii) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) on the date that such Professional Compensation and Reimbursement Claim becomes an Allowed Professional Compensation and Reimbursement Claim, or as soon thereafter as is reasonably practicable or (B) upon such other terms as may be mutually agreed upon between such holder of a Professional Compensation and Reimbursement Claim and the Reorganized Debtors. Objections to Professional Compensation and Reimbursement Claims shall be filed no later than thirty (30) days after an application or request for such Claim is filed with the Bankruptcy Court.

2.4 **Priority Tax Claims.** Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option and discretion of the Reorganized Debtors, (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as practicable, (ii) in accordance with section

1129(a)(9)(C) of the Bankruptcy Code, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to 2.339% per annum, the federal judgment rate on the Petition Date, over a period ending not later than five (5) years after the Petition Date, or (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

2.5 **Senior Notes Indenture Trustee Fees.** The Senior Notes Indenture Fees shall be paid within ten (10) Business Days after the Effective Date to the Senior Notes Indenture Trustee as part of the distribution to holders of Senior Notes Claims; provided, however, that the Senior Notes Indenture Trustee shall, on or prior to the Effective Date, provide to the Reorganized Debtors and the Lender Steering Committee (both of which preserve their right to dispute the payment of any portion of the invoiced fees and expenses if such fees and expenses are deemed to be unreasonable) fee statements (including reasonable documentation) with respect thereto, which may be reviewed by the Reorganized Debtors and the Lender Steering Committee for a period of up to ten (10) Business Days before payment is made. For the avoidance of doubt, any portion of the Senior Notes Indenture Trustee Fees not paid as part of the distribution to the Senior Notes Claims within ten (10) Business Days after the Effective Date may be satisfied pursuant to the Senior Notes Indenture Charging Lien.

2.6 **US Term Lender Group Fees**. The US Term Lender Group Fees shall be paid within ten (10) Business Days after the Effective Date to the relevant professional of the US Term Lender Group as part of the distribution to holders of Secured Revolver/Term Lender Claims; provided, however, the US Term Lender Group shall, on or prior to the Effective Date, provide to the Lender Steering Committee (which preserves its right to dispute the payment of any portion of the invoiced fees and expenses if such fees and expenses are deemed to be unreasonable) fee statements (including reasonable documentation) with respect thereto, which may be reviewed by the Lender Steering Committee for a period of up to ten (10) Business Days before payment is made.

## ARTICLE III

## SETTLEMENTS

3.1 **Producers' Settlement**. The Producers' Settlement among the Debtors, the Prepetition Administrative Agent, the Lender Steering Committee, the Producers' Committee and the Producer Plaintiffs provides for the following payments under the Plan and the resolution of certain ongoing litigation as described below:

(a) Payment to Producer Representative. On the Effective Date, Cash in the total amount of $172.5 million shall be distributed to the Producer Representative who shall be responsible for making distributions to Producers in accordance with the Plan, including this Section 3.1. Notwithstanding anything to the contrary in this Plan or elsewhere, the Producers shall not be entitled to any further payment from the Debtors, the Prepetition Administrative Agent or the Prepetition Lenders on account of their Claims other than the distributions payable to the holders of Unsecured First Purchaser Producer Claims as holders of General Unsecured Claims.

(b)     First Purchaser Producer Twenty-Day Claims. On the Effective Date, the Producer Representative shall make distributions to holders of Allowed First Purchaser Producer Twenty-Day Claims in accordance with Section 2.1 hereof. Each holder of a First Purchaser Producer Twenty-Day Claim shall be deemed, as of the Effective Date, to have an Allowed First Purchaser Producer Twenty-Day Claim equal to the amount listed on Schedule 1 hereto plus any additional amount, if any, agreed to in writing by the Producers' Committee or the Producers' Representative or Allowed by Final Order. Pursuant to the September 15 Order, only holders of First Purchaser Producer Twenty-Day Claims which timely filed objections to the Notice may seek allowance of its Claim in an amount different than listed on Schedule 1 which disputes shall be resolved pursuant to the September 15 Order by the Producer Representative in accordance with Section 8.3 hereof. Notwithstanding anything to the contrary in this Plan or elsewhere, the sum of (i) the payments for 100% of the aggregate amount of the First Purchaser Producer Twenty-Day Claims against Debtors other than Eaglwing set forth on Schedule 1 hereof entitled "First Purchaser Producer Twenty-Day Claims (Listed by Debtor)" plus (ii) the payments for 65% of the aggregate amount of the First Purchaser Producer Twenty-Day Claims against Eaglwing set forth on the Fourth Amended Schedules shall not exceed $125.5 million.

