IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :    Chapter 11 Case
                                                             :    No. 08-11525 (BLS)
SEMCRUDE, L.P., et al.,                                      :    Jointly Administered
                                                             :
                Debtors                                    :
------------------------------------------------------------ x
BETTINA WHYTE, LITIGATION TRUSTEE,                           :
on behalf of the Litigation Trust,                           :
                                                             :
                Plaintiff,                                 :
                                                             :
v.                                                           :    Adversary No. 09-50189 (BLS)
                                                             :
Thomas L. Kivisto, Gregory C. Wallace,                       :
Westback Purchasing Co., LLC, Brent Cooper,                  :
Kevin L. Foxx, and Alex G. Stallings,                        :
                                                             :
                Defendants.                                :
------------------------------------------------------------ x

**JOINT MOTION OF BETTINA WHYTE AS TRUSTEE FOR THE SEMGROUP
LITIGATION TRUST, AND THOMAS L. KIVISTO, GREGORY C. WALLACE,
BRENT COOPER, KEVIN L. FOXX, AND ALEX G. STALLINGS FOR
ORDER <u>APPROVING SETTLEMENT</u>**

        Bettina Whyte (the "<u>Trustee</u>") as Trustee for the SemGroup Litigation Trust (the "<u>Litigation Trust</u>"), by and through her undersigned counsel, and Thomas L. Kivisto ("<u>Kivisto</u>"), Gregory C. Wallace ("<u>Wallace</u>"), Brent Cooper ("<u>Cooper</u>"), Kevin L. Foxx ("<u>Foxx</u>"), and Alex G. Stallings ("<u>Stallings</u>" and collectively with Kivisto, Wallace, Cooper and Foxx, the "<u>Settling Defendants</u>"), by and through their undersigned counsel, hereby respectfully submit this motion (the "<u>Motion</u>"), pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for approval of the settlement (the "<u>Settlement</u>") between the Trustee and

the Settling Defendants, on the terms and subject to the conditions set forth in the Settlement Agreement (the "Settlement Agreement"), substantially in the form attached hereto as Exhibit A. In further support hereof, the Trustee and the Settling Defendants (collectively "Movants") respectfully represent as follows:

## I.    BACKGROUND

1. On July 22, 2008, SemGroup, L.P. ("SemGroup") and certain of its subsidiaries and affiliates (collectively the "Debtors") filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), styled *In re SemCrude, L.P., et al.*, No. 08-11525 (the "Bankruptcy Action").

2. On February 18, 2009, the Official Committee of Unsecured Creditors, for and on behalf of the Debtors' Bankruptcy Estates, filed an adversary proceeding in the Bankruptcy Action against Kivisto and Wallace, as well as Westback Purchasing Company, LLC, and VAP-IV, LLC, styled *Official Committee of Unsecured Creditors of SemCrude, L.P., for and on behalf of the Debtors' Bankruptcy Estates v. Thomas L. Kivisto, et al.*, Adversary No. 09-50189 (the "Adversary Case").  Amended complaints were filed on March 16, 2009, June 8, 2009, and October 10, 2009, which, among other things, added Cooper, Foxx, and Stallings as defendants.

3. On October 28, 2009, the Bankruptcy Court entered an Order confirming the Fourth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan").  The Plan provided for the establishment of the Litigation Trust, and provided that, on the effective date of the Plan, "the Debtors or the Reorganized Debtors shall transfer to the Litigation Trust all of their right, title, and interest in the Litigation Trust Assets, including any Litigation Trust Claims being prosecuted by the Creditors' Committee prior to the Effective Date."

4. The Plan further provided that "without the express written consent of the Litigation Trust Board, no Entity or Creditor (including but not limited to the Prepetition Administrative Agent [and] the Postpetition Administrative Agent . . .), shall be permitted to assert, bring, institute, commence, or participate in any Claim or Causes of Action that will be transferred to the Litigation Trust pursuant to the Plan."

5. On November 2, 2009, defendants named in the Third Amended Complaint moved to dismiss all claims brought therein, the Litigation Trust has opposed those motions, and the motions remain pending.

6. On November 5, 2009, the Bankruptcy Court entered an order approving the appointment of Bettina Whyte as Trustee of the Litigation Trust.

7. On November 30, 2009, the Plan became effective. In addition, the SemGroup Litigation Trust Agreement establishing the Litigation Trust, executed between the Debtors, Reorganized Debtors (as defined in the Plan), Trustee, and Creditors' Committee (the "Litigation Trust Agreement"), became effective on November 30, 2009.

