**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **SEMCRUDE, L.P.,** *et al.,* | : | **Case No. 08-11525 (BLS)** |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | Hearing Date: June 23, 2011 at 1:30 pm |
| | : | Objection Deadline: June 6, 2011 at 4:00 pm |

**EMERGENCY MOTION TO ENFORCE THE PROVISIONS OF THE ORDER
CONFIRMING DEBTORS' FOURTH AMENDED JOINT PLAN AND TO ENFORCE
THE PROVISIONS OF THE CONFIRMED PLAN AND FOR OTHER RELIEF**

Thomas L. Kivisto ("**Kivisto**"), by and through his undersigned counsel, Greenberg Traurig LLP, hereby moves the Court for an order enforcing the provisions of this Court's October 28, 2009 *Order Confirming Debtors' Fourth Amended Joint Plan of Affiliated Debtors Pursuant To Chapter 11 Of The Bankruptcy Code* (Docket No. 6347; the "**Confirmation Order**") and enforcing the provisions of the Debtors' Fourth Amended Joint Plan of Affiliated Debtors Pursuant To Chapter 11 Of The Bankruptcy Code (Docket No. 5808; the "**Plan**" or the "**Confirmed Plan**"). The Confirmation Order and Confirmed Plan are attached as **Exhibits "A"** and "**B**" hereto. In support of the relief requested herein Mr. Kivisto respectfully states as follows:

**Preliminary Statement**

1.      By this motion (the "**Motion**"), the Court is being asked to: (i) hear and determine a dispute arising in connection with, and related to, the Confirmed Plan and Confirmation Order; and (ii) enter an order or take any other action as may be necessary and appropriate, to restrain the interference with the implementation, consummation, execution and enforcement of the Confirmed Plan and Confirmation Order. Immediate action is required of the Court as a result of

the civil lawsuit filed by certain former limited partners (the "**Former Limited Partners**" or "**Plaintiffs**") of SemGroup L.P. against Mr. Kivisto and PricewaterhouseCoopers, LLP ("**PwC**") in the District Court in and for Tulsa County State of Oklahoma.  The case is styled Cottonwood Partnership, L.L.P. et. al. v. PricewaterhouseCoopers LLP, et. al., (the "**Oklahoma Litigation**"). A true and correct photocopy of the petition (the "**Petition**") filed in the Oklahoma Litigation is attached hereto as **Exhibit "C."**

2.     The Petition asserts a claim for alleged professional negligence (Count I) and a claim for the alleged violation of the Oklahoma Accountancy Act against PwC (Count II).  The Petition also asserts claims for alleged negligent misrepresentation (Count III), alleged fraud (Count IV), and alleged breach of fiduciary duty (Count V) against Mr. Kivisto as the Chief Executive Officer of SemGroup LP.  The claims asserted in the Oklahoma Litigation are derivative claims that belong to, or are currently being litigated by Bettina M. Whyte, the Trustee of the SemGroup Litigation Trust, both in this Court[1] and in the District Court in and for Tulsa County, State of Oklahoma.[2]

3.     The limited partnership interests, which serve as the purported basis for Plaintiffs' alleged right to sue, were terminated, satisfied and discharged under the Confirmed Plan and Confirmation Order.  More importantly the claims asserted by the Former Limited Partners in the Oklahoma Litigation violate and/or are barred by the express terms and provisions of the Confirmation Order and Confirmed Plan.  Consequently, immediate relief from this Court is needed to avoid: (i)  the wrongful adjudication of claims belonging to the SemGroup Litigation Trust, (ii) the wrongful adjudication of claims that have been discharged, terminated, extinguished

---

[1]    Bettina M. Whyte, as Trustee of the SemGroup Litigation Trust v. Thomas L. Kivisto, et al., Adv. No. 09-50189 (BLS) Bankr .D .Del (the "**Kivisto Action**").

AUS 536,148,416v4 4-14-11

and/or enjoined by the Confirmation Order and Confirmed Plan, and (iii) the potential wrongful entry of orders, verdicts and/or judgments that may be inconsistent with the Confirmed Plan and Confirmation Order and/or inconsistent with the interests of the Debtors' bankruptcy estates.

### Jurisdiction and Venue

4.　　The Court has jurisdiction over this matter, the above referenced debtors (the "**Debtors**"), the Debtors' bankruptcy cases, the Confirmation Order and the Confirmed Plan pursuant to 28 U.S.C. § 1334. Indeed, in paragraph 42 of the Confirmation Order the Court specifically retained exclusive jurisdiction of all matters arising out of, or relating to, the Debtors' Chapter 11 Cases or the Fourth Amended Plan, pursuant to, and for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to jurisdiction.

