**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SEMCRUDE, L.P., et al., | Case No. 08-11525 (BLS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 23, 2011 at 1:30 p.m. EDT**<br>**Objection Deadline: June 6, 2011 at 4:00 p.m EDT** |
| | **Re: D.I. 8811, 8829, and 8836** |

**OBJECTION OF COTTONWOOD PARTNERSHIP, L.L.P.; DUNBAR
FAMILY PARTNERSHIP, L.P.; ROSENE FAMILY, L.L.C.; WARREN F.
KRUGER; KATHERINE A. KRUGER; DAVID S . KRUGER; AND
KATHRYN E. SHELLEY TO (I) THOMAS L. KIVISTO'S EMERGENCY
MOTION TO ENFORCE THE PROVISIONS OF THE ORDER
CONFIRMING THE DEBTORS' FOURTH AMENDED JOINT PLAN AND
TO ENFORCE THE PROVISIONS OF THE CONFIRMED PLAN AND FOR
OTHER RELIEF; (II) JOINDER OF THE SEMGROUP LITIGATION
TRUST; AND (III) JOINDER OF SEMGROUP CORPORATION**

Cottonwood Partnership, L.L.P.; Dunbar Family Partnership, L.P.; Rosene

Family, L.L.C.; Warren F. Kruger; Katherine A. Kruger; David S . Kruger; and

Kathryn E. Shelley (the "Plaintiffs"), by and through their undersigned counsel,

hereby object (the "Objection") to Thomas L. Kivisto's ("Kivisto") Emergency

Motion to Enforce the Provisions of the Order Confirming the Debtors' Fourth

Amended Joint Plan and to Enforce the Provisions of the Confirmed Plan and for

Other Relief (the "Motion") [D.I. 8811]; the Joinder (the "Trust Joinder") [D.I. 8829]

of the SemGroup Litigation Trust (the "Trust"); and the Joinder (the "Corporation

Joiner") [D.I. 8836] of SemGroup Corporation  (collectively, the Trust Joinder and

the Corporation Joinder are the "Joinders").  In support of this Objection, the

Plaintiffs respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Kivisto's "Emergency" Motion is based upon an incorrect

premise that requires denying Kivisto's requested relief.  That premise is that the

Plaintiffs' claims against Kivisto that are pending before an Oklahoma state court are

derivative claims.  In fact, the Plaintiffs' claims are direct claims against Kivisto and

PricewaterhouseCoopers, LLP ("PwC") over which this Court lacks jurisdiction, that

have not been released, and that do not belong to the Trust.

2.      Instead, the Motion gives every appearance of a backdoor

effort to obtain dismissal of the Oklahoma Litigation (as defined herein) in a court

where the litigation is not pending, and where the court lacks jurisdiction over the

claims sought to be dismissed.  The Oklahoma Litigation – which is entirely among

non-debtors – raises issues distinct from those that have been presented in these

bankruptcy cases.  Accordingly, the Motion must be denied.

## FACTUAL BACKGROUND

3.      Kivisto, the former Chief Executive Officer ("CEO") of

SemGroup L.P. ("SemGroup"), is not a debtor in the above-captioned jointly

administered cases.  However, in his capacity as CEO, he repeatedly engaged in

related party transactions and self-dealing, using SemGroup's resources to finance

his own personal trading activities, ultimately becoming indebted to SemGroup in an

amount exceeding $290 million.  Kivisto also was responsible for SemGroup's highly risky and costly energy options trading program, which ultimately contributed to SemGroup's collapse into bankruptcy by rendering the company unable to finance its operations.

4.      Each of the Plaintiffs formerly held limited partnership units in SemGroup.

5.      On February 18, 2009, the former Official Committee of Unsecured Creditors (the "Committee") in the above-captioned cases commenced an adversary proceeding (the "Adversary Proceeding") against Kivisto and others, asserting estate claims against the defendants (Adv. Pro. 09-50189 (BLS)).

6.      On September 22, 2010, Bettina M. Whyte, as Trustee of Trust, and successor to the Committee, Kivisto, and certain other defendants filed a joint motion (the "Motion to Approve Kivisto Settlement") under Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve a settlement of the Adversary Proceeding (the "Kivisto Settlement") [D.I. 8495].  The Plaintiffs did not receive notice of the Motion to Approve Kivisto Settlement. See Certificate of Service [Adv. Pro. 09-50189 (BLS), D.I. 226] (attached hereto as Exhibit A).

7.      On November 19, 2010, this Court entered an order granting the Motion to Approve Kivisto Settlement [D.I. 8593] and issued a memorandum opinion in connection therewith. Whyte v. Kivisto (In re SemCrude, L.P.), Case No. 08-11525 (BLS), Adv. Pro. 09-50189 (BLS), 2010 Bankr. LEXIS 4160 (Bankr. D. Del. Nov. 19, 2010)

8.      On or about December 22, 2010, the Plaintiffs commenced an action (the "Oklahoma Litigation") against Kivisto, PwC, and John Does 1–25 (collectively, the "Defendants") by filing a petition (the "Petition") in the District Court in and for Tulsa County, State of Oklahoma (the "Oklahoma State Court").

