IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**SEMCRUDE, L.P.,** *et al.*<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 08-11525 (BLS)<br><br>Jointly Administered<br><br>Related to Docket Nos. 8811, 8829, 8836, 8861, 8872, and 8875 |

**OPINION**[1]

Before the Court is the Emergency Motion to Enforce the Provisions of the Order Confirming Debtors' Fourth Amended Joint Plan and to Enforce the Provisions of the Confirmed Plan and for Other Relief (the "Motion to Enjoin").[2] The movant, the Debtors' former CEO, seeks to enjoin a state court lawsuit brought against him and the Debtors' former auditor by certain of the Debtors' limited partners. The movant argues that the limited partners lack standing in the state court action because the claims they have asserted there derive from claims that belong to a litigation trust created under the Debtors' plan of reorganization. The Debtors and the litigation trust agree with the movant and have joined him in asking for an injunction. The limited partners, however, maintain that they do have standing to sue in state court. They say that the Debtors' former CEO and auditor have harmed them directly,

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

[2] Docket No. 8811.

so that the asserted claims belong to them individually, not to the litigation trust. The limited partners also question this Court's jurisdiction over this dispute.

The Court must therefore first decide whether it has jurisdiction over the Motion to Enjoin. If jurisdiction lies, the Court must then determine whether the claims asserted by the limited partners in the state court action are derivative of litigation trust's claims and whether injunctive relief is an appropriate remedy.

For the reasons that follow, the Court answers each of these questions in the affirmative and grants the Motion to Enjoin.

## *Background*

In July 2008, SemCrude, L.P., and certain of its affiliates ("SemCrude"), filed for bankruptcy under chapter 11 of the Bankruptcy Code. Fifteen months later, the Court entered an order (the "Confirmation Order")[3] confirming SemCrude's plan of reorganization (the "Plan").[4] Under the Plan, certain litigation claims belonging to SemCrude's bankruptcy estate were transferred to a litigation trust (the "Litigation Trust"). The Litigation Trust could then pursue the claims and distribute the money it recovered to SemCrude's creditors, in accordance with the Plan.

Shortly after the Plan became effective, the Litigation Trust was substituted-in as the plaintiff[5] in an adversary proceeding (the "Kivisto Adversary") against Thomas L. Kivisto ("Kivisto"), SemCrude's former CEO, and certain former SemCrude officers (together with Kivisto, the

---

[3] Docket No. 6347.
[4] Docket No. 5808.
[5] The original plaintiff had been the official committee of SemCrude's unsecured creditors.

"Kivisto Defendants"). In that lawsuit, the Litigation Trust asserted claims for, among other things, fraudulent transfer, breach of fiduciary duty, breach of contract, and unjust enrichment. The claims centered on the Kivisto Defendants' alleged involvement with SemCrude's commodities trading, certain interested transactions, and SemCrude's funding of Kivisto's personal trading company. The Kivisto Defendants moved to dismiss the adversary proceeding and the Court took the matter under advisement. At that point, the parties agreed to participate in mediation and to pursue settlement discussions.

The discussions proved fruitful: the Litigation Trust and the Kivisto Defendants eventually arrived at a settlement (the "Settlement Agreement"). The Settlement Agreement was meant to resolve all claims and disputes between the parties related to the underlying lawsuit. It provided that: (1) the SemCrude Defendants would pay the Litigation Trust $30 million from their directors' and officers' liability insurance policies; (2) the settling parties would grant mutual releases; and (3) the SemCrude Defendants would be discharged from all liability to any party for contribution or indemnity relating to the released claims.

Pricewaterhouse Coopers, LLP ("PwC"), SemCrude's pre-bankruptcy auditor, and the defendant in a separate lawsuit brought by the Litigation Trust (the "PwC Litigation"), objected to the Settlement Agreement. PwC, which was not a party to the settlement, argued that its due process rights would be violated if the Court approved the Settlement Agreement. This was because the settlement purported to limit PwC's ability to seek contribution from the Kivisto Defendants should PwC be found liable to the Litigation Trust in the PwC Litigation.

The Court overruled PwC's objection and proceeded to approve the Settings Agreement[6] and dismiss the Kivisto Adversary with prejudice.[7] *See Whyte v. Kivisto (In re SemCrude, L.P.)*, Bankr. No. 08-11525, Adv. No. 09-50189, 2010 WL 4814377, at *7 (Bankr. D. Del. Nov. 19, 2010).