(c)     Secured First Purchaser Producer Claims. As soon as practicable after the Effective Date, the Producer Representative shall pay each holder of an Allowed Secured First Purchaser Producer Claim its Pro Rata Share of Cash in an amount equal to $47 million less the sum of (i) the aggregate amount of Cash paid or to be paid in respect of Allowed First Purchaser Producer Twenty-Day Claims against Eaglwing in excess of 65% of the aggregate amount of the First Purchaser Producer Twenty-Day Claims against Eaglwing on Schedule 1 hereof entitled "First Purchaser Producer Twenty-Day Claims (Listed by Debtor)" until the Allowed First Purchaser Producer Twenty-Day Claims against Eaglwing are paid in full, (ii) the amount of Cash paid or to be paid pursuant to Section 3.1(d) below, (iii) the fees and expenses incurred by the Producer Representative and its professionals paid or to be paid and (iv) the amount of Cash, if any, paid or to be paid to the holders of Allowed First Purchaser Twenty-Day Claims in excess of $125.5 million, exclusive of Cash distributed pursuant to this Section 3.1(c)(i). No portion of any Secured First Purchaser Producer Claim shall be an Unsecured Claim against the Debtors for any purpose under this Plan. No portion of any unpaid Secured First Purchaser Producer Claim is released, compromised, or discharged under this Plan solely for the purposes of any Downstream Claims against Downstream Purchasers, which Downstream Claims Producers shall be free to assert in courts of competent jurisdiction.

(d)     Reimbursement of Professional Fees. Subject to allowance by the Producers' Committee or by the Producer Representative, as soon as practicable after the Effective Date, the Producer Representative shall reimburse the Producers named as plaintiffs in the Producer State-Specific Adversary Proceedings for the Active States in Cash for payment of reasonable fees and out-of-pocket costs incurred in connection with the Producer State-Specific Adversary Proceedings for the Active States. In addition, the Producer Representative shall pay any professional fees and expenses of the Producers' Committee to the extent that the fees and expenses exceed the cap amount contained in Section 1.126 of the Plan. For the avoidance of doubt, all amounts payable pursuant to this Section 3.1(d) shall be payable solely from the $172.5 million distributed to the Producer Representative pursuant to Section 3.1(a) hereof.

(e)     Producer Deficiency Claims.  No portion of any Secured First Purchaser Producer Claim shall be an Unsecured Claim for any purpose under this Plan.  Each Unsecured First Purchaser Producer Claim shall vote as a General Unsecured Claim under this Plan and shall be treated for all purposes as the holder of a General Unsecured Claim under this Plan.

(f)     Producer State-Specific Adversary Proceedings.  The Debtors, the Prepetition Administrative Agent, the Lender Steering Committee, the Producers' Committee and the Producer Plaintiffs have agreed to take, and in some cases have already taken, the following actions with respect to the Producer State-Specific Adversary Proceedings:

(i)     Third Circuit Appeals.  The Debtors, the Prepetition Administrative Agent and the Producer Plaintiffs jointly submitted a request on September 16, 2009 to the Third Circuit Court of Appeals to adjourn the oral argument on the Third Circuit Appeals to a date after the anticipated Effective Date, which request was granted on September 17, 2009.  To the extent the Third Circuit Appeals are not remanded pursuant to Section 3.1(f)(iii) hereof, the Debtors, the Prepetition Administrative Agent and the Producer Plaintiffs shall, no later than the Effective Date, withdraw with prejudice the Third Circuit Appeals, against, but only against, the Debtors, the Prepetition Administrative Agent and the Prepetition Lenders.