8. The Contributing Lenders (as defined in the Plan) who voted to approve the Plan, as well as certain lenders who voted against the Plan, namely Fortis Capital Corporation, Fortis Bank SA/NV, and Bank of Oklahoma, N.A., irrevocably transferred, assigned and delivered to the Litigation Trust all of their rights, title and interests in and to the Contributing Lenders' Claims (as defined in the Plan), including all claims against the Settling Defendants.

9. On December 16, 2009, the Bankruptcy Court entered an order approving the substitution of the Litigation Trust for the Creditors Committee as plaintiff in the Adversary Case.

10. On March 29-30, 2010, the Trustee and the Settling Defendants, (the "Parties") engaged in a two-day mediation before the Honorable Nicholas Politan, and conducted vigorous arms-length negotiations through the mediator following the in-person mediation.

11. On June 11, 2010, the parties reached agreement on the key terms of a settlement, which were then set forth in more detail in the Settlement Agreement attached as Exhibit A hereto.

12. Defendant Westback is not a party to the Settlement Agreement, and approval of this Motion will not terminate the pending litigation against Westback.

## II.     JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## III.    SUMMARY OF UNDERLYING CONTROVERSY

14. The Court is intimately familiar with the underlying controversy through the allegations in the Third Amended Complaint, the motions to dismiss that were briefed and argued before the Court, and other proceedings had and filings made during the course of the SemGroup bankruptcy proceedings.  In short, the Trust alleges that the Settling Defendants visited significant harm upon the Debtors through several means, including speculative derivatives trading and an alleged arrangement through which Kivisto caused SemGroup to give his personal trading company the equivalent of an interest-free, unsecured loan of several hundred million dollars.  Based on these allegations and others, the Trust has brought claims for fraudulent transfer, breach of fiduciary duty, breach of contract, and unjust enrichment.  The Settling Defendants deny all of these allegations and liability for any of these claims.

### III. DESCRIPTION OF COMPROMISE AND SETTLEMENT

15. In an effort to avoid the costs and time associated with expensive, burdensome, and protracted litigation regarding the claims raised in the Adversary Case, the Parties engaged in extensive, arm's-length and good faith negotiations and ultimately reached a Settlement, which is memorialized in the Settlement Agreement. As described in the Settlement Agreement, the Settlement is subject to the approval by this Court.

16. The Settlement Agreement resolves fully and finally any potential or actual claims or disputes that the Litigation Trust may have or had against the Settling Defendants, without any admission of wrongdoing or liability by any Party.

17. The principal terms of the Settlement – which are set forth in the Settlement Agreement attached hereto as Exhibit A – are as follows:[1]

    (a) This Settlement pertains to the Adversary Case, as well as the July 14, 2010, adversary proceeding the Trustee filed in this Court against Foxx styled *Bettina M. Whyte, as the Litigation Trustee for the SemGroup Litigation Trust v. Kevin Foxx*, Adversary No. 10-51558 (the "Settled Lawsuits").

    (b) Within 10 days after the Settlement Effective Date, the Settling Defendants will cause to be paid to the Litigation Trust a settlement payment in the total amount of $30 million (the "Settlement Payment"). In addition, prior to final execution of the Settlement Agreement, each Settling Defendant will provide Trustee with a statement of his net worth.

    (c) Each Settling Defendant agrees to cooperate with the Litigation Trust in the investigation and litigation of other cases that the Litigation Trust has brought or may bring in the future, by providing truthful information and documents, and participating in interviews, as requested by the Litigation Trust.

---

[1] This overview is qualified in its entirety by reference to the provisions of the Settlement Agreement. In the event of any inconsistency between the terms of this overview and the terms of the Settlement Agreement, the Settlement Agreement shall govern in all respects. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

(d)     The parties are granting mutual releases as set forth in detail in the Settlement Agreement.

(e)     The Settlement is also intended to discharge the Released Parties from all liability to any other person for contribution or indemnity (or any other claim where the injury to such other person is such other person's liability to the Litigation Trust) that relates to, or is in any way based upon or arises from or is in any way connected with any Released Claim, as defined above (the "Contribution Bar").