> (k) To hear and determine disputes arising in connection with or relating to the Fourth Amended Plan or the interpretation, implementation, or enforcement of the Fourth Amended Plan or the extent of any Entity's obligations incurred in connection with or released under the Fourth Amended Plan;
>
> (l) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation or enforcement of the Fourth Amended Plan, this Order, or any other order of the Court;
>
> (m) To determine any other matters that may arise in connection with or are related to the Fourth Amended Plan, the Fourth Amended Disclosure Statement, this Order, or any other contract, instrument, release or other agreement or document created in connection with the Fourth Amended Plan or the Fourth Amended Disclosure Statement;
>
> (p) To determine the scope of any discharge of any Debtor under the Fourth Amended Plan or the Bankruptcy Code;
>
> (q) To hear any other matter or for any purpose specified in this Order that is not inconsistent with the Bankruptcy Code;

---

[2]　Bettina M. Whyte, as Trustee of the SemGroup Litigation Trust v. PricewaterhouseCoopers LLP, CJ-2010-04042, Tulsa County Okla. (the "**PwC Action**").

3

(r)  To resolve any disputes regarding whether a Cause of Action constitutes a Retained Cause of Action or Litigation Trust Claim; and

(s)  To enforce the terms of the Litigation Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, the Litigation Trust Agreement, any breach or default under the Litigation Trust Agreement, or the transactions contemplated by the Litigation Trust Agreement.

5.      This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) and the Court has jurisdiction to enter a final order with respect thereto.

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual Background

### a)    The Bankruptcy Cases

7.      On July 22, 2008, each of the Debtors commenced a voluntary case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 - 1532 (the "**Bankruptcy Code**"). By prior orders of the Court, the Debtors' Chapter 11 Cases were consolidated for procedural purposes only, and were being jointly administered pursuant to Bankruptcy Rule 1015. On October 28, 2009, this Court confirmed the Plan and entered the Confirmation Order. The Confirmed Plan and Confirmation Order established, among other things, the SemGroup Litigation Trust. Bettina M. Whyte serves as the Litigation Trustee of the SemGroup Litigation Trust.

### b)    The Claims Asserted In The SemGroup Litigation And Oklahoma Litigation

8.      As Litigation Trustee, Ms. Whyte has filed and/or pursued several claims on behalf of the SemGroup Litigation Trust, including the Kivisto Action and the PwC Action. Both actions are ongoing and seek relief similar to, if not identical to, the claims being asserted by the Former Limited Partners in the Oklahoma Litigation. Indeed, the claims asserted in all three actions (the

Kivisto Action, the PwC Action and the Oklahoma Litigation) arise out of, and are related to, the same alleged facts and transactions -- that is to say the events leading to the Debtors' financial collapse.

9.      Moreover, the complaint filed in the Oklahoma Litigation asserts derivative claims that belong to the SemGroup Litigation Trust, similar to those the Trust has already brought against Mr. Kivisto and PwC.

10.     In short, the Former Limited Partners seek to recover monetary damages against Mr. Kivisto, PwC and unnamed others, for the very same alleged wrongful acts and transactions that are being pursued by the SemGroup Litigation Trust.   However, unlike the SemGroup Litigation Trust, the Former Limited Partners do not have standing to pursue such claims, nor the permission or authority of this Court to pursue such claims.

**c)**      **The Relevant Provisions Of The Confirmation Order And Confirmed Plan**

11.     The limited partnership interests that serve as the basis for the Oklahoma Litigation were satisfied, discharged and terminated under the Confirmed Plan and Confirmation Order. The discharge also included the issuance of an injunction enjoining the prosecution of any claim claims arising from, or related, to such limited partnership interests.  For example, the Confirmed Plan and Confirmation Order provides, in relevant part:

> **Section 20.2 of the Plan:** **Discharge of Claims and Termination of Equity Interests**.  Except as otherwise provided in the Plan or the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made there under shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims . . . **, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever,** including any interest accrued on such Claims from and after the Petition Date, **against or in the Debtors or any of their assets or properties to the fullest extend permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, on the Effective Date,** all existing Claims against the Debtors . . **and**

5

Equity Interest in the Debtors, shall be satisfied and discharged, and all holders of Claims . . . and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors or the Litigation Trust, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

**Section 20.3 of the Plan:** <u>Discharge of Debtors</u>.    Upon the **Effective Date** and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, **the Debtors shall be discharged of all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date, to the fullest extent permitted by section 1141 of the Bankruptcy Code,** other than the SemCanada Energy Claim. **Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtors, the Debtors in Possession, the Litigation Trust, or their respective successors or assigns, including, without limitation, the Reorganized Debtors, the Litigation Trust, or their respective assets properties or interests in property, any discharged Claim or Equity Interest in the Debtors, any other or further Claims,** other than the SemCanada Claim, **based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim or Equity Interest was filed, whether the holder thereof voted to accept or reject the Plan, or whether the Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest.**