9.      In the Oklahoma Litigation, the Plaintiffs assert direct causes of action against the Defendants.  Specifically, the Plaintiffs have alleged against PwC the following causes of action: Professional Negligence (Count I) and Violation of the Oklahoma Accountancy Act (Count II).  The Plaintiffs have asserted the following direct causes of action against Kivisto: Negligent Misrepresentation (Count III); Fraud (Count IV); and Breach of Fiduciary Duty (Count V).  As alleged in the Petition, these claims are based on duties owed to the Plaintiffs directly and tortious acts committed by the Defendants that caused harm to the Plaintiffs individually – not any duty to SemGroup or any of the other Debtors in these cases. See, e.g., Petition, ¶¶ 2–5, 31–33, 36, 47–49, 59, 61–93.

10.     On January 26, 2011, PwC filed a notice of removal of the Oklahoma Litigation to the United States District Court for the Northern District of Oklahoma (the "Oklahoma District Court"), where the Oklahoma Litigation was assigned civil action number 11-61-JHP-PJC.

11.     On February 16, 2011, PwC filed a motion to dismiss Plaintiffs' claims against PwC (the "PwC Motion to Dismiss") [Oklahoma District Court, D.I. 12].

12.     On February 25, 2011, the Plaintiffs filed a motion to remand the Oklahoma Litigation to the Oklahoma State Court (the "<u>Motion to Remand</u>") [Oklahoma District Court, D.I. 16].  On March 18, 2011, PwC filed its objection to the Motion to Remand [Oklahoma District Court, D.I. 21].  On April 1, 2011, the Plaintiffs filed their reply in support of the Motion to Remand [Oklahoma District Court, D.I. 26].

13.     The PwC Motion to Dismiss and the Motion to Remand are pending before the Oklahoma District Court.

14.     On May 4, 2011, Kivisto filed the Motion.  On May 19, 2011, the Trust filed the Trust Joinder.  On May 23, 2011, Corporation filed the Corporation Joinder.

## STANDARD OF REVIEW

15.     Although not technically styled as a motion to dismiss under the Federal Rules of Civil Procedure (the "<u>Rules</u>"), the relief Kivisto seeks effectively falls within the scope of Rule 12 because it seeks dismissal of the Oklahoma Litigation, albeit not in the court where the Oklahoma Litigation is pending.[1]  For that reason, the Court must accept all material allegations in the Petition as true and construe them in the light most favorable to Plaintiffs. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  Further, even "general factual allegations of

---

[1] <u>See</u> <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 15 (1st Cir. 2003) (noting that the jurisprudence of Rule 12(b)(6) is applicable to motions to dismiss in bankruptcy cases).  <i>See</i> Fed. R. Bankr. P. 7012(b) (incorporating by reference Fed. R. Civ. P. 12(b)(6)); <u>see</u> <u>also</u> <u>Lawrence Nat'l Bank v. Edmonds</u>, 924 F.2d 176, 180 (10th Cir. 1991).

injury resulting from the defendant's conduct may suffice," as the Court should "presume that general allegations embrace those specific facts that are necessary to support the [Plaintiffs'] claims." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).[2]

## ARGUMENT

**A. The Claims in the Oklahoma Litigation Are Direct Claims of the Plaintiffs Against Kivisto and PwC – Not Claims Belonging to the Debtors' Estates.**

16.     The Plaintiffs bring claims under Oklahoma law only on their own behalf, for duties owed to them, and for damages they incurred.  Kivisto suggests otherwise in his Motion, arguing that because Plaintiffs' claims relate to SemGroup's collapse, those claims must be derivative, depriving Plaintiffs of standing.  In this effort to escape liability for his misconduct, Kivisto ignores the specifics of Plaintiffs' claims and instead asks the Court to dismiss them wholesale simply because either (a) SemGroup suffered harm due to the same conduct, and/or (b) the Litigation Trust has asserted similar claims.  But the law is clear that shareholders may sue to redress direct injuries regardless of whether the same violation also injured the corporation.  See Excimer Assocs., Inc. v. Vision, Inc., 292 F.3d 134, 140 (2d Cir. 2002).

_____

[2] If the Court is inclined to accept any portion of Kivisto's argument, Plaintiffs request that they be permitted to seek leave to amend their claims in the underlying Oklahoma litigation before any order effecting dismissal is entered.

17.    Further, courts have long recognized that the same set of facts can give rise to both direct claims (like those asserted by Plaintiffs) and derivative claims.  See U.S. Cellular Inv. Co. v. Southwestern Bell Mobile Sys., Inc., Nos. 96-6140, 96-6146, 96-6294, 1997 WL 575820, ** 4–5 (10th Cir. 1997) (citing Litman v. Prudential-Bache Group, Inc., 611 A.2d 12, 15 (Del. Ch. 1992)).  As such, because Plaintiffs can properly establish individual causes of action, they should be permitted to maintain their actions against both Kivisto and PwC – irrespective of whether the Litigation Trust (or anyone else for that matter) has asserted claims against those parties.  See DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 550 F. Supp. 1199 (N.D. Ill. 1982) (holding that shareholders may properly pursue claims even though corporation has separately asserted similar claims against the same defendant).