One month later, Cottonwood Partnership, L.L.P., Dunbar Family Partnership, L.P., Rosene Family L.L.C., Warren F. Kruger, Katherine A. Kruger, David S. Kruger, and Kathryn E. Shelley (collectively, the "Oklahoma Plaintiffs") initiated an action against Kivisto and PwC in Oklahoma state court (the "Oklahoma Litigation"). The Oklahoma Plaintiffs seek monetary damages from Kivisto for negligent misrepresentation, fraud, and breach of fiduciary duty, and from PwC for professional negligence and violation of the Oklahoma Accountancy Act.

Kivisto responded by filing the Motion to Enjoin, asking the Court to halt the Oklahoma Litigation. Kivisto believes that the claims asserted against him and PwC in that lawsuit derive from claims that belong to the Litigation Trust. He maintains that the claims the Oklahoma Plaintiffs have brought against him have been settled, and that those against PwC are presently being pursued by the Litigation Trust in the PwC Litigation. Kivisto argues that the Oklahoma Plaintiffs therefore lack standing to prosecute their claims, and that the claims are, in any case, barred by the Confirmed Plan, Confirmation Order, and Settlement Agreement. Both SemCrude and the Litigation Trust agree with Kivisto and have joined in his motion.

---

[6] Adv. No. 09-50189, Adv. Docket Nos. 244, 245.
[7] Adv. No. 09-50189, Adv. Docket No. 246.

The Oklahoma Plaintiffs object to the Motion to Enjoin, arguing that their claims against both Kivisto and PwC are direct claims that do not belong to the Litigation Trust. The Oklahoma Plaitiffs thus claim to have standing to pursue those claims in the Oklahoma Litigation. They also argue that this Court does not have subject-matter jurisdiction over their direct claims.

Finally, the Court notes that in January 2011, PwC removed the Oklahoma Litigation from state court to the U.S. District Court for the Northern District of Oklahoma. In response, the Oklahoma Plaintiffs asked the District Court to remand the action back to state court, or to abstain from hearing it. On August 26, 2011, the District Court ordered the action remanded "because federal bankruptcy jurisdiction does not exist. Alternatively, the mandatory abstention provisions of 28 U.S.C. § 1134(c)(2) require remand … [and] remand is permissively proper under 28 U.S.C. § 1334(c)(1)." *Cottonwood P'ship v. Pricewaterhouse Coopers LLP*, Case No. 11-CV-0610JHP-PJC (N.D. Okla. Aug. 26, 2011), Minute Order of the Hon. James H. Payne (Docket. No. 34).

Since Judge Payne entered his remand order, this Court has received letters from Kivisto, the Litigation Trust, and the Oklahoma Plaintiffs, stating their views on how that order impacts the Court's consideration of the Motion to Enjoin. The Oklahoma Plaintiffs take the position that "[b]ecause the [district court] has concluded that bankruptcy jurisdiction does not exist over [the Oklahoma Plaintiffs'] claims in the Oklahoma Litigation (and thus the subject matter of [the Motion to Enjoin]," (Ltr. to the Court, Aug. 29, 2011),[8] this Court lacks jurisdiction over the Motion to Enjoin. In contrast, Kivisto and the Litigation

---

[8] Docket No. 8988.

Trust contend that the remand order has no effect on this Court's ability to decide the motion. Because this disagreement implicates the Court's subject-matter jurisdiction, it will be addressed first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (U.S. 1998) ("The requirement that jurisdiction be established as a threshold matter … is 'inflexible and without exception.'") (citation omitted).

## *Legal Analysis*

**A. The Court Has Jurisdiction Over the Motion to Enjoin**

Judge Payne's order remanding the Oklahoma Litigation back to the Oklahoma state court does not affect this Court's ability decide the Motion to Enjoin. The rule is that federal courts have the authority to decide if they have jurisdiction over subject matters brought before them. *See, e.g., Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940). Judge Payne did just that: he decided he either did not have, or should not exercise, jurisdiction over the merits of the claims in the Oklahoma Litigation—which was the sole matter before him. This Court must do the same with the Motion to Enjoin, a matter which was brought here, not to Judge Payne, and which does not require the Court to decide the merits of claims asserted in the Oklahoma Litigation.

A bankruptcy court's subject-matter jurisdiction is governed by 28 U.S.C. §§ 1334 and 157. *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004). Section 1334 sets the boundaries of bankruptcy court jurisdiction. That jurisdiction "potentially extends to four types of title 11 matters, pending referral from the district court: '(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.'" *Id.* at 162

(citations omitted). Section 1334 does not, however, vest any authority in the bankruptcy court; that is left to section 157.