(ii)     Bankruptcy Court Proceedings.  On the Effective Date, to the extent that the Third Circuit Appeals are not remanded to the Bankruptcy Court pursuant to Section 3.1(f)(iii) hereof, the Producer Plaintiffs shall withdraw with prejudice the Producer State-Specific Adversary Proceedings with respect to the Debtors, the Prepetition Administrative Agent and the Prepetition Lenders.  With the exception of (i) any Bankruptcy Court proceedings with respect to the Bankruptcy Court decision on global legal objections to Twenty-Day Claims argued on September 9, 2009 and (ii) any Bankruptcy Court proceedings with respect to Other Twenty-Day Claims, all Producer-related litigation commenced in the Bankruptcy Court or to which the Debtors or the Prepetition Administrative Agent is a party shall be abated as to all parties until November 11, 2009.  Any applicable Producer Plaintiff shall dismiss the Debtors and the Prepetition Administrative Agent from all such proceedings with prejudice on the Effective Date upon the payment by the Debtors to the Producer Representative described in Section 3.1(a) hereof.

(iii)     Producer Decisions.  If the Plan is confirmed and the Producer Plaintiffs submit an application to the Third Circuit Court of Appeals requesting that it remand to the Bankruptcy Court and an application to the Bankruptcy Court requesting that the Bankruptcy Court vacate the Producer Decisions, then neither the Debtors nor the Prepetition Administrative Agent shall oppose any such applications.

(g)     Twenty-Day Claims.  The Debtors, the Prepetition Administrative Agent, the Lender Steering Committee, the Producers' Committee and the Producer Plaintiffs have agreed as follows with respect to the Twenty-Day Claims:

(i)     Global Legal Objections. The Producers' Settlement resolves the global legal objections with respect to the First Purchaser Producer Twenty-Day Claims. The Producers' Settlement shall have no effect on any legal objections with respect to Other Twenty-Day Claims.

(ii)     Factual-Based Objections. The Debtors, the Prepetition Administrative Agent and the Lender Steering Committee, as applicable, shall (A) abate their fact-based objections to First Purchaser Producer Twenty-Day Claims until November 11, 2009 and (B) withdraw with prejudice any fact-based objections to the First Purchaser Producer Twenty-Day Claims on the Effective Date. After the Effective Date, the Producer Representative shall be permitted to pursue the disputes against any First Purchaser Producer regarding certain Twenty-Day Claims that were set forth in the Notice in accordance with the Producer claims resolution process described in Section 8.3 hereof; provided, however that the expenses incurred by the Producer Representative in connection with pursuing such disputes shall be paid out of the $47 million referred to in Section 3.1(c) of the Plan. The Producers' Settlement shall have no effect on the ability of the Debtors, the Prepetition Administrative Agent and the Prepetition Lenders to pursue any and all fact-based objections with respect to the Other Twenty-Day Claims.

(h)     Payments by Operators. Operators receiving payments under the Plan shall be responsible for disbursing payment to Owners entitled to payment thereto, if any. The Debtors shall provide data in their possession related to certain Owners to the Producer Representative, on which the Operators can rely in making distributions pursuant to the Plan.

(i)     No Impact on Litigation Trust. Notwithstanding anything in this Section 3.1 or the Plan to the contrary, and without the express written consent of the Litigation Trust Board, no Entity or Creditor (including but not limited to the Prepetition Administrative Agent, the Postpetition Administrative Agent, the Producer Representative, the holder of a Secured Lender Claim, any Operator, or any Owner), shall be permitted to assert, bring, institute, commence, or participate in any Claim or Causes of Action that will be transferred to the Litigation Trust pursuant to the Plan.

3.2     **Other Twenty-Day Claims Settlement**. The holders of the Other Twenty-Day Claims are not party to the Producers' Settlement. The Debtors shall seek agreement of certain holders of Claims and Administrative Expense Claims to the Other Twenty-Day Claims Settlement as provided below:

(a)     Settling Parties. Each holder of an Other Twenty-Day Claim that elects to participate in the Other Twenty-Day Claims Settlement shall be deemed to have an Allowed Claim equal to 66% of the aggregate amount of such holder's Other Twenty-Day Claims as scheduled on the Fourth Amended Schedules and shall receive on account of its Claims against the Debtors and their estates, Cash on the Effective Date equal to 66% of the aggregate amount of such holder's Other Twenty-Day Claims set forth on the Fourth Amended Schedules and the Debtors and the Administrative Agent shall not pursue any objections to the Other Twenty-Day Claims of such Settling Party.