(f)     The execution of the Settlement Agreement requires that this Court lift the automatic stay (to the extent applicable) and authorize the use of proceeds from the Settling Defendants' D&O Policies (defined below) for the payment of the Settlement Payment and all costs incurred by Defendants for the defense of the Settled Lawsuits.

## IV.     RELIEF REQUESTED

18.     By this Motion, the Movants seek entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), (i) approving the Settlement Agreement (including the Contribution Bar) and authorizing the Trustee to enter into and implement the Settlement Agreement in accordance with the terms thereof; and (ii) lifting the Automatic Stay, to the extent necessary, to allow the Settling Defendants to make claims upon their Director and Officer insurance policies to satisfy the Settlement Payment and pay defense costs.

## V.     BASIS FOR RELIEF REQUESTED

### A.     Standard for Approving Settlement

19.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement" Fed. Bankr. R. 9019(a).  Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *In re Key3Media Group, Inc.*, 336

B.R. 87, 93 (Bankr. D. Del. 2005) (internal quotations omitted); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (settlement and compromise are "a normal part of the process of reorganization"); *In re Culmtech, Ltd.*, 118 B.R, 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and…much of litigation in bankruptcy estates results in settlements").

20.     In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *TMT Trailer*, 390 U.S. at 424.  "The settlement need not be the best that the debtor could have retained.  Rather, "the settlement must fall within the reasonable range of litigation possibilities." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)).  The decision to accept or reject a compromise is within the sound discretion of the bankruptcy court.  *See Drexel*, 134 B.R. at 505.  The bankruptcy court, however, may consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. *See Nellis v. Shugrue*, 165 B. R. 115, 122 (S.D.N.Y. 1994).  A bankruptcy court need not decide the numerous issues of law and fact raised by the settlement but rather should "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("the court need not conduct a mini-trial to determine the merits of the underlying litigation"); *In re Nashiminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

21.     Bankruptcy courts in the Third Circuit have applied the following factors in determining whether a proposed settlement is fair, reasonable, and in the best interest of the

estate: (a) the probability of success in litigation; (b) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (c) the likely difficulties in collection; and (d) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, including the paramount interests of the creditors. *See In re TSIC, Inc.*, 393 B.R. 71, 78-79 (Bankr. D. Del. 2008) (citing *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006)). Consideration of these factors requires the Court to make an objective, informed comparison of the results of litigation versus the benefits of compromise. *See TMT Trailer*, 390 U.S. at 424.

22. The Movants respectfully submit that consideration of the relevant factors set forth above indicate that the Settlement embodied in the Settlement Agreement is more than fair and equitable, falls within the range of reasonableness, is in the best interests of the Litigation Trust, and should be approved.

### B. The Settlement is the Result of Arm's-Length Negotiations

23. Whether a settlement was the result of arm's-length bargaining and not the result of fraud or collusion may also be a factor weighed by a court in determining whether to approve a proposed settlement. *See In re Best Products Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). Here, the Settlement was proposed, negotiated, and entered into by the Parties with the assistance of competent counsel, without collusion, in good faith, and from arm's-length bargaining positions, and following mediation. The Parties and their counsel have each and collectively spent many hours researching, analyzing, and briefing the merits of, among other things, the claims set forth in the Adversary Case, and related issues. After an extensive analysis of the legal and factual issues that would be involved in resolving these disputes, the Parties concluded

that it would be beneficial to explore settlement, and ultimately in the best interests of the Litigation Trust to enter into the Settlement Agreement.

24.   The Settlement is supported by consideration on both sides, including a substantial monetary payment by the Settling Defendants. The Litigation Trust, made up of representatives of lender and unsecured creditor classes, unanimously supports the Settlement.

25.   In short, the decision by the Parties to execute the proposed Settlement was made after full and complete assessment of the factual record and the applicable law. In light of these facts, it is clear that the Settlement is the result of truly arm's-length negotiations.

### C.   The Settlement Should Be Approved as Fair, Reasonable, and in the Best Interests of the Litigation Trust

26.   Comparison of the Settlement Agreement's terms with the Adversary Case's probable benefits versus costs, as well as the uncertainties as to a successful outcome, supports the conclusion that the Settlement Agreement was made in good faith.

27.   First, there are a multitude of complex issues surrounding the claims raised in connection with the Adversary Case. The Litigation Trust is confident, based on the findings of the Examiner and its own investigation, that the claims raised by Third Amended Complaint are strong, and have a serious possibility of success. Nonetheless, the Settling Defendants have raised numerous defenses to each claim that could act to defeat some or all of claims raised by the Third Amended Complaint. The Court is familiar with many of these defenses through the motion to dismiss litigation that has already occurred before the Court.