**Paragraph 26 of the Confirmation Order:** <u>**Discharge of Claims and Termination of Equity Interests**</u>. Except as otherwise provided in the Fourth Amended Plan or this Order, the rights afforded in the Fourth Amended Plan and the payments and distributions to be made thereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims . . . **and shall terminate all Equity Interests, of any kind, nature, or description whatsoever,** . . . , against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Fourth Amended Plan, on the Effective Date, **all existing Claims against the Debtors . . . and Equity Interests in the Debtors, shall be, and shall be deemed to be, satisfied and discharged,** and all holders of Claims . . . and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors

6

or the Litigation Trust, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

**Paragraph 27 of the Confirmation Order: <u>Discharge of Debtors</u>.** Upon the Effective Date and in consideration of the distributions to be made under the Fourth Amended Plan, except as otherwise expressly provided therein, **the Debtors shall be discharged of all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date, to the fullest extent permitted by section 1141 of the Bankruptcy Code, other than the SemCanada Energy Claim. Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtors, the Debtors in Possession, the Litigation Trust, or their respective successors or assigns, including, without limitation, the Reorganized Debtors, the Litigation Trust, or their respective assets, properties or interests in property, any discharged Claim or Equity Interest in the Debtors, any other or further Claims,** other than the SemCanada Energy Claim, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim or Equity Interest was filed, whether the holder thereof voted to accept or reject the Fourth Amended Plan, or whether the Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest.

**Section 20.8 of Confirmed Plan: <u>Injunction of Causes of Action</u>.** Except as provided in the Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any Causes of Action, whether directly, derivatively, on account of or respecting any debt or Cause of Action (i) of the Debtors, the Debtors in Possession, or the Reorganized Debtors which the Debtors, the Debtors in Possession, the Reorganized Debtors, or the Litigation Trust, as the case may be, retain sole and exclusive authority to pursue in accordance with Section 10.1 of the Plan or (ii) which has been released pursuant to the Plan, including, without limitation, pursuant to Section 20.9, 20.10, 20.11, 20.12, 20.13 or 2014 of the Plan and the Confirmation Order shall provide for such injunctions.

**Paragraph 37 of the Confirmation Order. <u>Injunction on Causes of Action</u>.** Except as provided in the Fourth Amended Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any Causes of Action,

7

whether directly, derivatively, on account of or respecting of any debt or Cause of Action (i) of the Debtors, the Debtors in Possession, or the Reorganized Debtors which the Debtors, the Debtors in Possession or the Reorganized Debtors, or Litigation Trust, as the case may be, retain sole and exclusive authority to pursue in accordance with Section 10.1 of the Fourth Amended Plan or (ii) which has been released pursuant to the Fourth Amended Plan, including, without limitation, pursuant to Sections 20.9, 20.10, 20.11, 20.12, 20.13 or 20.14 of the Fourth Amended Plan and this Order.

12. The Confirmation Order and Confirmed Plan also transferred the very claims and causes of action asserted by the Former Limited Partners in the Oklahoma Litigation to the SemGroup Litigation Trust:

> **Paragraph 40 of Confirmation Order.   Litigation Trust Claims**. Pursuant to the Fourth Amended Plan, other than any releases granted therein, this Order, or other Final Order of the Court, as applicable, from and after the Effective Date, **only the Litigation Trust** shall have the right to bring or prosecute any Litigation Trust Claims, including but not limited to the Avoidance Actions.
>
> **Paragraph 20.1 of Fourth Amended Plan. Title to and Vesting of Assets.** On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, **all property of the estates of the Debtors shall vest in the Reorganized Debtors or the Litigation Trust, as the case may be, free and clear of all Claims, Liens, encumbrances, and other interests,** except as provided herein, **and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors and the Debtors in Possession** except as provided in the Plan. From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.
>
> **Paragraph 20.7 of Fourth Amended Plan.  Preservation of Causes of Action / Reservation of Rights.**
>     (a)     Except with respect to Released Actions, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights or Causes of Action that the Debtors, the Reorganized Debtors, or the Litigation Trust may have or which the Reorganized Debtors or the Litigation Trust may choose to assert on behalf of their respective estates under

8

any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person or Entity, to the extend such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives, (ii) the turnover of any property of the Debtors' estates, and (iii) Causes of Action against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, members of the Management Committee, or auditors relating to acts or omissions occurring prior to the Petition Date.