### i.    Direct Versus Derivative Analysis

18.    The question of whether a suit is derivative or may be brought by a shareholder in his own right is governed by the law of the state of incorporation. See Kennedy v. Venrock Assoc., 348 F.3d 584, 589–90 (7th Cir. 2003).  Because SemGroup is an Oklahoma limited partnership, Oklahoma law guides this Court's analysis of Plaintiffs' claims.[3]

---

[3] Plaintiffs also note that in response to the suit filed by the Litigation Trust, Kivisto took the position that Oklahoma law governed the Litigation Trust's claims against him because (1) SemGroup was an Oklahoma limited partnership, and (2) Delaware follows the internal affairs doctrine. See Kivisto's Brief in Support of Motion to Dismiss Second Amended Complaint [Adv. Pro. 09-50189 (BLS), D.I. 57 at pp. 11–13].

19.     The Oklahoma courts have not adopted any particular test for gauging whether a party's claims are direct.  Accordingly, the Oklahoma courts consider the analyses undertaken in other jurisdictions persuasive.  See Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993) (considering jurisprudence from other jurisdictions persuasive in the absence of binding Oklahoma authority). In that regard, nationwide there are two principal tests used to determine whether a claim is direct or derivative:  (1) the Tooley test; and (2) the "duty owed" test. Plaintiffs' claims are direct under either test.

20.     First, Delaware and a number of other states rely upon the two-prong Tooley test, which turns on "(1) who suffered the alleged harm (the corporation or the suing stockholders individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)."  Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004).

21.     Second, a number of courts rely upon the "duty owed" test. NBD Bank, N.A. v. Fulner, 109 F.3d 299, 301 (6th Cir. 1997) ("A shareholder's rights are merely derivative unless he can show violation of a duty owed directly to him."); Freedom Fin. Grp., Inc. v. Woolley, 792 N.W.2d 134, 136 (Neb. 2010) ("In order to establish an individual harm to bring a claim, the shareholder must allege a separate and distinct injury or a special duty owed by the party to the individual shareholder."); Sacks v. Am. Fletcher Nat'l Bank & Trust Co., 279 N.E.2d 807, 811–12 (Ind. 1972) ("A personal cause of action arises when there is a breach of a duty

owed specially to the stockholder separate and distinct from the duty owed to the corporation."). For a claim to be direct under the "duty owed" test, the plaintiff must establish that the defendant owed him duties directly. Id.

### ii.    Plaintiffs' Claims Against Kivisto

### a.    Fraud and Negligent Misrepresentation[4]

22. It is well settled under Oklahoma law (and the law of most other states) that, no matter what test is used, claims arising because of misrepresentations made to an individual give rise to direct claims, not derivative claims. See Johnson v. Render, 270 P.17 (Okla. 1928); see also May v. Coffey, 967 A.2d 495, 502 (Conn. 2009) ("[I]f the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual."); Kesling v. Kesling, 546 F. Supp. 2d 627, 634 (N.D. Ind. 2008) ("[A]ctions to vindicate rights belonging to the shareholders themselves, such as . . . prevent[ing] oppression or fraud against minority shareholders . . . are considered direct.") (internal quotations omitted); GLFP, Ltd. v. CL Mgmt., Ltd., 163 P.3d 636, 640 (Utah Ct. App. 2007) ("[A] direct claim is one where the injury is one to the plaintiff as a stockholder . . . as where the action is based on . . . a fraud affecting him directly.") (internal quotations omitted); Albert v. Alex. Brown Mgmt.

---

[4] Because the elements for fraud and negligent misrepresentation are substantially similar under Oklahoma law, Plaintiffs address these two claims together. See Roberson v. PaineWebber, 998 P.2d 193, 197 (Okla. App. 1999) (setting forth elements for fraud); Ragland v. Shattuck Nat. Bank, 36 F.3d 983, 991 (W.D. Okla. 1994) (setting forth elements for negligent misrepresentation).

Servs., Inc., Civ. A. Nos. 762-N, 763-N, 2005 WL 2130607, *12 (Del. Ch. 2005) (holding, under Tooley, that claims based on fraudulent misrepresentations and non-disclosure to unitholders are direct); Dieterich v. Harrer, 857 A.2d 1017 (Del. Ch. 2004) (characterizing non-disclosure claims as direct claims); Nelson v. Anderson, 84 Cal. Rptr. 2d 753, 761 (Cal. Ct. App. 1999) ("[T]he same facts regarding injury to the corporation may underlie a personal cause of action, such as . . . fraud . . ."); Vierling v. Baxter, 141 A. 728, 729 (Pa. 1928).  Both Tooley and the "duty owed" tests confirm this presumption.

23.     ***Duty Owed Test***: Plaintiffs' misrepresentation claims clearly satisfy the "duty owed" test, as those claims rely exclusively upon a duty owing directly to Plaintiffs; namely, Kivisto's violation of his common law duty not to misrepresent or conceal material facts from Plaintiffs.  See Cleveland v. Dyn-A-Mite Pest Control, Inc., 57 P.3d 119, 124–25 (Okla. Civ. App. 2002); see also Petition ¶¶ 5, 35–61, 79–93 (setting forth allegations regarding Kivisto's misrepresentation and nondisclosure of material facts).