Section 157 prescribes a bankruptcy court's power to "hear and determine" matters falling within the four jurisdictional categories. Those within the first three categories are "core" matters, while those within the fourth category are "non-core." A bankruptcy court may enter final judgments and orders in core matters, but not in non-core matters. Thus, when faced with the Motion to Enjoin, the Court begins with two questions: Is there jurisdiction under 1334, and if so, is the matter core or non-core under section 157?

Because "'related-to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, … [the Court] need only determine whether [the Motion to Enjoin] is at least 'related to' the bankruptcy." *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997). At the post-confirmation stage, "related-to" jurisdiction depends upon the Motion to Enjoin having "a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts*, 372 F.3d at 166–67. The Motion to Enjoin likely has the required close nexus if it "affect[s] the interpretation, implementation, consummation, execution, or administration of the [P]lan." *Id.* at 167 (expressing concern that bankruptcy court jurisdiction "not raise the specter of 'unending jurisdiction' over continuing trusts," such as the Litigation Trust here).

The Court agrees with the Litigation Trust and Kivisto that it has, at a minimum, related-to jurisdiction over the Motion to Enjoin. The motion affects the interpretation and administration of the Plan because it requires the Court to determine if the Plan meant to, and did, transfer

the claims asserted in the Oklahoma Litigation to the Litigation Trust. *See In re Shenango Grp. Inc.*, 501 F.3d 338 (3d Cir. 2007) (finding a "close nexus" under *Resorts* where resolution of the matter required the court to interpret the plan's provision relating the debtor's obligation to fund pension benefit increases). It also affects the implementation of the Plan because it seeks an injunction to carry out the Plan's provisions. Finally, the Court notes that the Motion to Enjoin, if granted, could prevent the Oklahoma state court from entering orders inconsistent with the Plan and Confirmation Order. For these reasons, the Court concludes that the Motion to Enjoin affects "integral aspect[s] of the bankruptcy process," *In re Resorts*, 372 F.3d at 167, and thus the Court has jurisdiction over it.

The next question is whether the Motion to Enjoin is a core or non-core matter. The Oklahoma Plaintiffs argue that because "the subject matter of the Oklahoma Litigation is direct claims of a non-debtor against other non-debtors" there cannot be core jurisdiction here. What the Oklahoma Plaintiffs overlook, however, is that the core/non-core analysis turns on the subject matter of the Motion to Enjoin, not the subject matter of the Oklahoma Litigation.

Courts in this District have held that matters "requiring a declaration of whether certain property comes within the definition of 'property of the estate,' as set forth in Bankruptcy Code § 541, are core proceedings." *Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) (finding core jurisdiction existed to decide "whether … claims against the … [d]efendants are property of the [d]ebtor's estate that were transferred to the [t]rustee upon [p]lan confirmation"). That is what the Motion to Enjoin does here. It seeks a

declaration that the claims alleged in the Oklahoma Litigation were once property of SemCrude's estate and now belong to the Litigation Trust under the Plan and Confirmation Order. Thus, the Motion to Enjoin is a core matter that the Court may "hear and decide" under section 157(b)(1). *See In re Pruitt*, 910 F.2d 1160, 1164 (3d Cir. 1990) (recognizing that the list of core proceedings in section 157(b)(2) is non-exclusive). Though the Oklahoma Plaintiffs requested that the Court abstain from deciding the Motion to Enjoin, the court declines to do so in this core proceeding. *See Garland & Lachance Constr. Co. v. City of Keene (In re Garland & Lachance Constr. Co.)*, Bankr. No. 89-11258, CM No. 90-126-S, 1991 Bankr. LEXIS 2123, at *22 (Bankr. D. N.H. Feb. 22, 1991) (noting that "abstention is normally inappropriate if a matter is a core proceeding [but that] … the rule is not inflexible and the Court retains the power to abstain for reasons of justice, comity with state courts, or respect for state law") (citation omitted).