(b)     Non-Settling Parties. On the Effective Date, the Debtors shall reserve in Cash an amount equal to the amount of the Other Twenty-Day Claims of each Non-Settling Party (at that date) set forth on the Fourth Amended Schedules (or such lesser amount as shall be approved by the Bankruptcy Court) and hold such reserve until the status of such Claim has been Allowed by agreement of the Prepetition Administrative Agent and the holder of such Other Twenty-Day Claim or Final Order. Each of the Debtors (solely prior to the Effective Date) and the Prepetition Administrative Agent and the Creditors' Committee (solely prior to the Effective Date and solely as to Avoidance Actions) shall be free to pursue any objections, including both fact-based objections and global legal objections, with respect to such Other Twenty-Day Claims of Non-Settling Parties.

(c)     Election Notices. Each holder of an Other Twenty-Day Claim shall receive an Election Notice concurrently with the Debtors' solicitation of votes to accept the Plan. The Election Notice shall contain information regarding the terms of the Other Twenty-Day Claims Settlement, including the deadline for returning such notice. **In order to elect not to accept the Other Twenty-Day Claims Settlement, a holder must complete its election notice and return it to the balloting agent by the specified deadline. If an election notice is not received by the balloting agent by the voting deadline, or is not correctly completed, such holder shall be deemed to have elected to accept the Other Twenty-Day Claims Settlement, to have agreed to receive treatment for such Claim that is different from that set forth in Section 503(b)(9) of the Bankruptcy Code and shall be bound by the terms of such settlement, including those set forth above.**

(d)     Release of Litigation. In addition to the provisions of Section 20.11 of this Plan, upon the Effective Date, each Creditor that elects to participate in the Other Twenty-Day Claims Settlement forever discharges the Debtors, the Prepetition Lenders (excluding Goldman Sachs & Co., J. Aron & Company and their respective affiliates), and the Prepetition Administrative Agent, jointly and as to each of them, from and against any and all liability that they now have, had, or may have arising out of or relating to such Creditor's Other Twenty-Day Claim. The Creditor agrees to withdraw any motions, objections, or other pleadings regarding such Other Twenty-Day Claim from the Bankruptcy Court's consideration. The Creditor also agrees not to aid, assist, support, or otherwise participate with any other party in prosecuting Other Twenty-Day Claims against the Debtors, the Reorganized Debtors, Prepetition Administrative Agent and/or the Prepetition Lenders (excluding Goldman Sachs & Co., J. Aron & Company and their respective affiliates) or to take any positions contrary to the Debtors, the Reorganized Debtors, Prepetition Administrative Agent and/or Prepetition Lenders (excluding Goldman Sachs & Co., J. Aron & Company and their respective affiliates). This release of Other Twenty-Day Claims is specifically intended to include and does include Other Twenty-Day Claims that the Creditor might not now know or expect to exist in their favor at the Effective Date, even if knowledge of such claims might have otherwise materially affected the granting of this release. The Creditor understands and agrees that this release of Other Twenty-Day Claims shall be treated as a full and complete defense to, and will forever be a complete bar to the commencement or prosecution of, any and all Claims released herein. The Creditor intends that this release of Other Twenty-Day Claims and the release contained in Section 20.11 hereof be complete and not subject to a claim of mistake of fact and that such release and delivery according to the terms of the Other Twenty-Day Claims Settlement present a **FULL AND COMPLETE SETTLEMENT** of the Claims released herein. Regardless of the adequacy or