28.   Second, in light of the numerous unresolved issues already raised by the Parties in the Adversary Case, the Parties face the prospect of protracted, contentious litigation, and the likelihood of additional costs on appeal. As this Court may recall from litigation over access to D&O Insurance policy proceeds, the Parties have already incurred millions of dollars in costs.

The expense of litigating the Adversary Case to conclusion would be substantial, likely significantly in excess of additional millions of dollars. Indeed, thus far, parties have submitted thousands of pages in pleadings and related motions in this action – prior to the pleadings even being closed. The discovery phase of the Adversary Case involves a large volume of paper and electronic discovery materials, numerous depositions, and significant and costly efforts by the Trustee's retained professionals and experts to prepare for, and ultimately conduct, trial. All of these activities would impose significant and certain administrative costs on the Litigation Trust, even though ultimate recovery would be far from certain. As a result of the Settlement, all such uncertainty and risk is eliminated.

29.    Third, the significant costs attendant to such litigation, and the Litigation Trust's inability to obtain the Settlement Payment absent potentially lengthy and uncertain litigation, significantly distracts from and undermines the ability of the Litigation Trust to pursue other claims related to parties not released by the Settlement, as well as other third parties.

30.    Fourth, it appears that the only funds available to satisfy a judgment against the Settling Defendants are the proceeds of insurance policies providing Directors and Officers ("D&O") liability coverage, which are described more fully below. The Settling Defendants have made representations to the Trust, under penalty of perjury, regarding their recoverable assets, such that the Trust is satisfied that the Settlement is in the best interests of the estate. Copies of sworn statements regarding the Settling Defendants' net worth provided by the Settling Defendants to the Trust pursuant to the Settlement Agreement are being filed under seal as <u>Exhibit B</u> to this motion for approval. The D&O insurance policy proceeds totaled $50 million at the start of this litigation, but have been diminished by approximately $10 million as a result of defense fees and costs associated with this litigation. Under the circumstances of this

case, the Settlement Payment is equal to or greater than the amount that the Litigation Trust could expect to secure from insurance policy proceeds if the case proceeded to judgment in favor of the Litigation Trust following trial.

31.     The pure monetary benefits of settling now – the guaranteed release of the Settlement Payment to the Litigation Trust – is justification enough for the approval of the Settlement Agreement in light of the fact that if litigation were to proceed, there is a chance that the Litigation Trust would never be able to access and distribute the Settlement Payment to satisfy Contributing Creditors' claims, or would be able to do so only after months, if not years, of costly litigation.

32.     In light of these facts, the Trustee believes that it has sound business justification for entering into the Settlement Agreement and that the Settlement serves the paramount interests of the Litigation Trust.

### D.      **This Court Should Enter the Contribution Bar**

33.     This Court also should enter a contribution bar order (the "Contribution Bar Order") permanently barring, enjoining, and restraining third parties from commencing, prosecuting, or asserting against the Released Parties (as defined in the Settlement Agreement) any request, claim, or cause of action for or otherwise seeking contribution or indemnification, however denominated, against the Released Parties where the injury to the third party is based upon the third party's liability to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States, or elsewhere against any

of the Released Parties based upon, relating to, or arising out of (A) any claims asserted or judgments obtained against the third parties by the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), or amounts actually paid by the third parties to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) based on such claims or judgments, whether by settlement or otherwise, and/or (B) liability owed, or alleged or claimed to be owed, or amounts paid, whether by settlement or otherwise, to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) and (C) the costs of defending against claims, causes of action, demands, or requests asserted or made by the Trustee.

34.     The Contribution Bar Order shall also provide that Released Parties are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any request, claim, or cause of action for or otherwise seeking contribution or indemnification, however denominated, against a third party where the injury to the Released Party is based upon the Released Party's liability to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States, or elsewhere against any third party based upon, relating to, or arising out of (A) any claims asserted or judgments obtained against the Released Parties by the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the

Litigation Trust), or amounts actually paid by the Released Parties to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) based on such claims or judgments, whether by settlement or otherwise, and/or (B) liability owed, or alleged or claimed to be owed, or amounts paid, whether by settlement or otherwise, to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) and (C) the costs of defending against claims, causes of action, demands, or requests asserted or made by the Trustee.