**Paragraph 25 of Confirmation Order.  Vesting of Assets in the Reorganized Debtors**.  Except as otherwise provided in the Fourth Amended Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in the Debtors' estates, the Litigation Trust Assets, and any property acquired by any of the Debtors pursuant to the Fourth Amended Plan shall vest in the Reorganized Debtors or the Litigation Trust, as the case may be, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any granted to secure the repayment of the Litigation Trust Funds, the Exit Facility, the Second Lien Term Loan Interests, and Claims pursuant to the Postpetition Financing Agreement that by their terms survive termination of the Postpetition Financing Agreement). On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Retained Causes of Action or interests without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

d)    **The Litigation Trust's Settlement With Mr. Kivisto**

13.    On June 11, 2010, the SemGroup Litigation Trust reached a full and final settlement of its claims against Mr. Kivisto and certain other defendants in the Kivisto Action. Subsequently, on November 19, 2010, this Court entered an *Order Approving Joint Motion Of Bettina Whyte As Trustee For The SemGroup Litigation Trust, And Thomas Kivisto Et Al. For Approval Of Settlement* (the "**Settlement Order**," Docket No. 8593).

*AUS 536,148,416v4 4-14-11*

14.     In addition to the Settlement Order, the Court entered a Memorandum Opinion in support of the Settlement Order.  Docket No. 8592.  The settlement includes broad releases for Mr. Kivisto and the other defendants.

15.     Paragraphs 5 and 6 of the Court's Settlement Order (Docket No. 8593) specifically provide:

> 5.     All persons and entities ("Third Parties") are hereby permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the Released Parties (as defined in the Settlement Agreement) any request, claim, or cause of action for or otherwise seeking contribution or indemnification, however denominated, against the Released Parties where the injury to the Third Party is based upon the Third Party's liability to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, against any of the Released Parties based upon, relating to, or arising out of (A) any claims asserted or judgments obtained against the Third Parties by the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), or amounts actually paid by the Third Parties to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) based on such claims or judgments, whether by settlement or otherwise, and/or (B) liability owed, or alleged or claimed to be owed, or amounts paid, whether by settlement or otherwise, to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) and (C) the costs of defending against claims, causes of action, demands, or requests asserted or made by the Trustee.
>
> 6.     The Released Parties are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any request, claim, or cause of action for or otherwise seeking contribution or common law indemnification, however denominated, against a Third Party where the injury to the Released Parties is based upon the Released Parties' liability to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in this Court, in

10

any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States, or elsewhere against any Third Party based upon, relating to, or arising out of (A) any claims asserted or judgments obtained against the Released Parties by the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust), or amounts actually paid by the Released Parties to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) based on such claims or judgments, whether by settlement or otherwise, and/or (B) liability owed, or alleged or claimed to be owed, or amounts paid, whether by settlement or otherwise, to the Trustee, the Litigation Trust, the Debtors, the Reorganized Debtors, or the Contributing Lenders (on account of the claims assigned to the Litigation Trust) and (C) the costs of defending against claims, causes of action, demands, or requests asserted or made by the Trustee.

16.     Based on these clear and unequivocal provisions of the Confirmed Plan, the Confirmation Order and the Settlement Order, Mr. Kivisto moves this Court for an order enforcing the Confirmation Order and Confirmed Plan and enjoining the Former Limited Partners' further prosecution of the Oklahoma Litigation.

**Argument**

**I.      The Court Should Enjoin And Dismiss The Oklahoma Litigation.**

17.     By this Motion, Mr. Kivisto seeks an order enjoining the Oklahoma Litigation and requiring the Former Limited Partners to dismiss the litigation with prejudice.   The relief requested is appropriate as: (i) the Court has jurisdiction over the Motion, the Former Limited Partners and the claims asserted in the Oklahoma Litigation; (ii) the Former Limited Partners lack standing to sue; (iii) the Former Limited Partners' claims are barred by the doctrine of *res judicata*; and (iv) the Oklahoma Litigation can result in inconsistent judgments, verdicts or orders, and the potential loss of assets to the Debtors' bankruptcy estates.

11

a)    **The Court Has Jurisdiction Over This Motion, The Former Limited Partners And The Claims Asserted In The Oklahoma Litigation.**

18.    Subject matter jurisdiction over bankruptcy cases and proceedings originates in 28 U.S.C. § 1334, which grants district courts "original and exclusive jurisdiction of all cases under title 11" and "original and not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Bankruptcy court jurisdiction, therefore, extends to four categories of title 11 matters: (i) cases under title 11; (ii) proceedings under title 11; (iii) proceedings arising in a case under title 11; and (iv) proceedings related to a case under title 11. Williams v. McGreevey (In re Touch Am. Holdings), Inc., 401 B.R. 107, 117 (Bankr. D. Del. 2009). The first three categories of title 11 matters are known as "core" bankruptcy matters, while the fourth category is known as "non-core" bankruptcy matters. Id. Regardless of the category selected (core or non-core) this Court has jurisdiction over this Motion, the Former Limited Partners and the claims asserted in the Oklahoma Litigation.