24.     ***Tooley Test***: Plaintiffs also easily meet the two-prong Tooley test.  First, it is Plaintiffs, and not SemGroup, that suffered harm as a result of Kivisto's misrepresentations and failure to disclose material facts.  Plaintiffs acted individually (and forewent action) in reliance upon Kivisto's false representations, incurring substantial damages as a result.  The individualized nature of Plaintiffs'

injuries, and the fact that they stem from representations made by Kivisto *to the Plaintiffs*, satisfies the first Tooley factor.

25.     While Plaintiffs have not articulated each and every measure of damage suffered as a result of Kivisto's misrepresentations (and indeed Oklahoma's notice pleading requirements do not require such[5]), Plaintiffs are entitled to recover all damages flowing from the injuries caused by Kivisto's misrepresentations.  And these damages will require an individualized inquiry for each Plaintiff.  For example, (i) Plaintiffs made investments in (and elected not to divest themselves of) SemGroup units based upon individual representations made to and relied upon by Plaintiffs; (ii) Plaintiffs made additional capital contributions at differing times and in reliance upon differing representations; and (iii) certain of Plaintiffs' interests in SemGroup were diluted as a result of a transaction entered in connection with Kivisto's misstatements regarding his agreement to cease his trading activities. Petition ¶¶ 35–39, 45–58, 79–89.  These damages inure directly to Plaintiffs.  Indeed, with respect to Plaintiffs' capital contributions, it is inconceivable that SemGroup could have been harmed by Plaintiffs providing additional monies to the company.  Second, because Plaintiffs – as the injured party – would receive the benefit of any recovery or other remedy, Plaintiffs' claims meet the second Tooley

---

[5] Okla. Stat. tit. 12, § 2001 et seq. (2010); Gens v. Casady Sch., 177 P.3d 565, 569 (Okla. 2008) ("All that is required under notice pleading is that the petition give fair notice of the plaintiff's claim and the grounds upon which it rests. . . . Any requirement that a litigant correctly identify a theory of recovery or describe the remedy affordable for an asserted right's vindication is abolished. . .").

factor.  See Tooley, 845 A.2d at 1036 (noting that when relief flows to the injured

party, rather than the entity, the suit is properly classified as direct).

### b.  Breach of Fiduciary Duty

26.     Plaintiffs concede that when a breach of fiduciary duty claim

is premised *solely* upon a fiduciary duty arising due to the defendant's position as an

officer or director of a company, that claim typically is held by the company.

However, Plaintiffs have not asserted that claim.

27.     Instead, Plaintiffs' claim relates to a fiduciary or special

relationship that arose between Plaintiffs and Kivisto – not merely due to his position

as CEO of SemGroup, but due to the length of the parties' relationship, the nature of

the relationship, and the trust Plaintiffs put in Kivisto. See Petition ¶¶ 91–92.  While

the *existence* of a fiduciary duty under these circumstances is a "question of fact" to

be determined by a jury,[6] if such a fiduciary relationship *does* exist, Plaintiffs have a

direct claim against Kivisto for his breach of that duty. See In re Estate of Schulman,

165 A.D.2d 499, 503 (N.Y. App. 1991) (permitting stockholder's direct action for

breach of fiduciary duty due to nature and length of parties' relationship, which gave

rise to separate fiduciary duty).

28.     Assuming a jury determines that this duty exists (as this Court

must do when considering a Rule 12 motion), Plaintiffs' fiduciary duty claims

against Kivisto are direct and easily satisfy both Tooley and the "duty owed" test.

---

[6] See Quinlan v. Koch Oil Co., a Div. of Koch Indus., Inc., 25 F.3d 936, 942 (10th Cir. 1994) (citing
Steinbrugge v. Haddock, 281 F.2d 871, 872 (10th Cir. 1960)).

29.     ***Duty Owed Test***: Plaintiffs' fiduciary duty claims rely exclusively upon a duty owing directly to Plaintiffs; namely, Kivisto's fiduciary duties, which arose due to the length and nature of his relationship with Plaintiffs. See Lowrance v. Patton, 710 P.2d 108, 111 (Okla. 1985) (under Oklahoma law, fiduciary duties are owed when "there is confidence reposed on one side and resulting domination and influence on the other."); see also Petition ¶¶ 91–92.

30.     ***Tooley Test***: It is Plaintiffs, and not SemGroup, that suffered harm as a result of Kivisto's breaches of this fiduciary duty.  Plaintiffs acted (and forewent action) in reliance upon Kivisto's failure to disclose material information and other breaches, incurring substantial damages.  Again, in keeping with Oklahoma's notice pleading requirements, Plaintiffs have not articulated each measure of damage incurred as a result of Kivisto's breaches of fiduciary duty.  However, Plaintiffs are entitled to recover all damages that resulted from the injuries caused by Kivisto's breaches of duty.  For example, (i) Plaintiffs made investments in (and elected not to divest themselves of) SemGroup units based upon individual representations made to and relied upon by Plaintiffs; (ii) Plaintiffs made additional capital contributions at differing times and in reliance upon differing representations; and (iii) certain Plaintiffs' interests in SemGroup were diluted as a result of a transaction entered in connection with Kivisto's misstatements regarding his agreement to cease his trading activities. Petition ¶¶ 35–39, 45–58, 79–89.  These damages inure directly to Plaintiffs.  As to the second Tooley factor, because these

damages were incurred directly by Plaintiffs, it is Plaintiffs that are entitled to the recovery.  Accordingly, Plaintiffs' claims are direct.