The Court further notes that the Confirmation Order contains language that specifically retains exclusive jurisdiction in this Court over, among other things, "all matters arising out of, or relating to, … [SemCrude's] Chapter 11 Cases or the … Plan …[under] sections 105(a) and 1142 of the Bankruptcy Code." (Confirmation Order ¶ 42.) Of course, without statutory jurisdiction, "retention of jurisdiction provisions in a plan … are fundamentally irrelevant." *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 256 (3d Cir. 2007). Though if, as here, "there is jurisdiction, [courts] will give effect" to those provisions. *Id*. It is also well-established that courts retain jurisdiction to interpret and enforce their own orders. *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009); *In re Dolly Madison Indus., Inc.*, 504 F.2d 499, 503 (3d

Cir. 1974); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999).

At bottom, the Court concludes that it has jurisdiction over this matter under 28 U.S.C. § 1334, and that this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is also proper in this Court. 28 U.S.C. § 1409.

**B. Legal Standard for Direct or Derivative Claims**

The key issue in the Motion to Enjoin is whether the claims asserted by the Oklahoma Plaintiffs in the Oklahoma Litigation are derivative causes of action (*i.e.*, claims alleging injury to SemCrude in its corporate capacity) or direct, individual causes of action (*i.e.*, claims alleging injuries to the Oklahoma Plaintiffs alone which are not derivative of SemCrude's rights). "Whether an action is characterized as direct or derivative is a question of state law." *In re Touch Am.*, 401 B.R. at 121 n.26. Here, the parties do not dispute that Oklahoma state law governs this analysis.

With respect to the distinction between derivative and direct claims, the Oklahoma Supreme Court announced "the universal rule that the remedial rights of minority stockholders with respect to wrongs committed against the corporation by the directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." *Dobry v. Yukon Elec. Co.*, 290 P.2d 135, 137 (Okla. 1955). That court further explained:

> it is a well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in

> the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike.

*Id.*

According to Oklahoma law, a plaintiff must assert a loss "in addition to the loss sustained by the corporation" in order to properly plead a direct claim against third parties because if "[h]is loss was only incidental to the corporation's loss . . . his rights were derivative. His only remedy then was through a derivative action brought on behalf of the corporation." *Id.*

Under the most recent test developed by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), to which Kivisto, the Litigation Trust, and the Oklahoma Plaintiffs have all cited, the standard for determining whether a claim is direct or derivative "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* The *Tooley* court explained that "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039. Put another way, an individual plaintiff must allege an injury that the plaintiff suffered

which the corporation did not also suffer.[9] However, the *Tooley* court further cautioned that just because an alleged claim is determined to not be derivative does not necessarily mean that such claim is therefore a direct claim.[10]

## C. The Claims Against Kivisto Are Derivative

In the complaint that initiated the Oklahoma Litigation (the "Oklahoma Complaint"), the Oklahoma Plaintiffs have alleged claims against Kivisto for fraud, negligent representation, and breach of fiduciary duty. They argue that these claims constitute direct claims against Kivisto which are not derivative of the LitigationTrust's claims against Kivisto. Generally, the Oklahoma Plaintiffs allege that Kivisto's self-dealing and speculative trading strategy caused SemCrude to file for bankruptcy. (Okla. Compl. ¶ 19.) The Oklahoma Plaintiffs assert that Kivisto improperly used SemCrude's funds to finance his personal trading activity and that he improperly received additional compensation for physical commodities trading. (Okla. Compl. ¶¶ 33-39.) The Oklahoma Plaintiffs also allege that Kivisto engaged in high-risk trades on behalf of SemCrude, which exposed the company to significant risk, but which were either not disclosed to, or were concealed from, the Oklahoma Plaintiffs. (Okla. Compl. ¶¶ 52-58.) In support of their argument that the injury they suffered was unique to them, the Oklahoma Plaintiffs contend that Kivisto made fraudulent and negligent misrepresentations to them

---

[9] The Court notes that *Tooley* was decided in the corporate context. Here, the specific Debtor entity of which Kivisto was an officer is a limited partnership. However, given that stockholders and limited partners are similarly situated, courts generally look to corporate law for guidance in this context. *See, e.g., Littman v. Prudential-Bache Sec., Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992).

[10] In *Tooley*, the Delaware Supreme Court found that the alleged claim was neither direct nor derivative. *Tooley*, 845 A.2d at 1039.

personally to induce them to make capital contributions. (Okla. Compl. ¶¶ 47-48.) Without asserting the basis for their calculation, the Plaintiffs allege that they suffered damages due to Kivisto's alleged misconduct "in an amount to be determined at trial but well in excess of $10,000." (Okla. Compl. ¶¶ 82, 88, 93.)