inadequacy of the consideration paid, the release included herein and in Section 20.11 hereof is intended to settle or avoid litigation and/or settle the claims released herein, and to be final and complete.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims (other than Administrative Expense Claims, Postpetition Financing Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims) and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|-------|--------|-------------|------------|------------------|
| Class 1 | SemCrude, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Chemical Petroleum Exchange, Incorporated | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Eaglwing, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Grayson Pipeline, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 5 | Greyhawk Gas Storage Company, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 6 | K.C. Asphalt L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 7 | SemCanada II, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 8 | SemCanada L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 9 | SemCrude Pipeline, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 10 | SemFuel Transport LLC | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 11 | SemFuel, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 12 | SemGas Gathering LLC | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 13 | SemGas Storage, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 14 | SemGas, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 15 | SemGroup Asia, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 16 | SemGroup Finance Corp. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 17 | SemGroup, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 18 | SemKan, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 19 | SemManagement, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 20 | SemMaterials Vietnam, | Priority Non-Tax Claims | Unimpaired | No (deemed to |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|-------|--------|-------------|------------|------------------|
| | L.L.C. | | | accept) |
| Class 21 | SemMaterials, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 22 | SemOperating G.P., L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 23 | SemStream, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 24 | SemTrucking, L.P. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 25 | Steuben Development Company, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 26 | SemCap, L.L.C. | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 27 | SemCrude, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 28 | Chemical Petroleum Exchange, Incorporated | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 29 | Eaglwing, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 30 | Grayson Pipeline, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 31 | Greyhawk Gas Storage Company, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 32 | K.C. Asphalt L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 33 | SemCanada II, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 34 | SemCanada L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 35 | SemCrude Pipeline, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 36 | SemFuel Transport LLC | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 37 | SemFuel, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 38 | SemGas Gathering LLC | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 39 | SemGas Storage, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 40 | SemGas, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 41 | SemGroup Asia, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 42 | SemGroup Finance Corp. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 43 | SemGroup, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 44 | SemKan, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 45 | SemManagement, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 46 | SemMaterials Vietnam, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 47 | SemMaterials, L.P. | Secured Tax Claims | Unimpaired | No (deemed to |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| | | | | accept) |
| Class 48 | SemOperating G.P., L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 49 | SemStream, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 50 | SemTrucking, L.P. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 51 | Steuben Development Company, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 52 | SemCap, L.L.C. | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 53 | Eaglwing, L.P. | Secured First Purchaser Producer Claims | Impaired | Yes |
| Class 54 | SemCrude, L.P. | Secured First Purchaser Producer Claims | Impaired | Yes |
| Class 55 | SemGas, L.P. | Secured First Purchaser Producer Claims | Impaired | Yes |
| Class 56 | | *INTENTIONALLY OMITTED* | | |
| Class 57 | | *INTENTIONALLY OMITTED* | | |
| Class 58 | | *INTENTIONALLY OMITTED* | | |
| Class 59 | | *INTENTIONALLY OMITTED* | | |
| Class 60 | | *INTENTIONALLY OMITTED* | | |
| Class 61 | | *INTENTIONALLY OMITTED* | | |
| Class 62 | | *INTENTIONALLY OMITTED* | | |
| Class 63 | | *INTENTIONALLY OMITTED* | | |
| Class 64 | | *INTENTIONALLY OMITTED* | | |
| Class 65 | | *INTENTIONALLY OMITTED* | | |
| Class 66 | | *INTENTIONALLY OMITTED* | | |
| Class 67 | | *INTENTIONALLY OMITTED* | | |
| Class 68 | | *INTENTIONALLY OMITTED* | | |
| Class 69 | | *INTENTIONALLY OMITTED* | | |
| Class 70 | SemCrude, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 71 | Chemical Petroleum Exchange, Incorporated | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 72 | Eaglwing, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 73 | Grayson Pipeline, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 74 | Greyhawk Gas Storage Company, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 75 | K.C. Asphalt L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 76 | SemCanada II, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 77 | SemCanada L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 78 | SemCrude Pipeline, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 79 | SemFuel Transport LLC | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 80 | SemFuel, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| Class 81 | SemGas Gathering LLC | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 82 | SemGas Storage, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 83 | SemGas, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 84 | SemGroup Asia, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 85 | SemGroup Finance Corp. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 86 | SemGroup, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 87 | SemKan, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 88 | SemManagement, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 89 | SemMaterials Vietnam, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 90 | SemMaterials, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 91 | SemOperating G.P., L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 92 | SemStream, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 93 | SemTrucking, L.P. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 94 | Steuben Development Company, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 95 | SemCap, L.L.C. | Secured Working Capital Lender Claims | Impaired | Yes |