35.     The Contribution Bar Order shall also provide that the determination of whether any monetary award or judgment obtained in another action by the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) from or against any third party resulting from that third party's liability as a joint tortfeasor with the Settling Defendants for the same claims alleged in the Settled Actions, is subject to any reduction, credit or setoff as a result of the settlement in this action shall be made by the court issuing such award or judgment based on applicable law, including any governing joint tortfeasor statute, it being the intent of the parties that the Settling Parties shall obtain a full bar under any such statute, to the extent applicable.

36.     Contribution bars are routinely entered in connection with settlement agreements. *See, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3rd Cir. 1995) ("Many states have enacted settlement bar statutes, which allow a bar to the right of contribution if the settlement is made in good faith and the non-settling defendants are entitled to a setoff against any judgment ultimately entered against them"); *Schadel v. Iowa Interstate R.R. Ltd.*, 381 F.3d 671, 677 (7th Cir. 2004) (affirming approval of contribution bar with judgment reduction); *Scholes v. Stone, McGuire &*

*Benjamin,* 839 F. Supp. 1314, 1320 (N.D. Ill. 1993) (entering contribution bar in conjunction with good faith finding).

37.  A contribution bar order is a necessary and material component of the Settlement. Contribution bars facilitate settlement because "[d]efendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996) (alterations in original) (quotations omitted).  This is especially true here where additional parties were named in the Adversary Case that are not included in the group of Released Parties.  The Contribution Bar and its judgment reduction provisions also serve the strong public policies in favor of settlement and the equitable apportionment of damages among tortfeasors, *Johnson*, 784 N.E.2d at 821, assists in preserving the assets for the benefit of the Litigation Trust, and is narrowly tailored.

### E. The Confidentiality Extension is Necessary for the Litigation Trust's Pursuit of Actions Against Non-Settling Defendants and Third Parties

38.  On January 6, 2010, this Court signed an "Order Approving Stipulation for the Production and Exchange of Confidential Information" (the "Confidentiality Order").  On April 1, 2010, this Court signed an "Order Approving the Supplemental Stipulation Modifying the Stipulation for the Production and Exchange of Confidential Information," which acted to extend the confidentiality agreement between the Parties to an additional third party to the Adversary Case.  In addition to establishing requirements for maintaining confidentiality of documents and information that warrant such protection, the Stipulation approved by the Confidentiality Order described requirements for the destruction of confidential materials upon the completion of the Adversary Proceeding.  As part of the Settlement Agreement, the parties have agreed to modify

these requirements to permit the Parties to retain such documents until December 31, 2013, and to allow their use in other cases, provided that the Parties first request a similar confidentiality order in the other case(s). The parties respectfully request that the Court modify the Confidentiality Order to permit such retention under such conditions.

### F. This Court Should Lift the Automatic Stay, to the Extent Applicable, To Permit the Insurers to Fund the Settlement Payment.

39. The Settling Defendants are insureds under the American International Specialty Lines Insurance Company Directors, Officers and Corporate Liability/General Partners and Private Limited Partnership Liability Insurance Policy No. 288- 35-66 issued to SemGroup L.P. effective November 21, 2007, to November 21, 2008 (the "Primary Policy"). In addition to the Primary Policy, four excess policies apply to the case as listed in the Settlement Agreement (together with the Primary Policy, the "D&O Policies"), providing a total of $50 million in D&O liability coverage.

40. On August 27, 2009, this Court signed an "Order Granting in part the Motion of the Individual Defendants for Payment of Defense Costs Under Executive Liability Insurance Policy" (the "Original Order"), which authorized the Settling Defendants "to be paid $3.5 million in the aggregate in defense fees and costs without further Order of this Court."

41. On January 26, 2010, this Court signed an "Order Granting in Part the Individual Defendants' Motion to Modify Order Authorizing Payment of Defense Costs Under Executive Liability Policy" ("Modified Order"), which stated that defense costs "shall not exceed $6 million in the aggregate (an additional $2.5 million to the amount previously authorized by previous Order.)"

42. On May 26, 2010, this Court signed an "Order Granting Part the Individual Defendants' Motion to Modify Order Authorizing Payment of Defense Costs Under Executive

Liability Policy" ("Second Modified Order"), which stated that defense costs "shall not exceed $10 million in the aggregate (an additional $4 million to the amount previously authorized by previous Order.)"