i.    The Court's Core Jurisdiction

19.    The Confirmation Order and Confirmed Plan expressly provide for this Court to retain broad jurisdiction to hear matters post-confirmation. Indeed, it is well recognized that a bankruptcy court has the authority to protect its jurisdiction and to enforce the provisions of a confirmed plan and confirmation order. Colony Square Co. v. Prudential Ins. Co. of Am. (In re Colony Square Co.), 779 F.2d 653, 655 (11th Cir. 1986); In the Matter of Macon Uplands Venture v. Metropolitan Life Insurance Co., 624 F.2d 26 (5th Cir.1980); In re Dolly Madison Indus., Inc., 504 F.2d 499, 503 (3d Cir. 1974) (in considering the scope of summary jurisdiction under the former Bankruptcy Act, the Court recognized that it applied to administrative matters such as the oversight of bankruptcy trustees and those who are employed by trustees and noted

12

that " . . . [t]he power of a bankruptcy court to protect by injunction the subject matter of its jurisdiction is inherent in the court as a virtual court of equity and exists as well by virtue of Sec. 2, sub. (a)(15) of the Bankruptcy Act"); Williams v. McGreevey (In re Touch Am. Holdings), Inc., 401 B.R. 107, 118 (Bankr. D. Del. 2009) (Bankruptcy court finding it had "core" jurisdiction over an adversary proceeding in which Plaintiffs asserted derivative claims against former corporate insiders and sought injunctive relief against former shareholders suing the former corporate insiders, as the adversary proceeding required a determination of whether the derivative claims were property of the debtor's estate under section 541 of the Bankruptcy Code).

20.    The issue of standing to assert the claims in the Oklahoma Litigation belonging to the SemGroup Litigation Trust is within the exclusive jurisdiction of this Court and constitutes a "core" proceeding as it arises in the bankruptcy case and concerns the administration of the bankruptcy case. See, e.g., Williams v. McGreevey (In re Touch Am. Holdings), Inc., 401 B.R. 107, 118 (Bankr. D. Del. 2009) (recognizing that a proceeding to determine whether certain property rights are property of the estate under section 541 is a core proceeding, even if the determination rests upon interpretation of state law). See also Barton v. Barbour, 104 U.S. 126, 136-37 (1881); In re Dolly Madison Indus., Inc., 504 F.2d at 503 n.10.

21.    Indeed, the factual allegations underlying the SemGroup Litigation Trustee's claims and the Former Limited Partners' claims are virtually identical -- alleged self-dealing, related party transactions, breach of fiduciary duty, commingling of personal and corporate funds, speculative trading practices, professional negligence and violation of the Oklahoma Accountancy Act.    These claims were specifically transferred to the SemGroup Litigation Trust under the Confirmed Plan and the Confirmation Order.  More importantly, it is the Litigation Trustee, not the Former Limited Partners, who was directed to "prosecute, compromise and settle, abandon or

13

dismiss for the benefit of the Litigation Trust all claims, rights and Causes of Action transferred to the Litigation Trust." In contrast, the limited partner interests that Plaintiffs rely on to establish standing to prosecute the Oklahoma Litigation were terminated and extinguished under the Confirmed Plan and Confirmation Order. Consequently, it is well within the authority of this Court to enjoin the unlawful filing and prosecution of the Oklahoma Litigation. See, e.g., John T. ex rel. Paul T. v. The Del. Cnty. Intermediate Unit, 318 F.3d 545, 554 (3d Cir. 2003).

### ii.    The Court's Related "Related To" Jurisdiction

22.    Even if the Court were to find the issues before the Court are not "core" matters, post-confirmation jurisdiction still exists as the claims asserted in the Oklahoma Litigation are "related to" the Debtors' bankruptcy cases, the Confirmed Plan and the Confirmation Order.

23.    The U.S. District Court for the Northern District of Oklahoma recently determined that it had "related to" jurisdiction over the PwC Action currently pending in Oklahoma state court. However, the federal court determined that mandatory abstention principles applied because, *inter alia*, the Trustee "demonstrated her preference for vindicating the creditors' rights in state court," and granted the Litigation Trustee's motion to remand on that basis. Whyte v. PricewaterhouseCoopers, LLP, Case No. 10-CV-485-GKF-FHM, at p.11 (N.D. Okla March 22, 2011) (attached at Exhibit D).[3] Here, where the issue is standing of the Former Limited Partners to assert claims that belong to the SemGroup Litigation Trust under the Confirmed Plan, abstention is not an issue and this Court therefore has "related to" jurisdiction.