### iii.    Plaintiffs' Claims Against PwC are Direct

31.    PwC has neither sought relief from this Court nor joined in Kivisto's Motion.  Indeed, PwC has asserted separately that the appropriate venue for Plaintiffs' claims to be resolved is the United States District Court for the Northern District of Oklahoma – not the Delaware bankruptcy court.[7]  Accordingly, Plaintiffs respectfully request that the Court abstain from ruling on Plaintiffs' claims against PwC, and instead allow those claims to be decided in the forum selected by Plaintiffs and PwC.[8]

32.    Should the Court consider Plaintiffs' claims against PwC, Plaintiffs submit that their claims – negligence and violation of the Oklahoma Accountancy Act – arise exclusively under Oklahoma law and are based upon duties owed by PwC directly to Plaintiffs.  Plaintiffs incurred damages due to PwC's misconduct, and should be permitted to pursue their claims.

---

[7] In the Oklahoma Litigation, PwC filed a notice of removal from Oklahoma state court to the United States District Court for the Northern District of Oklahoma (the "PwC Notice of Removal"), a copy of which is attached hereto as Exhibit B (stating that Delaware bankruptcy court is not the proper venue for this dispute).

[8] Plaintiffs also note that, while the Litigation Trustee has joined in Kivisto's motion, that joinder is wholly inconsistent with the position taken by the Trustee in her case against PwC in Oklahoma.  In that case, the Trustee filed suit in Oklahoma state court, and upon removal argued that no federal jurisdiction existed over her claims.  Trustee prevailed, and her claims against PwC are now proceeding in Oklahoma state court.

### i. Negligence

33.   ***Duty Owed Test:***   The Oklahoma Supreme Court has made clear that auditors owe duties directly to individuals like Plaintiffs, even in the absence of any contractual relationship. Stroud v. Arthur Andersen & Co., 37 P.3d 783 (Okla. 2001) (adopting the Restatement (Second) of Torts § 552, and holding auditor liable to non-client shareholder).  Under Stroud, it is clear that PwC owed duties directly to Plaintiffs.  As Plaintiffs' explained in their Petition, PwC issued its unqualified opinion letters directly to Plaintiffs. Petition ¶¶ 20–30, 60–68.  There can be no doubt that PwC either (a) intended to supply its audit data directly to Plaintiffs for their guidance, or (b) knew that SemGroup intended to supply the audited financials to Plaintiffs.  The Restatement test is easily satisfied, and thus PwC owed duties directly to Plaintiffs.

34.   ***Tooley Test:***   Plaintiffs suffered harm as a result of PwC's negligence.  That SemGroup itself also suffered harm, or that the Litigation Trust may be pursuing similar claims does not change this fact, nor does it foreclose Plaintiffs' right to recover for their losses. See U.S. Cellular Inv. Co., 1997 WL 575820 at **4–5 (recognizing that the same set of facts may give rise to both direct and derivative claims).  Plaintiffs acted (and forewent action) and otherwise incurred damages as a result of PwC's negligence.

35.   In keeping with Oklahoma's notice pleading requirements, Plaintiffs have not articulated each and every measure of damage suffered as a result of PwC's negligence.  Plaintiffs, however, are entitled to recover all damages

flowing from the harm they suffered due to PwC's conduct.  While Plaintiffs'

damages require an individualized inquiry for each, as a general proposition,

Plaintiffs incurred losses due to capital contributions made in reliance upon PwC's

"clean" audit opinions, certain Plaintiffs incurred additional costs of capital

(including lost opportunity costs) related to these capital contributions to SemGroup,

Plaintiffs relied upon PwC's unqualified audits by foregoing certain actions that

could have minimized or eliminated these and other damages.[9]  As to the second

Tooley factor, because these damages were incurred directly by Plaintiffs, it is

Plaintiffs that are entitled to the recovery.  Accordingly, Plaintiffs' claims are direct.

### ii.      Violation of the Oklahoma Accountancy Act

36.      Plaintiffs also have asserted a claim against PwC for a

violation of the Oklahoma Accountancy Act. Petition ¶¶ 69–78.  The Oklahoma

Accountancy Act provides that an accountant may be penalized for committing or

engaging in "[d]ishonesty, fraud or gross negligence in accountancy or financially

related activities." 59 O.S. § 15.14(B)(2).  Under this Act, accountants also may be

---

[9] In response to the claims asserted by the Litigation Trust in an action commenced in the District Court of Tulsa County, Oklahoma, and removed to the United States District Court for the Northern District of Oklahoma (Whyte v. Pricewaterhouse Coopers, LLP, Case No. 10-485-GKF-FHM), PwC has asserted the affirmative defense of in pari delicto. See PwC's Answer [D.I. 32] at p. 14.  This action has since been remanded back to the District Court of Tulsa County, Oklahoma, pursuant to an order entered on March 22, 2011 [D.I. 46].  If PwC prevails on this defense, and the Litigation Trust is precluded from pursuing its claims due to the wrongful acts of SemGroup's management, Plaintiffs should be permitted to recover for those damages. See Morgado Family Partners, LP v. Lipper, 19 A.D.3d 262, 263 (N.Y. App. Div. 1st Dep't. 2005) (noting that if trustee's claims against auditor are barred by the doctrine of in pari delicto, shareholders may have standing to pursue those claims).

subject to penalty for failing to comply with applicable professional standards. *Id.* at §15.14(B); see also OK. ADMIN CODE § 10:15-39-9(3) and (4).