The Court concludes that the claims against Kivisto asserted in the Oklahoma Litigation are clearly derivative of the Litigation Trust's claims against Kivisto. First, the Court finds that the injury suffered by the Oklahoma Plaintiffs is no different from the injury suffered by SemCrude as a result of Kivisto's wrongful conduct. Indeed, the Oklahoma Plaintiffs' alleged loss of capital went hand-in-hand with the titanic losses that SemCrude suffered in the run-up to its bankruptcy filing. Second, the Oklahoma Plaintiffs have not established that Kivisto owed them a duty distinct from his fiduciary duty to SemCrude and all its other equity holders. Third, SemCrude would be entitled to any recovery received by the Oklahoma Plaintiffs because such recovery would be deemed equity in SemCrude's estate, to which the Oklahoma Plaintiffs would not be automatically entitled outside the prescribed distribution scheme under the Bankruptcy Code and the Plan. In a case with similar facts, the Bankruptcy Court in this District also found that certain claims asserted by former shareholders against a debtor's insiders were derivative of the corporation's claim. *In re Touch Am.*, 401 B.R. at 117.

**D. The Claims Against PwC Are Also Derivative**

In the Oklahoma Complaint, the Oklahoma Plaintiffs have alleged claims against PwC for professional negligence and violation of the Oklahoma Accountancy Act. Once again, the Oklahoma Plaintiffs argue

that such claims constitute direct claims against PwC which are not derivative of the Litigation Trust's claims against PwC. In support of their argument, the Oklahoma Plaintiffs allege that PwC issued inaccurate audit reports and opinion letters concerning SemCrude's financial position. (Okla. Compl. ¶¶ 25, 29, 30.) The Oklahoma Plaintiffs further assert that PwC neglected to disclose both Kivisto's speculative trading activities and his self-dealing misconduct, even though PwC was allegedly either aware of such activities or should have suspected it based upon misstatements and omissions in SemCrude's financial statements. (Okla. Compl. ¶¶ 29-32, 44, 59, 60-61.)

In support of their contention that their injury is distinct from SemCrude's injury for PwC's alleged misconduct, the Oklahoma Plaintiffs assert that PwC owed them "the highest duty of care, as Plaintiffs were known and foreseeable users of the financial statements and other information that PwC examined, audited, and validated." (Okla. Compl. ¶ 64.) By their complaint, the Oklahoma Plaintiffs contend that had they "learned of Kivisto's harmful conduct, [they] would have intervened to stop it long before July 2008," when SemCrude filed for bankruptcy relief. (Okla. Compl. ¶¶ 66, 76.) However, this contention by the Oklahoma Plaintiffs actually undercuts their argument, and instead bolsters the assertion that the harm they suffered was in fact the very same harm suffered by SemCrude. Again, without asserting the basis for their calculation, the Oklahoma Plaintiffs allege that they suffered damages due to PwC alleged misconduct "in an amount to be determined at trial but well in excess of $10,000." (Okla. Compl. ¶¶ 67, 77.) For the same reasons as discussed above, the Court concludes that the claims by the Oklahoma Plaintiffs against PwC asserted in the Ok-

lahoma Litigation are also derivative of the Litigation Trust's claims against PwC.

### E. Injunctive Relief is Appropriate

Under 11 U.S.C. § 1141(a), "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor." In addition, as was discussed above, this Court has the authority to enforce its existing orders and the terms of a confirmed plan.[11] Accordingly, the Court, in giving effect to section 1141, and in enforcing the Confirmation Order, the Settlement Agreement, and the Plan, and in having found that the Oklahoma Plaintiffs' claims are derivative of causes of action owned by the Litigation Trust, shall enjoin the Oklahoma Plaintiffs from further prosecuting claims that belong to the Litigation Trust, not to them.

---

[11] Though Fed. R. Bankr. P. 7001(7) requires an adversary complaint to obtain an injunction, courts in this district have held that the rule does not apply if the movants are "merely seeking to enforce an order already in place." *See In re Worldcorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (Walrath, J.). As in *Worldcorp*, "this case was originally brought … as an adversary proceeding. The adversary proceeding was resolved by a Settlement Agreement pursuant to which [the Court] issued the order the [movants] seek to enforce." Thus, "an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained." *Id.*

## *Conclusion*

For the foregoing reasons, the Court will grant the Motion to Enjoin. An appropriate Order follows.

**BY THE COURT**:

Dated: October 7, 2011
Wilmington, Delaware

_____
Brendan Linehan Shannon
United States Bankruptcy Judge