| Class 96 | SemCrude, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 97 | Chemical Petroleum Exchange, Incorporated | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 98 | Eaglwing, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 99 | Grayson Pipeline, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 100 | Greyhawk Gas Storage Company, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 101 | K.C. Asphalt L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 102 | SemCanada II, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 103 | SemCanada L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 104 | SemCrude Pipeline, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 105 | SemFuel Transport LLC | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 106 | SemFuel, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 107 | SemGas Gathering LLC | Secured Revolver/Term Lender Claims | Impaired | Yes |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| Class 108 | SemGas Storage, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 109 | SemGas, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 110 | SemGroup Asia, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 111 | SemGroup Finance Corp. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 112 | SemGroup, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 113 | SemKan, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 114 | SemManagement, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 115 | SemMaterials Vietnam, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 116 | SemMaterials, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 117 | SemOperating G.P., L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 118 | SemStream, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 119 | SemTrucking, L.P. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 120 | Steuben Development Company, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 121 | SemCap, L.L.C. | Secured Revolver/Term Lender Claims | Impaired | Yes |
| Class 122 | SemCrude Pipeline, L.L.C. | White Cliffs Credit Agreement Claim | Impaired | Yes |
| Class 123 | SemCrude, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 124 | Chemical Petroleum Exchange, Incorporated | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 125 | Eaglwing, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 126 | Grayson Pipeline, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 127 | Greyhawk Gas Storage Company, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 128 | K.C. Asphalt L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 129 | SemCanada II, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 130 | SemCanada L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 131 | SemCrude Pipeline, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 132 | SemFuel Transport LLC | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 133 | SemFuel, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 134 | SemGas Gathering LLC | Other Secured Claims | Unimpaired | No (deemed to accept) |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| Class 135 | SemGas Storage, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 136 | SemGas, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 137 | SemGroup Asia, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 138 | SemGroup Finance Corp. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 139 | SemGroup, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 140 | SemKan, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 141 | SemManagement, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 142 | SemMaterials Vietnam, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 143 | SemMaterials, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 144 | SemOperating G.P., L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 145 | SemStream, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 146 | SemTrucking, L.P. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 147 | Steuben Development Company, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 148 | SemCap, L.L.C. | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 149 | SemCrude, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 150 | Chemical Petroleum Exchange, Incorporated | Senior Notes Claims | Impaired | Yes |
| Class 151 | Eaglwing, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 152 | Grayson Pipeline, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 153 | Greyhawk Gas Storage Company, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 154 | K.C. Asphalt L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 155 | SemCanada II, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 156 | SemCanada L.P. | Senior Notes Claims | Impaired | Yes |
| Class 157 | SemCrude Pipeline, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 158 | SemFuel Transport LLC | Senior Notes Claims | Impaired | Yes |
| Class 159 | SemFuel, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 160 | SemGas Gathering LLC | Senior Notes Claims | Impaired | Yes |
| Class 161 | SemGas Storage, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 162 | SemGas, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 163 | SemGroup Asia, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 164 | SemGroup Finance Corp. | Senior Notes Claims | Impaired | Yes |
| Class 165 | SemGroup, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 166 | SemKan, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 167 | SemManagement, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 168 | SemMaterials Vietnam, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 169 | SemMaterials, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 170 | SemOperating G.P., L.L.C. | Senior Notes Claims | Impaired | Yes |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|-------|--------|-------------|------------|------------------|
| Class 171 | SemStream, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 172 | SemTrucking, L.P. | Senior Notes Claims | Impaired | Yes |
| Class 173 | Steuben Development Company, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 174 | SemCap, L.L.C. | Senior Notes Claims | Impaired | Yes |
| Class 175 | SemCrude, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 176 | Chemical Petroleum Exchange, Incorporated | Lender Deficiency Claims | Impaired | Yes |
| Class 177 | Eaglwing, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 178 | Grayson Pipeline, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 179 | Greyhawk Gas Storage Company, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 180 | K.C. Asphalt L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 181 | SemCanada II, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 182 | SemCanada L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 183 | SemCrude Pipeline, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 184 | SemFuel Transport LLC | Lender Deficiency Claims | Impaired | Yes |