43.     In issuing each of the Original Order, Modified Order, and Second Modified Order, the Court specifically indicated that the "automatic stay, to the extent it is implicated, is lifted for the limited purpose of payment of the [Settling] Defendants' defense costs in the Adversary [Case] under and in accordance with the terms of the policy."

44.     The execution of the Settlement Agreement again requires that this Court lift the automatic stay, to the extent it is implicated, to authorize the use of proceeds from the D&O Policies to fund the Settlement Payment and to further pay the remaining costs incurred by Settling Defendants for the defense and settlement of the Settled Lawsuits.

45.     The Court did not make a determination in any of its previous orders as to whether: "(a) any insurance proceeds under the [D&O Policies] are property of the Debtors' estates; and (b) Plaintiff has an interest in the proceeds from the [D&O Policies] and/or whether the Plaintiff has standing to object to the use of the proceeds from the [D&O Policies]."

46.     However, the Court again need not address such issues in order to award the relief requested herein.  In the present situation, there is no concern that policy proceeds are being unreasonably or unnecessarily dissipated through expenses and costs associated with protracted litigation.  Here, the proceeds are being used to fund a settlement and associated defense costs that will result in a full and final resolution of the Adversary Case as it pertains to the Settling Defendants through the Settlement Agreement and Contribution Bar.

47. For the foregoing reasons, the Settling Defendants should be granted relief from the automatic stay, to the extent applicable, to allow the disbursement of the proceeds of D&O Policies for the Settlement Payment and remaining defense costs of the Settling Defendants.

## VI. CONCLUSION

WHEREFORE, for the reasons set forth in this Motion, the Trustee respectfully requests that this Court enter an order approving the Settlement Agreement, modifying the Confidentiality Order as requested, entering the Contribution Bar Order, lifting the Automatic Stay as necessary to allow for the Settlement Payment and remaining defense costs to be paid from the D&O Policies, and finally granting such other relief as the Court may deem just and proper.

Dated: September 22, 2010

Wilmington, Delaware

BLANK ROME, LLP

*/s/ David Dorey*
Bonnie Glantz Fatell (# 3809)
David Dorey (#5283)
1201 Market Street, Suite 800
Wilmington, Delaware  19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

and

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Richard I. Werder, Jr.
Susheel Kirpalani
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
R. Brian Timmons
David M. Grable
Eric D. Winston
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Counsel for Bettina M. Whyte, Trustee of the SemGroup Litigation Trust*

GREENBERG TRAURIG, LLP

*/s/ Donald J. Detwiler*
Donald J. Detwiler (# 3087)
Dennis A. Meloro (# 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360

and

Paul R. Bessette
Michael J. Biles
Jesse Z. Weiss
Kimberly G. Davis
300 West Sixth Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

*Counsel for Defendant Thomas L. Kivisto*

PINCKNEY, HARRIS & WEIDINGER, LLC

*/s/ Joanne P. Pinckney*
Joanne P. Pinckney (# 3344)
1220 N. Market Street, Suite 950
Wilmington, Delaware 19382
Telephone: (302) 504-1498
Facsimile: (302) 655-5213

      and

AKIN GUMP STRAUSS HAUER & FELD, LLP
Orin L. Harrison III
Lisa S. Gallerano
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel for Defendant Gregory C. Wallace*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ David J. Teklits*
David J. Teklits (# 3221)
Curtis S. Miller (#4583)
Kevin M. Coen (#4775)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

      and

FULBRIGHT & JAWORSKI LLP
Theodore W. Daniel
Karl G. Dial
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

*Counsel for Defendant Brent Cooper*

BODELL, BOVE, GRACE & VAN HORN, P.C.

*/s/ Bruce W. McCullough*
Bruce W. McCullough (# 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, Delaware 19899
Telephone: (302) 655-6749
Facsimile: (302) 655-6827

and

GORDON & REES, LLP
Barry Flynn
3D/International Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: (713) 961-3366
Facsimile: (713) 961-3938

*Counsel for Defendant Kevin L. Foxx*


ABRAMS & BAYLISS LLP

*/s/ John. M. Seaman*
John M. Seaman (# 3868)
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Telephone: (302) 778-1152
Facsimile: (302) 258-0771

and

KING & SPALDING LLP
Michael W. Youtt
Kevin D. Mohr
1100 Louisiana Street, Suite 100
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Counsel for Defendant Alex G. Stallings*