---

[3] Although the Trust's position is that there is no federal "related to" bankruptcy jurisdiction to adjudicate the merits of its state law claims against PwC for audit malpractice, breach of the Oklahoma Accountancy Act and breach of fiduciary duty, (*see* Plaintiff's Motion for Remand and Abstention and Brief in Support, filed in the PwC Action August 6, 2010 (Docket No. 21), at 2-9), that has no impact on this Court's *core* jurisdiction under the Confirmed Plan and the Confirmation Order to rule on the issue of whether the Limited Partners have *standing* to assert claims that are plainly owned by the Trust, which is pursuing its own litigation against PwC.

24.    The Third Circuit Court of Appeals has recognized that "related to" post-confirmation jurisdiction exists if there is a 'close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 166 (3d Cir.2004).  As the Resorts Int'l Court recognized, "[w]hether a matter has a close nexus to a bankruptcy plan or proceeding is particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust *res* for payment on account of their claims. * * *  Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id*. at 167.

25.    A close nexus to the bankruptcy plan and proceeding exist in the case at bar.  The Former Limited Partners are asserting rights, claims and causes of action belonging to SemGroup L.P. and the SemGroup Litigation Trust pursuant to the Confirmed Plan and Confirmation Order - - i.e. breach of fiduciary duty, fraud, negligence and professional liability claims.   The Oklahoma Litigation and the Former Limited Partners' right to sue, **if any**, affects the interpretation, implementation, consummation, execution and administration of the Confirmed Plan and Confirmation Order.  See, e.g., Apex Management Corporation v. WSR Corporation, 22 B.R. 640 (N.D. Ill. 1998) (bankruptcy court recognizing that once a bankruptcy plan is confirmed, a former general and limited partner, whose partnership interests were cancelled and extinguished under a confirmed plan, cannot assert rights inconsistent with the confirmed plan); In re WorldCom , Inc. et al., 351 B.R. 130 (Bankr. S.D.N.Y 2006)  (bankruptcy court, following appeal from Second Circuit Court of Appeals, finding that court had post-confirmation jurisdiction to entertain

15

shareholder motion to prosecute derivative action, but further finding shareholder, whose shares of stock were cancelled under a confirmed plan, lacked standing to sue).

26.    A close nexus also exists by virtue of the Court's retention of jurisdiction under the Confirmed Plan and Confirmation Order, including, but not limited to the Court's retention of jurisdiction:

> (k)  To hear and determine disputes arising in connection with or relating to the Fourth Amended Plan or the interpretation, implementation, or enforcement of the Fourth Amended Plan or the extent of any Entity's obligations incurred in connection with or released under the Fourth Amended Plan;

> (l)  To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation or enforcement of the Fourth Amended Plan, this Order, or any other order of the Court;

> (m)  To determine any other matters that may arise in connection with or are related to the Fourth Amended Plan, the Fourth Amended Disclosure statement, this Order, or any other contract, instrument, release or other agreement or document created in connection with the Fourth Amended Plan or the Fourth Amended Disclosure Statement;

> (p)  To determine the scope of any discharge of any Debtor under the Fourth Amended Plan or the Bankruptcy Code;

> (q)  To hear any other matter or for any purpose specified in this Order that is not inconsistent with the Bankruptcy Code;

> (r)  To resolve any disputes regarding whether a Cause of Action constitutes a Retained Cause of Action or Litigation Trust Claim; and

> (s)  To enforce the terms of the Litigation Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, the Litigation Trust Agreement, any breach or default under the Litigation Trust Agreement, or the transactions contemplated by the Litigation Trust Agreement.

Confirmation Order at 42.

**b)**        **The Former Limited Partners Lack Standing To Sue**

16

*AUS 536,148,416v4 4-14-11*

27.    The Debtors' bankruptcy cases are pending before the Court. The Former Limited Partners have not sought, nor obtained, relief from this Court to prosecute the Oklahoma Litigation. Even if the Former Limited Partners were to seek such relief, the Former Limited Partners lack standing to sue as the claims alleged in the Oklahoma Litigation (i) are derivative claims belonging to SemGroup L.P. or the Semgroup Litigation Trust, (ii) arise from the Former Limited Partners' limited partnership interests in SemGroup L.P., and (iii) are currently being asserted by the SemGroup Litigation Trust. See, e.g., Apex Management Corporation v. WSR Corporation, 225 B.R. 640, 644 (N.D. Ill. 1998) (bankruptcy court finding that confirmed plan that cancelled general and limited partners' equity interest in debtor limited partnership and that assigned partnership claims to new equity security under confirmed plan presented a *res judicata* bar to partners' alleged fraud claims against third party seller of assets to partnership). See also In re WorldCom , Inc. et al., 351 B.R. 130 (Bankr. S.D.N.Y 2006) (bankruptcy court, following appeal from Second Circuit Court of Appeals, finding that court had post-confirmation jurisdiction to entertain shareholder motion to prosecute derivative action, but further finding shareholder, whose  shares of stock were cancelled under a confirmed plan, lacked standing to sue).