37.     ***Duty Owed Test:***  There can be no doubt that PwC violated the standards set forth in the applicable statutes and regulations during the course of planning and conducting its audits of SemGroup.  The availability of a private right of action under the Oklahoma Accountancy Act has not yet been recognized by Oklahoma courts.  However, the test for such a cause of action is easily satisfied here.  Plaintiffs fall squarely within the class for whose benefit the statute was enacted – namely citizens taking guidance from accountants. See 59 O.S. §15.1 (stating that the Legislature enacted the Oklahoma Accountancy Act "[i]n order to protect the citizens of this state," and for the purpose of "promot[ing] the reliability of information that is used for guidance in financial transactions or for accounting…."). As such, PwC owed duties under the Oklahoma Accountancy Act directly to Plaintiffs.

38.     ***Tooley Test:***  While SemGroup no doubt suffered injuries as a result of PwC's violation of the Oklahoma Accountancy Act, Plaintiffs also incurred direct harm due to PwC's misconduct. See U.S. Cellular Inv. Co._, 1997 WL 575820 at **4–5 (recognizing that the same set of facts may give rise to both direct and derivative claims).  The harms Plaintiffs suffered as a result of PwC's violations of the Oklahoma Accountancy Act are substantially similar to that sustained due to PwC's negligence.  Because these damages were incurred directly by Plaintiffs, there

can be no dispute that Plaintiffs will receive the benefit of any recovery or other remedy. Accordingly, Plaintiffs' claims are direct.

### B. This Court Lacks Jurisdiction Over the Subject Matter of the Motion

39.   Bankruptcy jurisdiction extends to four types of matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a bankruptcy case; and (4) proceedings related to a bankruptcy case. In re Exide Techs., 544 F.3d 196, 205 (3d Cir. 2008). Cases under title 11, proceedings arising under title 11 of the U.S. Code and proceedings arising in a bankruptcy case are core proceedings, while proceedings related to a case under title 11 are noncore proceedings. Id. The instant dispute among non-debtors falls into none of the aforementioned categories, and therefore falls outside this Court's jurisdiction.

40.   A "core proceeding" is not defined in 28 U.S.C. §157(b), but it does provide a nonexclusive list of types of proceedings that are "core." In re Stone & Webster Inc., 367 B.R. 523, 525 (Bankr. D. Del. 2007). In determining whether a matter is core, a court should first consult the non-exclusive list of fifteen examples of core proceedings set forth at 28 U.S.C. §157(b)(2). See Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). 28 U.S.C. §157(b)(2) provides that:

> Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or

18

unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security-holder relationship, except personal injury tort or wrongful-death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. §157(b)(2).

41.     A core proceeding is one that either (1) invokes a substantive right provided by title 11, or (2) by its nature could arise only in the context of a bankruptcy case. <u>Corestates Bank NA v. Huls Am. Inc.</u>, 176 F.3d 187, 196 (3d Cir. 1999) (citation omitted); <u>see also</u> <u>In re Wood</u>, 825 F.2d at 97) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.").

42.     Although Kivisto has styled this contested matter as a core proceeding, he has only done so by erroneously characterizing this as a matter concerning the Plan.  However, Kivisto cannot create a core matter simply by wishing it to be so.  In fact, the subject matter of the Oklahoma Litigation is direct claims of a non-debtor against other non-debtors.  These claims are non-core because they are not of the type enumerated at 28 U.S.C. §157(b)(2) and do not involve substantive rights provided by title 11.  Indeed, they most commonly arise outside of bankruptcy.

43.     It also is beyond dispute that the Oklahoma Litigation is not a matter "arising in a case under chapter 11."  Therefore, the Court does not have jurisdiction on that basis.

44.     Having ruled out three of the four bases for bankruptcy jurisdiction, the only possible basis remaining is "related to" jurisdiction.  However, the claims asserted in the Oklahoma Litigation are direct claims and the Court lacks "related to" jurisdiction over them.  28 U.S.C. § 1334(b).

45.     As SemGroup investors, Plaintiffs were not parties to SemGroup's bankruptcy; nor are they beneficiaries of the Trust that SemGroup's bankruptcy plan created for the benefit of unsecured creditors (but not equity investors).  Plaintiffs do not seek to assert any rights of SemGroup or the Trust beneficiaries, but only their own rights arising out of duties that PwC and Kivisto owed Plaintiffs under Oklahoma law.  This is a simple case of non-parties to a bankruptcy asserting claims against other non-parties to the bankruptcy for duties arising solely under Oklahoma state law.