| Class 185 | SemFuel, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 186 | SemGas Gathering LLC | Lender Deficiency Claims | Impaired | Yes |
| Class 187 | SemGas Storage, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 188 | SemGas, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 189 | SemGroup Asia, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 190 | SemGroup Finance Corp. | Lender Deficiency Claims | Impaired | Yes |
| Class 191 | SemGroup, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 192 | SemKan, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 193 | SemManagement, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 194 | SemMaterials Vietnam, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 195 | SemMaterials, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 196 | SemOperating G.P., L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 197 | SemStream, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 198 | SemTrucking, L.P. | Lender Deficiency Claims | Impaired | Yes |
| Class 199 | Steuben Development Company, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 200 | SemCap, L.L.C. | Lender Deficiency Claims | Impaired | Yes |
| Class 201 | SemCrude, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 202 | Chemical Petroleum Exchange, Incorporated | General Unsecured Claims | Impaired | Yes |
| Class 203 | Eaglwing, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 204 | Grayson Pipeline, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 205 | Greyhawk Gas Storage Company, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 206 | K.C. Asphalt L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 207 | SemCanada II, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 208 | SemCanada L.P. | General Unsecured Claims | Impaired | Yes |
| Class 209 | SemCrude Pipeline, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 210 | SemFuel Transport LLC | General Unsecured Claims | Impaired | Yes |
| Class 211 | SemFuel, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 212 | SemGas Gathering LLC | General Unsecured Claims | Impaired | Yes |
| Class 213 | SemGas Storage, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 214 | SemGas, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 215 | SemGroup Asia, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 216 | SemGroup Finance Corp. | General Unsecured Claims | Impaired | Yes |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| Class 217 | SemGroup, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 218 | SemKan, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 219 | SemManagement, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 220 | SemMaterials Vietnam, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 221 | SemMaterials, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 222 | SemOperating G.P., L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 223 | SemStream, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 224 | SemTrucking, L.P. | General Unsecured Claims | Impaired | Yes |
| Class 225 | Steuben Development Company, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 226 | SemCap, L.L.C. | General Unsecured Claims | Impaired | Yes |
| Class 227 | SemCrude, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 228 | Chemical Petroleum Exchange, Incorporated | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 229 | Eaglwing, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 230 | Grayson Pipeline, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 231 | Greyhawk Gas Storage Company, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 232 | K.C. Asphalt L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 233 | SemCanada II, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 234 | SemCanada L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 235 | SemCrude Pipeline, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 236 | SemFuel Transport LLC | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 237 | SemFuel, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 238 | SemGas Gathering LLC | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 239 | SemGas Storage, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 240 | SemGas, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 241 | SemGroup Asia, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 242 | SemGroup Finance Corp. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 243 | SemGroup, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 244 | SemKan, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 245 | SemManagement, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 246 | SemMaterials Vietnam, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 247 | SemMaterials, L.P. | Intercompany Claims | Impaired | No (deemed to |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|-------|--------|-------------|------------|------------------|
| | | | | accept) |
| Class 248 | SemOperating G.P., L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 249 | SemStream, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 250 | SemTrucking, L.P. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 251 | Steuben Development Company, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 252 | SemCap, L.L.C. | Intercompany Claims | Impaired | No (deemed to accept) |
| Class 253 | SemCrude, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 254 | Chemical Petroleum Exchange, Incorporated | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 255 | Eaglwing, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 256 | Grayson Pipeline, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 257 | Greyhawk Gas Storage Company, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 258 | K.C. Asphalt L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 259 | SemCanada II, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 260 | SemCanada L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 261 | SemCrude Pipeline, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 262 | SemFuel Transport LLC | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 263 | SemFuel, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 264 | SemGas Gathering LLC | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 265 | SemGas Storage, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 266 | SemGas, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 267 | SemGroup Asia, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 268 | SemGroup Finance Corp. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 269 | SemGroup, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 270 | SemKan, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 271 | SemManagement, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 272 | SemMaterials Vietnam, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 273 | SemMaterials, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 274 | SemOperating G.P., L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to |