28.    The Delaware Supreme Court recently revised the standard for determining whether a claim is direct or derivative in its decision in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004); see also Albert v. Alex Brown Mgmt. Servs., 2005 WL 2130607, at *12 (Del.Ch. Aug. 26, 2005) (noting the revision). The Tooley test provides that determining whether a claim is direct or derivative "turn[s] solely on the following questions: '(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders,

17

individually).'" Tooley, 845 A.2d at 1033. "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing any injury to the corporation." Id. at 1039.[4]

29.    Further, in determining whether a claim is derivative or direct in nature, the court should look to the nature of the wrongs alleged in the body of plaintiffs' complaint, not plaintiffs' characterization or stated intention. San Diego Cnty. Emps. Ret. Ass'n v. Maounis, No. 07 Civ. 2618, 2010 WL 1010012, at * 19 (S.D.N.Y. Mar. 15, 2010) (quoting Dieterich v. Harrer, 857 A.2d 1017, 1027 (Del.Ch.2004)) (citing In re Syncor Int'l Corp. S'holders Litig., 857 A.2d 994, 997 (Del.Ch.2004) ("[U]nder Tooley, the duty of the court is to look at the nature of the wrong alleged, not merely at the form of words used in the complaint.")).

30.    The gist of the allegations in the Oklahoma Litigation center on PwC's alleged inadequate investigation and auditing of SemGroup L.P. and Mr. Kivisto's alleged self-dealing, speculative trading practices (which were done by the partnership, not Kivisto) and mismanagement as CEO of SemGroup L.P. The Former Limited Partners' argument is that the alleged misconduct resulted in the loss of the full value of their limited partnership units when SemGroup L.P. declared bankruptcy in July, 2008 (Oklahoma Petition at para 1). The injury for which the Former Limited Partners seek redress was to SemGroup L.P., the limited partnership. See, e.g., Manzo v. Rite Aid Corp., 2002 WL 31926606, at *5 (Del. Ch. Dec. 19, 2002) ("To the

---

[4] The determination of whether a lawsuit is derivative or direct in nature is substantially the same for corporate cases as it is for limited partnership cases. Littman v. Prudential-Bache Securities, Inc., 611 A.2d 12 (Del. Ch. 1992). That is, the duties of a general partner and a director are very similar. See Boxer v. Husky Oil Co., 1983 WL 17937, at *3 (Del. Ch. June 28, 1983). Therefore, it follows that the determination of the nature of the claims regarding a breach of those duties also should be very similar. Littman v. Prudential-Bache Securities, Inc., 611 A.2d 12 (Del. Ch. 1992) citing Strain v. Seven Hills Assocs., L.P., (after noting that stockholders and limited partners hold similar positions within their respective entities, the Court looked to corporate law for guidance in determining the nature of a suit by a limited partner).

extent that plaintiff was deprived of accurate information upon which to base investment decisions and, as a result, received a poor rate of return on her Rite Aid shares, she experienced an injury suffered by all Rite Aid shareholders in proportion to their pro rata share ownership. This would state a derivative claim."). The damage alleged in the Oklahoma Litigation relates to damage to the limited partnership, not damage to the individual limited partners. The claims are derivative claims, not direct claims, claims which belong to SemGroup L.P. and/or the SemGroup Litigation Trust. Given the claims are derivative and the Former Limited Partners lack standing, the Oklahoma Litigation should be dismissed.

c)    **The Former Limited Partners' Alleged Claims Are Barred By The Doctrine Of *Res Judicata***

31.    The Confirmed Plan, Confirmation Order and Settlement Order constitute a final order and judgment on the merits that binds all parties. The Former Limited Partners were parties to the Confirmed Plan as they were equity holders who held limited partnership interests in SemGroup L.P. *See* 11 U.S.C. §§ 1141(a) and 101(16)(B). The Confirmed Plan extinguished the limited partnership interests in SemGroup L.P. The Confirmed Plan also expressly prohibits any distribution to the Former Limited Partners, and vests all rights to sue directors and officers (such as Mr. Kivisto) and any professional advisors (such as PwC) to the SemGroup Litigation Trust.

32.    Paragraph 5 and 6 of the Settlement Order similarly bars the claims of the former Limited Partners.

33.    Viewing these provisions in conjunction with the complaint filed in the Oklahoma Litigation, it is clear that the three elements of *res judicata* have been met.