46.     Moreover, Kivisto already has settled his claims with the Trust and has received releases under the Kivisto Settlement.  In short, Kivisto is finished litigating with the Trust.  Therefore, whatever his direct liabilities to the Plaintiffs are finally adjudicated to be, those liabilities will have no effect on the estates of the Debtors.  His liabilities will be to the Plaintiffs only.  Thus, this proceeding could not "conceivably have any effect on the estate being administered in bankruptcy." In re Gardner, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

47.     In addition, the confirmation of SemGroup's plan ended any "related-to" jurisdiction that could ever have existed, because the Confirmed Plan does not retain any "related-to" jurisdiction over claims brought by third parties against other third parties. See Confirmation Order, Exh. 1 at ¶ 42; see also In re Resorts Int'l, Inc., 372 F.3d 154, 170 (3d Cir. 2004) (claims by litigation trust created under plan of reorganization against PwC did not give rise to "related to"

21

jurisdiction);  In re W. Integrated Networks LLC, 322 B.R. 156, 162 (Bankr. D. Colo. 2005) (holding that plan that failed to identify purportedly retained claims by the section of the bankruptcy code under which they would be brought failed to retain bankruptcy jurisdiction).

48.    In Resorts, a litigation trust created under the debtors' plan of reorganization filed a complaint against PwC, alleging, among others, malpractice claims.  PwC argued that the bankruptcy court lacked related to jurisdiction over the claims.  The litigation trust insisted it did, contending that "the claims affect the Litigation Trust, which is a continuation of the estate; the claims affect the debtor; the claims affect the operation of the Reorganization Plan; the claims affect the former creditors as beneficiaries of the Litigation Trust; and the jurisdictional retention provisions confer continued jurisdiction." Id. at 169.   The United States Court of Appeals for the Third Circuit held that the bankruptcy court lacked "related to" jurisdiction over these claims, noting that:

> [t]he resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157.

Id.

49.    Similar reasoning applies here, and indeed the connection between the Oklahoma Litigation – which is entirely between third parties – and the

bankruptcy estates is far more attenuated than the connection between the litigation

in <u>Resorts</u> – where a trust created under a plan was plaintiff – and the <u>Resort</u> estates.

The Oklahoma Litigation will have absolutely no effect on the Debtors' estates, as

neither the Trust nor the Debtors are parties to the Oklahoma Litigation, and any

recovery will neither enhance nor diminish the estates or the <u>res</u> of the Trust.  The

Oklahoma Litigation can have no effect on the Confirmed Plan.  Moreover, the

Confirmed Plan does not purport to retain jurisdiction over claims among third

parties, and, in fact, it could not without exceeding the boundaries of the Court's

jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334.

       50.    Moreover, Kivisto's contention that this Court has jurisdiction

because there are common facts and events underlying the Trust's claims against him

and the Oklahoma Litigation is misplaced.  As the <u>Pacor</u> court held, "the mere fact

that there may be common issues of fact between a civil proceeding and a

controversy involving the bankruptcy estate does not bring the matter within the

scope of section 1471."[10] <u>Pacor v. Higgins</u>, 743 F.2d 984 at 994.

### C. It is Irrelevant that the Plaintiffs' Limited Partnership Interests Have Been Terminated.

       51.    Kivisto would have the Court assign significance to the fact

that the Plaintiffs' limited partnership interests in SemGroup have been terminated

under the Confirmed Plan and Confirmation Order.  However, this fact is irrelevant

---

[10] The language in 28 U.S.C. § 1471was later moved to 28 U.S.C. § 1334(b). Pub. L. No. 98–353, 98 333, sec. 101(a).

to the Plaintiffs' standing to sue Kivisto for his wrongful actions against the Plaintiffs.

52.    Indeed, Kivisto has cited no authority for the proposition that a limited partner of a partnership lacks standing to sue for direct injuries caused to the limited partner in his or her capacity as a limited partner.  Moreover, the Plaintiffs could locate no such authority.

53.    Kivisto's assertion that the Plaintiffs lack standing is based upon his incorrect contention that the Plaintiffs' claims are derivative.  Just as the Plaintiffs urge the Court to find that the claims in the Oklahoma Litigation are direct claims, the Plaintiffs also respectfully suggest to the Court that Kivisto's allusions to the termination of the limited partnership interests are irrelevant and should be treated as such.

### D.    The Plaintiffs' Direct Claims Against Kivisto Were Not Released Under the Confirmed Plan and Confirmation Order.

54.    While Kivisto cites voluminous passages from the Confirmed Plan, ostensibly in support of his contention that the Plaintiffs' claims against him were released, Kivisto fails to bring to the Court's attention the most relevant passage – section 20.4 of the Confirmed Plan.  Not surprisingly, this section contradicts and undermines Kivisto's arguments.  Under section 20.4 of the Confirmed Plan, a broad injunction on Claims (as defined in the Confirmed Plan) is imposed.  However, this provision excludes causes of action against Kivisto and PwC.  As provided under Confirmed Plan section 20.4:

> . . . such injunction shall not extend to or protect . . . and is not
> intended, nor shall it be construed, to extend to the assertion, the
> commencement, or the prosecution of any claim or cause of action
> against . . . any current or former directors, officers, professionals,
> agents, financial advisors, underwriters, lenders, members of the
> Management Committee or auditors relating to acts or omissions
> occurring prior to the Petition Date.

Confirmed Plan, § 20.4.

55.     Accordingly, under the express terms of the Confirmed Plan,

any injunction on actions does not extend to Kivisto and PwC.  At the most, the

Confirmed Plan can only be read to enjoin third parties from asserting claims that

belong to the Debtors' estates; this, of course, is an unremarkable proposition under

bankruptcy law.  Indeed, if such releases had been granted to Kivisto and PwC, the

Trust could not have pursued the estates' derivative claims against Kivisto and PwC.