| Class | Debtor | Designation | Impairment | Entitled to Vote |
|---|---|---|---|---|
| | | | | accept) |
| Class 275 | SemStream, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 276 | SemTrucking, L.P. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 277 | Steuben Development Company, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 278 | SemCap, L.L.C. | Intercompany Equity Interests | Unimpaired | No (deemed to accept) |
| Class 279 | SemGroup, L.P. | SemGroup Equity Interests | Impaired | No (deemed to reject) |

# ARTICLE V

# TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1 **Classes 1 through 26 – Priority Non-Tax Claims**

(a) Impairment and Voting. Classes 1 through 26 are unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) Distributions. Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors, each holder of an Allowed Priority Non-Tax Claim shall receive, on account of their Claims against the Debtors and their estates, Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

5.2 **Classes 27 through 52 – Secured Tax Claims**

(a) Impairment and Voting. Classes 27 through 52 are unimpaired by the Plan. Each holder of an Allowed Secured Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) Distributions. Except to the extent that a holder of an Allowed Secured Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an of an Allowed Secured Tax Claim shall receive, at the sole option of the Reorganized Debtors, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Allowed Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at a fixed annual rate equal to 5%, over a period ending not later than five (5) years after the Petition Date, or upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

### 5.3 Classes 53 through 55 – Secured First Purchaser Producer Claims

(a) Impairment and Voting. Classes 53 through 55 are impaired by the Plan. Each holder of a Secured First Purchaser Producer Claim is entitled to vote to accept or reject the Plan.

(b) Distributions. On the Effective Date, or as soon thereafter as is practicable, each holder of an Allowed Secured First Purchaser Producer Claim shall receive, on account of their Claims against the Debtors and their estates, its Pro Rata Share of Cash in accordance with Section 3.1(c) of the Plan.

### 5.4 Classes 70 through 95 – Secured Working Capital Lender Claims

(a) Impairment and Voting. Classes 70 through 95 are impaired by the Plan. Each holder of a Secured Working Capital Lender Claim is entitled to vote to accept or reject the Plan. The vote by each holder of a Secured Working Capital Lender Claim in favor of or against the Plan is deemed to be a vote in favor of or against the Canadian Plans, respectively.

(b) Distributions. The Secured Working Capital Lender Claims are hereby Allowed Claims, not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever. On the Effective Date, or as soon thereafter as is practicable, each holder of an Allowed Secured Working Capital Lender Claim shall receive, on account of their Claims against the Debtors and their estates, its Pro Rata Share of (x) (i) the Working Capital Lender Effective Date Cash, (ii) $174 million in principal amount of the Second Lien Term Loan Interests, and (iii) 23,306,753 shares of the New Common Stock (subject to dilution of ownership percentage from the Warrants and the Management Stock), which distribution of New Common Stock is inclusive of the New Common Stock that holders of Allowed Intercompany Claims are deemed to be entitled to but is being redistributed to holders of Allowed Secured Working Capital Lender Claims pursuant to Section 5.11 of the Plan; and (y) subsequent distributions in accordance with Section 13.1 of this Plan to the extent, if any, the Reorganized Debtors (or the Prepetition Administrative Agent, in the case of certain Canadian Distributions) receive, after the Effective Date, (i) a Canadian Distribution (other than an Auriga Revolver/Term Lender Distribution), (ii) net Cash proceeds from the realization of receivables or inventory of SemFuel, L.P. or SemMaterials, L.P. (other than net Cash proceeds referred to in Section 5.5(b)(y) of this Plan), (iii) Cash distributions from SemGroup Holdings, L.P., or net Cash proceeds from the sale of Equity Interests in SemGroup Holdings, L.P. (to the extent allocable to the Working Capital Obligations (as defined in the Prepetition Credit Agreement)), (iv) any Cash proceeds of Undisputed Production Receivables, (v) the Litigation Trust Funds, or (vi) any Cash released from reserves for Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Priority Non-Tax Claims, or Priority Tax Claims.

### 5.5 Classes 96 through 121 – Secured Revolver/Term Lender Claims

(a) Impairment and Voting. Classes 96 through 121 are impaired by the Plan. Each holder of a Secured Revolver/Term Lender Claim is entitled to vote to accept or reject the Plan. The vote by each holder of a Secured Revolver/Term Lender Claim in favor of or against the Plan is deemed to be a vote in favor of or against the Canadian Plans, respectively.