34.    The doctrine of *res judicata* is a "fundamental precept of common-law adjudication and its application is central to the purpose for which civil courts have been established, the

19

conclusive resolution of disputes within their jurisdictions." In re Montgomery Ward, LLC, 388 B.R. 49 (Bankr. D. Del. 2008) *quoting* Montana v. United States, 440 U.S. 147, 553 (1979). *Res judicata* bars the assertion of claims when three elements are present: (i) a final judgment on the merits and a prior suit involving; (ii) the same claim; and (iii) the same parties or their privies. Id. The doctrine applies with equal force to final judgments rendered by bankruptcy courts. Id.

      i.     The Confirmation Order Is A Final Judgment On The Merits

    35.    It is well recognized that a bankruptcy court's confirmation of a plan of reorganization constitutes a final judgment on the merits. In re Ampace Corp., 279 B.R. 145. 154-55 (Bankr. D. Del 2002); Stoll v. Gottlieb, 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Consequently, claims pertaining to the confirmed plan that could have been asserted prior to its confirmation are precluded. In re Heritage Hotel Partnership, 160 B.R. 374, 377 (9th Cir. BAP 1993); In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir.1991); Sure-Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869, 877 (2nd Cir.1991). *See also*, Section 1141(a) ("the provisions of a confirmed plan bind the debtor ... and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.") The Bankruptcy Code includes within the definition of "equity security" an "interest of a limited partner in a limited partnership" and a "share in a corporation." 11 U.S.C. § 101(16)(b).

      ii.     The Confirmation Order Involves The Same Parties

    36.    As limited partners of SemGroup L.P., the Former Limited Partners are bound by the Confirmed Plan and Confirmation Order. 11 U.S.C. 1141(a). As noted by the Sixth Circuit Court of Appeals in Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474,

480-81 (6th Cir.1992) a debtor's equity security holders are parties against whom a confirmed reorganization plan operates:

> To release creditors and equity security holders from the bonds of res judicata would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor. To interpret the term "party" narrowly would also run counter to the provisions in the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders. *See, e.g.,* 11 U.S.C. §§ 1141 and 1144.

iii.     The Confirmation Order Involves The Same Claims

37.     A claim has identity with a previously litigated matter if it emerges from the same core of operative facts' as that earlier action." Brzostowski v. Laidlaw Waste Systems, Inc., 49 F.3d 337, 338-39 (7th Cir.1995). Moreover, "if the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between allegedly different causes of action." Tice v. American Airlines, Inc., 959 F.Supp. 928, 934 (N.D. Ill.1997).

38.     The Oklahoma Litigation asserts claims arising out of and related to SemGroup L.P. and the Debtors' alleged financial collapse.  These are the very claims the ownership of which has been addressed in the Confirmed Plan and Confirmation Order.  Indeed, the factual allegations in the Oklahoma Litigation mirror the SemGroup Litigation Trust's complaint against Mr. Kivisto and PwC.   These claims belong to, and are being prosecuted by, the SemGroup Litigation Trust.

39.     In sum, the claims asserted in the Oklahoma Litigation involve the same parties, the same core of facts and claims that were addressed as part of the Confirmed Plan and the Confirmation Order, and have been determined by a final order -- this Court's Confirmation Order

and Confirmed Plan. Therefore, the Oklahoma Litigation should be dismissed with prejudice under the doctrine of *res judicata*.

### d)    The Oklahoma Litigation Can Result In Inconsistent Judgments And Orders And Loss Of Property To the Debtors' Bankruptcy Estates

40.    The Oklahoma Litigation involves claims based on facts and circumstances similar to, if not identical to, those underlying the claims asserted by the Litigation Trust against Mr. Kivisto and PwC. Failing to enjoin the Oklahoma Litigation could result in potentially inconsistent verdicts, judgments or orders as well as the potential loss of property to the Debtors' Bankruptcy Estates.

### Conclusion

Wherefore, for the foregoing reasons, Mr. Kivisto moves the Court for the entry of an order (i) enjoining the prosecution of the Oklahoma Litigation; and (ii) requiring the Oklahoma Litigation be dismissed, with prejudice.

Dated: May 4, 2011                 **GREENBERG TRAURIG, LLP**

                                    */s/ Dennis A. Meloro*
                                    Scott D. Cousins (DE Bar No. 3079)
                                    Dennis A. Meloro (DE Bar No. 4435)
                                    The Nemours Building
                                    1007 North Orange Street, Suite 1200
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 661-7000
                                    Facsimile: (302) 661-7360
                                    Email: cousinss@gtlaw.com
                                            melorod@gtlaw.com

                                    Counsel for Thomas L. Kivisto

*AUS 536,148,416v4 4-14-11*