Likewise, the Confirmed Plan poses no obstacle to the Plaintiffs' assertion of their

direct claims against Kivisto and PwC.

### E. Even if the Kivisto Settlement Somehow Could Be Construed to Affect the Plaintiffs' Direct Claims, the Plaintiffs Were Not Given Notice of the Kivisto Settlement and Cannot Be Bound By it.

56.     The Kivisto Settlement resulted in mutual releases between

the Litigation Trust and Kivisto and his co-defendants, along with a discharge "from

all liability to any other person for contribution or indemnity (or any other claim

where the injury to such other person is such other person's liability to the Litigation

Trust) that relates to, or is in any way based upon or arises from or is in any way

connected with any Released Claim." Motion to Approve Kivisto Settlement ¶ 17(d)

& (e); Settlement Agreement ¶ 6.  The Settlement Agreement defines a Released

Claim as "any claims related in any way to: (a) the Debtors, (b) the Released Parties employment by, or service for, the Debtors, (c) communications with or failure to disclose information to the Contributing Lenders, (d) any events, actions, or omissions alleged in the Settled Lawsuits or the Examiners' Report, (e) Chapter 5 of the United States Bankruptcy Code, and (f) any theory based on alter ego, disregarding the corporate veil, single-enterprise theory, conspiracy, actual or implied guaranty or other assumption of liability or similar doctrine." Settlement Agreement ¶ 6(A).

57.    The Kivisto Settlement, therefore, does not affect the Plaintiffs.  The Plaintiffs were not a party to the Kivisto Settlement, and therefore are not bound by the mutual releases.  Moreover, the Plaintiffs' claims are not in the nature of contribution and indemnity, and do not arise out of liability to the Litigation Trust.  Finally, the Plaintiffs submit that their direct claims against Kivisto are not within the scope of "Released Claims."

58.    However, even if the Kivisto Settlement did purport to release the Plaintiffs' direct claims against Kivisto, such releases would be ineffective because the Plaintiffs were not provided with notice of the Motion to Approve Kivisto Settlement.  See Certificate of Service of the Motion to Approve Kivisto Settlement (attached hereto as Exhibit A).  As the Court will note, none of the Plaintiffs appear on the Certificate of Service.  This absence of notice implicates due process and compels a finding that any releases granted in the Kivisto Settlement are not enforceable against the Plaintiffs.

59.     Interestingly, PwC objected to the Motion to Approve Kivisto Settlement on the grounds that it offended PwC's due process rights. See Limited Objection of PricewaterhouseCoopers LLP to the Joint Motion of Bettina Whyte As Trustee For The SemGroup Litigation Trust, And Thomas L. Kivisto, Gregory C. Wallace, Brent Cooper, Kevin L. Foxx, And Alex Stallings For Order Approving Settlement [Adv. Pro. 09-50189 (BLS), D.I. 224].  This Court overruled that objection, noting, in part, that PwC received notice of the Motion to Approve Kivisto Settlement. See Whyte v. Kivisto (In re SemCrude, L.P.), Case No. 08-11525 (BLS), Adv. Pro. 09-50189 (BLS), 2010 Bankr. LEXIS 4160, * 20–21 (Bankr. D. Del. Nov. 19, 2010).

60.     Due process requires that a party be informed a matter is pending so that the party can choose whether to object. Id. at *21 (citing Britz, Inc. v. Dow Chem. Co., 86 Cal. Rptr. 2d 188, 192 (Cal. Ct. App. 1999)).  Indeed, it is a foundational principle of our due process jurisprudence that one cannot be bound by a judgment without notice. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 (1950) (notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality . . . "); Hansberry v. Lee, 311 U.S. 32, 40 (1940) (recognizing the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.").

27

61.     If the Kivisto Settlement indeed purports to alter the Plaintiffs' rights by denying them recourse to Kivisto for their direct claims against him – and Plaintiffs contend the Kivisto Settlement does no such thing – due process required that the Plaintiffs be given notice of the Motion to Approve Kivisto Settlement and an opportunity to object.  Because that opportunity was denied the Plaintiffs, the Kivisto Settlement cannot bind them, and their direct claims against Kivisto survive.

WHEREFORE, the Plaintiffs respectfully request that the Court deny the Motion and Joinders and grant such other and further relief as is just and proper.

[Signature page follows.]

Dated: June 6, 2011      **WOMBLE CARLYLE SANDRIDGE**
           **& RICE, PLLC**

*/s/ Michael G. Busenkell*
Michael G. Busenkell (DE Bar No. 3933)
Thomas M. Horan (DE Bar No. 4641)
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: mbusenkell@wcsr.com
E-mail: thoran@wcsr.com

-and-

Adam P. Schiffer
Andrew S. Hicks
Logan E. Johnson
SCHIFFER ODOM HICKS & JOHNSON PLLC
700 Louisiana, Suite 1200
Houston, Texas 77002
Telephone: (713) 357-5150
Facsimile: (713) 357-5160

Counsel to Cottonwood Partnership, L.L.P.; Dunbar
Family Partnership, L.P.; Rosene Family, L.L.C.;
Warren F. Kruger; Katherine A. Kruger; David S.
Kruger; and Kathryn E. Shelley